Lauer and Lancer Management caused the Funds to engage. Portfolio companies had common directors, Lancer Management and Lauer had relationships with those persons, and funds controlled by Lancer Management were invested in some or all of the same securities that the Funds were invested.

100.   ISA 120, Section 19 also provides that, by contributing its name to the offering documents used by the Funds to promote the sale of their shares, PWC NA was attesting to the accuracy of the information contained in those documents.

101.   PWC NA failed, inter alia (i) to exercise due professional care in the performance of the audits and the preparation of the reports; (ii) to obtain a level of knowledge of the Funds' business that would enable PWC NA to plan and perform its audits in accordance with international auditing standards, including an understanding of the events, transactions, and practices that could have a significant effect on the financial statements; (iii) to properly study and evaluate the Funds' internal controls; (iv) to obtain sufficient, competent evidential material to provide it with a reasonable basis for forming an opinion in each of its audits of the Funds; and (v) to satisfy itself that the financial disclosures were adequate.

102.   PWC NA knew or should have known that its clean audit reports were material to investors' decisions to purchase shares in the Funds and to refrain from redeeming their investments.  Shares of the Funds were not publicly traded. Hence, no independently verified third-party financial information about the Funds or their performance was available to investors or prospective investors in the Funds other than PWC NA's audit report and the audited financial statements.

**B of A's Wrongful Conduct**

103.    B of A was the prime broker and the custodian for the Funds. Among other things, it held certain of the Funds' securities in custody.  Upon information and belief, at least through December 3, 2001, B of A held in custody for the Funds virtually all of the Funds' positions.

104.    Upon information and belief, B of A permitted Lauer, acting on behalf of the Funds, to regularly dial-in to its computer network and to enter the Funds' positions into an electronic database from which documents entitled "Bank of America Position Reports" ("B of A Position Reports") could be printed.

105.    Upon information and belief, Lauer also sent valuation information directly to B of A, sometimes by facsimile, and B of A employees entered this information directly into the B of A Position Reports, without verifying its accuracy.

106.    Once information was entered into the database, B of A Position Reports could be printed and/or downloaded.  In fact, such reports were printed out and provided to various third parties, including but not limited to Citco NV and PWC NA, who relied upon them for purposes of valuing and/or auditing the Funds.  The printed B of A Position Reports were captioned "Banc of America Securities, LLC; Client Position Summary by Asset Class."  These reports were also at times provided to investors and prospective investors, including The Pension Committee of the University of Montreal and Fondation Chagnon, who relied on the reports when making investment and retention decisions.

107.    B of A knew, or should have known, that Lauer, and/or those working on his behalf, would distribute the B of A Position Reports to third parties and/or that Lauer was using the B of A Position Reports for these purposes.  B of A also knew,

or should have known, that the hard copy printouts of the B of A Position Reports had its name emblazoned across the top of the report.

108.    B of A's actions substantially assisted Lauer in carrying out the fraudulent scheme described herein. B of A's policy of allowing Lauer to gain direct access to its computer system and distribute B of A Position Reports to PWC NA and Citco NV helped Lauer to conceal the true value of the Funds' portfolio.

**IFS' Wrongful Conduct**

109.    In or about September 2002, IFS replaced Citco NV as Administrator of the Funds.

110.    IFS also distributed fraudulent NAV reports to plaintiffs for at least the months of October 2002, November 2002, December 2002.

111.    IFS did not perform an independent valuation of the Funds' NAV. Instead, IFS negligently relied on Lauer's fraudulent valuations.

**Reliance**

112.    Plaintiffs all reasonably relied upon the representations regarding the Funds' NAVs and other statements made in the NAV statements, audit reports, PPMs, performance reports and other communications from Lauer and the Funds' service providers in deciding to invest in and/or remain invested in the Funds. Alternatively, as the reported NAV, a figure that was solely within the control of the defendants, was the only measure by which shares in the Funds could be evaluated and purchased, plaintiffs are entitled to a presumption of reliance.

**The Funds' Collapse and Lawsuits**

113.    Following a series of negative news stories, beginning in the Fall of 2002, investors in the Funds began to make significant redemption requests, which the

Funds did not have the liquidity to satisfy. Lawsuits by investors in Lancer Partners were commenced in the winter of 2003 seeking, among other things, investors redemptions.

114.    On April 16, 2003, Lancer Partners filed for bankruptcy in the United States Bankruptcy Court for the District of Connecticut.

115.    On May 2, 2003 the Financial Services Commission ("FSC"), an enforcement agency of the British Virgin Islands roughly equivalent to the SEC, instituted an action in The Eastern Caribbean Supreme Court in the High Court of Justice in the Virgin Islands against Lancer Offshore and the OmniFund. In that action the FSC seeks the appointment of a liquidator to wind up the Funds in an orderly fashion. The FSC retained Deloitte & Touche to assist the FSC in reviewing the affairs and circumstances of the Funds. In connection with that engagement, Deloitte & Touche prepared two substantive reports (the "Deloitte Reports"), which detail some of the fraudulent conduct engaged in by the Funds.

116.    On July 8, 2003 the Securities and Exchange Commission (the "SEC") commenced an action by filing a Complaint for Injunctive and Other Relief against  numerous individuals and entities involved with the Funds (the "*SEC* Action"). At the SEC's request, a receiver has been appointed for Lancer Management Group, LLC, Lancer Management Group II, LLC, Lancer Offshore, Inc., OmniFund, Ltd., LSPV, Inc. and LSPV, LLC and their subsidiaries, successors and assigns.

117.    Several investors have commenced individual and class actions entitled *AXA Alternative Advisers, Inc. et al. v. John W. Bendall, Jr., et al.*, No. 03-CV-6763 (S.D.N.Y.), *Bruhl v. PricewaterhouseCoopers International Ltd., et al.*, No. 03-CV-

6644 (S.D.N.Y.) and *Rotman v. John W. Bendall, Jr., et al.*, No. 03-23044-CV (S.D. Fla.).

118.    Unless otherwise noted, the foregoing allegations, except for allegations relating to the plaintiffs, are based upon information and belief, which belief is based upon an investigation conducted by counsel.  Allegations regarding the nature of the fraud at issue herein and the involvement of the defendants in that fraud are based primarily upon: a) the Funds' Offering Memoranda, marketing materials, monthly performance reports and other communications from Lauer to plaintiffs'; b) the PWC NA audit reports; c) monthly statements prepared by Citco NV and IFS; d) information provided by various confidential sources to the plaintiffs, directly or indirectly; e) articles published by the media; f) the complaint in the SEC Action; (g) the complaints in actions brought by other investors; h) the Deloitte Reports; and i) pleadings and other materials filed by the Receiver.

### FIRST CLAIM FOR RELIEF

**(Against the Director Defendants for Violations of Section 10(b)
of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder)**

119.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

120.    This claim is brought against defendants Bendall and Geist on behalf of those plaintiffs who purchased all or some of their shares in the Funds after the date on which Bendal and Geist became directors of the Funds.  This claim is brought against the Citco Directors on behalf of those plaintiffs who purchased all or some of their shares in the Funds after March 2000 and at a time during which the Citco Directors served as a director for the fund in which such shares were purchased.

121.  Lauer represented to plaintiffs that:

a.    The majority of the stocks in which the Funds would invest would be traded on the New York Stock Exchange, the American Stock Exchange or in the over-the-counter-market in the United States of America;

b.    No more than 20% of the Funds' gross asset value would be invested in any one company;

c.    The Funds would not take legal or management control of any of the companies into which they invested.

122.  Each of these representations were false because from at least as early as December 2000:

a.    The Funds invested almost exclusively in stocks traded either in the over-the-counter-market or on the pink slips;

b.    The Funds, at various times, invested more than 20% of their assets in a single company;

c.    The Funds took controlling stakes in many of the companies into which they invested.

123.  The Director Defendants intentionally and recklessly authorized or permitted Lauer and Lancer Management to report materially false and misleading information to plaintiffs regarding the Funds' investments including, but not limited to, fraudulent NAVs.

124.  The Director Defendants knew or recklessly disregarded the fact that the false and misleading information about the Funds' investments would be included in the NAV statements, monthly newsletters and offering materials sent to the plaintiffs.  The Director Defendants further knew that plaintiffs would rely on this false and misleading information in making decisions on whether to purchase and retain shares in the Funds.

125.  The Director Defendants further knew and intended that the false information about the Funds' investments would be included in the Funds' audited

financial statements, and that such audited financial statements would be sent to plaintiffs. Once again, the Director Defendants knew that plaintiffs would rely on this false and misleading information in making decisions on whether to purchase and retain shares in the Funds.

126. The plaintiffs relied upon these misstatements in making investment and retention decisions with respect to the shares of the Funds. Plaintiffs would not have purchased the securities of the Funds at the prices they did, or at all, if they had known that the statements made and/or caused to be made by the Director Defendants were materially false and misleading and/or omitted to state material facts necessary in order to make the statements accurate. Furthermore, had they known of such misstatements, the plaintiffs would have divested themselves of any securities they had purchased in the Funds.

127. By virtue of the foregoing, the Director Defendants violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in that they, directly or indirectly, by use of means and instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct whereby they knowingly and/or recklessly made material misrepresentations and failed to correct misrepresentations which were materially false and misleading in light of the circumstances in which they were made, employed devices, schemes and artifices to defraud, participated in the fraudulent manipulation and engaged in acts and practices and a course of business that operated as a fraud and deceit upon plaintiffs in connection with their purchase of shares of the Fund.

47

128.    The misrepresentations were made in connection with the purchase by plaintiffs of shares in the Funds and to induce them to purchase and retain such shares. Plaintiffs were thereby damaged as a result.

129.    By reason of the foregoing, the plaintiffs are entitled to a judgment against the Director Defendants awarding the plaintiffs compensatory damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## SECOND CLAIM FOR RELIEF

### (Against the Director Defendants for Common Law Fraud)

130.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

131.    As set forth more fully above, the Director Defendants knowingly and/or recklessly made numerous false and misleading statements of material fact and omitted to state material facts regarding the management, performance and value of the Funds to plaintiffs.

132.    The Director Defendants, in the PPMs and other offering material, made fraudulent statements concerning the types of investments the Funds would make and the manner in which holdings would be valued, falsely representing that the Funds' assets would be valued using appropriate and reasonable methodology. The Director Defendants also allowed repeated false and fraudulent statements concerning the Funds' performance to be disseminated to investors.

133.    Each of these defendants knew, or was reckless in not knowing, that their conduct constituted a fraud on the plaintiffs and would result in, and did in fact

result in, the purchase of Fund shares by the plaintiffs at inflated prices, the retention of such shares and the subsequent loss of a substantial portion of plaintiffs' investments.

134.    These defendants made the material misrepresentations, and omitted to disclose the material facts, herein alleged with the intention of inducing the plaintiffs to purchase and retain securities in reliance thereon.

135.    Plaintiffs reasonably and justifiably relied on Lauer's misrepresentations and omissions in deciding to purchase and/or retain shares in the Funds.

136.    Each of the plaintiffs has been damaged by these defendants' wrongful conduct in that the defendants' wrongful conduct caused each of them to purchase and/or hold shares in the Funds at inflated values and/or to retain those shares until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment.

137.    The fraudulent conduct of these defendants, as outlined above, was done purposefully, maliciously, recklessly and without regard for the rights and interests of the plaintiffs.

138.    By reason of the foregoing, the plaintiffs are entitled to a judgment against the Director Defendants, jointly and severally, awarding the plaintiffs compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## THIRD CLAIM FOR RELIEF

### (Against the Director Defendants for Breach of Fiduciary Duty)

139.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

140.    The Director Defendants owed the highest obligations and fiduciary duties to the plaintiffs, who are shareholders of the Funds. These defendants were duty bound to act in a responsible and lawful manner, in utmost good faith, and in accordance with the representations on which the plaintiffs relied in entrusting their monies to these defendants, so as not to cause injury to the plaintiffs.

141.    These defendants each owed directly to each of the plaintiffs, as shareholder of the Funds, the duty to exercise due care and diligence in the management and administration of the Funds and in the use and preservation of the plaintiffs' property and assets. These defendants also each owed directly to the plaintiffs the duties of full and candid disclosure of all material facts relevant to the Funds and duties to deal fairly and honestly with the plaintiffs. These defendants were obligated to ensure that Lauer and Lancer Management did not engage in any fraudulent, unsafe or unsound valuation practices.

142.    In engaging in the conduct alleged herein, including, but not limited to, falsely reporting values of the plaintiffs' investments, these defendants repeatedly breached their fiduciary and related obligations to the plaintiffs.

143.    Each of the plaintiffs has been damaged by the wrongful conduct of these defendants in that the plaintiffs were induced to purchase and/or hold shares in the Funds at inflated values until such time as the Funds were unable to honor

redemption requests, causing each plaintiff to lose a substantial portion of its investment.

144.    The conduct of these defendants was purposeful and it departed in the extreme from the norms expected of such persons.   Lauer and the Director Defendants cavalierly disregarded their duties to, and the interests of, the plaintiffs.

145.    By reason of the foregoing, the plaintiffs are entitled to a judgment against these defendants, jointly and severally, awarding them compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## FOURTH CLAIM FOR RELIEF

### (Against the Director Defendants
### for Negligence and Negligent Misrepresentation)

146.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

147.    Each of the Director Defendants had a duty to the plaintiffs to accurately value the Funds' portfolios.

148.    Even if there was no intent to defraud, the Director Defendants also acted negligently and carelessly in reporting to investors artificially inflated values for the portfolio.  The Director Defendants acted negligently and carelessly by permitting these artificially inflated portfolio valuations to be reported to investors and potential investors.

149.    The Director Defendants made the material misrepresentations and omissions alleged above with the intention of inducing plaintiffs to purchase and retain their investments in reliance thereon.

51

150.   Plaintiffs reasonably and justifiably relied on these defendants' misrepresentations and omissions, and the false information supplied by these defendants, in both purchasing and retaining securities. Plaintiffs also reasonably relied on the Director Defendants to oversee the Funds and manage and/or value the portfolios competently and in keeping with their representations.

151.   Plaintiffs were damaged by these defendants' negligent and/or grossly negligent conduct. Plaintiffs would not have purchased their shares in the Funds and/or would have divested them sooner had they known that these defendants had engaged in the negligent and/or grossly negligent conduct alleged herein.

152.   By reason of the foregoing, the plaintiffs are entitled to a judgment against the Director Defendants, jointly and severally, awarding the plaintiffs compensatory damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

### FIFTH CLAIM FOR RELIEF

### (Against Director Defendants for Aiding and Abetting Common Law Fraud)

153.   Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

154.   The Director Defendants played a significant and vital role in the fraudulent scheme alleged herein, with knowledge or reckless disregard thereof.

155.   The Director Defendants knew or should have known that the information being disseminated by Lauer was fraudulent and that such information would be relied upon by investors.

156.    Instead, the Director Defendants knowingly or recklessly failed in their role.  The Director Defendants knowingly and substantially aided and abetted the fraud committed by allowing Lauer to disseminate the fraudulent monthly statements and performance reports, failing to verify that the NAV's were consistent with market value, failing to conduct any independent valuation of the Funds' portfolios and/or participating in the fraudulent valuations.

157.    The conduct of the Director Defendants proximately caused significant damage to the plaintiffs.  The fraud could not have succeeded without the active and knowing participation of the Director Defendants.

158.    Each of the plaintiffs has been damaged by the wrongful conduct of the Director Defendants in that the plaintiffs were induced to purchase and/or hold shares of the Funds at inflated values, and to retain those shares until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment in the Funds.

159.    The Director Defendants' conduct was purposeful and malicious, or reckless, and departed in the extreme from the norms expected of fund directors.  The Director Defendants cavalierly disregarded their duties to, and the interests of, the plaintiffs.

160.    By reason of the foregoing, plaintiffs are entitled to a judgment against the Director Defendants, jointly and severally, awarding the plaintiffs compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## SIXTH CLAIM FOR RELIEF

### (Against The Director Defendants for Aiding and Abetting Breach of Fiduciary Duty)

161.   Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

162.   The Director Defendants knew or recklessly disregarded the fact that Lauer owed fiduciary and other obligations to the plaintiffs, and knew or recklessly disregarded the fact that Lauer was breaching said obligations by engaging in the conduct alleged herein.

163.   With such knowledge, the Director Defendants knowingly participated, aided and abetted, and otherwise conspired to bring about Lauer's breaches of fiduciary obligations by, inter alia, allowing Lauer to disseminate the fraudulent NAV and performance information, failing to verify that the NAV's were consistent with market value, failing to conduct any independent valuation or assessment of the Funds' portfolios and/or participating in the fraudulent valuations.

164.   Based on the information that they had, the Director Defendants knew or should have known that Lauer was breaching his fiduciary duties to plaintiffs in this manner.

165.   Each of the plaintiffs has been damaged by the wrongful conduct of the Director Defendants in that the wrongful conduct caused each plaintiff to purchase and/or hold shares in the Funds at inflated values until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment.

166. The Director Defendants' wrongful conduct, as alleged herein, was done purposefully, maliciously, recklessly, and without regard for the rights and interests of the plaintiffs.

167. By reason of the foregoing, the plaintiffs are entitled to a judgment against the Director Defendants, jointly and severally, awarding the plaintiffs compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## SEVENTH CLAIM FOR RELIEF

### (Against Citco NV for Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder)

168. Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

169. This claim is brought on behalf of only those plaintiffs who purchased all or part of their shares in the Funds after March 2000.

170. Citco NV disseminated materially false and misleading NAV statements and performance information to plaintiffs. Citco misrepresented that it would follow the policies and procedures that it had in place to ensure the accurate valuation of the Funds' NAV.

171. Citco NV also furnished materially false and misleading financial information regarding the Funds to PWC NA and distributed false and misleading financial statements and audit reports for the Funds and PWC NA to investors, including plaintiffs.

172. Citco NV possessed, or had access to, information about the Funds' positions which revealed that the portfolios were not being properly valued.

Among other things, defendants Conroy, Stocks and Quilligan were directors of the Funds and as directors knew, or should have known, that the valuations provided by Lauer and Lancer Management to Citco NV were false.  Their knowledge must be imputed to Citco NV.

173.   Moreover, Citco NV knew or recklessly disregarded that investors, including plaintiffs, would rely upon the materially false and misleading financial statements and audit reports for the Funds that it distributed in deciding to invest in and remain invested in the Funds.

174.   The plaintiffs relied upon these misstatements in deciding to purchase shares of the Funds.  Plaintiffs would not have purchased the securities of the Funds if they had known that the materials being distributed by Citco NV, including statements made and/or caused to be made by the Director Defendants and the audit reports and financial statements, were materially false and misleading and/or omitted to state material facts necessary in order to make the statements accurate.  Furthermore, had they known of such misstatements, the plaintiffs would have divested themselves of any securities they had purchased in the Funds.

175.   By virtue of the foregoing, Citco NV violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in that it, directly or indirectly, by use of the means or instrumentalities of interstate commerce and/or the mails, or of a facility of a national securities exchange, knowingly or recklessly employed devices, schemes, and artifices to defraud, made untrue statements of material facts or omitted to state facts that they were under a duty to

speak, and engaged in acts of fraud and deceit upon the plaintiffs, all in connection with the purchase or sale of a security.

176.    Each of the plaintiffs has been damaged by Citco NV's wrongful conduct in that such wrongful conduct caused each of them to purchase and hold shares in the Funds at inflated values and/or to retain those shares until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment in the Funds.

177.    By reason of the foregoing, the plaintiffs are entitled to judgment against Citco NV awarding the plaintiffs compensatory damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## EIGHTH CLAIM FOR RELIEF

### (Against The Citco Group for
### Violations of Securities Exchange Act § 20(a))

178.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

179.    This claim is brought on behalf of those investors who purchased all or part of their shares in the Funds after March 2000.

180.    As alleged more fully above, Citco NV's conduct violated Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated thereunder.

181.    At all relevant times, The Citco Group had the power, both direct and indirect, to control Citco NV, which was a division of The Citco Group, did in fact exercise such control and was therefore controlling a person within the meaning of Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78(t)).

182.    Each of the plaintiffs has been damaged by the wrongful conduct of The Citco Group through its control of Citco NV, in that the wrongful conduct caused each of the plaintiffs to purchase shares in the Funds at inflated values and to remain invested in the Funds.

183.    By reason of the foregoing, the plaintiffs are entitled to a judgment against The Citco Group awarding the plaintiffs compensatory damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

### NINTH CLAIM FOR RELIEF

#### (Against Citco NV for Common Law Fraud)

184.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

185.    As set forth more fully above, Citco NV knowingly and/or recklessly made numerous false and misleading statements of material fact and omitted to state material facts regarding the management, performance and value of the Funds to plaintiffs.

186.    Citco NV repeatedly disseminated fraudulent and grossly inflated NAV statements to the Funds' investors.  Citco NV also disseminated numerous newsletters and performance reports generated by Lauer and audit reports of PWC NA that contained material misrepresentations about the Funds' performance.  Citco NV also misrepresented that it would follow the policies and procedures that it had in place to ensure the accurate calculation of the Funds' NAVs.

187.    Citco NV knew, or was reckless in not knowing, that its conduct constituted a fraud on the plaintiffs and would result in, and did in fact result in, the

58

purchase of Fund shares by the plaintiffs at inflated prices and/or the retention of such shares, all resulting in the subsequent loss of a substantial portion of plaintiffs' investments.

188.    Citco NV made the material misrepresentations, and omitted to disclose the material facts, herein alleged with the intention of inducing the plaintiffs to purchase and retain securities in reliance thereon.

189.    Plaintiffs reasonably and justifiably relied on Citco NV's misrepresentations and omissions in deciding to purchase and/or retain shares in the Funds.

190.    Each of the plaintiffs has been damaged by Citco NV's wrongful conduct in that such wrongful conduct caused each of them to purchase and/or hold shares in the Funds at inflated values and to retain those shares until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment.

191.    The fraudulent conduct of Citco NV, as outlined above, was done purposefully, maliciously, recklessly and without regard for the rights and interests of the plaintiffs.

192.    By reason of the foregoing, the plaintiffs are entitled to a judgment against Citco NV, awarding the plaintiffs compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## TENTH CLAIM FOR RELIEF

### (Against Citco NV and IFS for Breach of Fiduciary Duty)

193.   Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

194.   Citco NV and IFS, as administrators of the Funds, owed the highest obligations and fiduciary duties to the plaintiffs, who are shareholders of the Funds. These defendants were duty bound to act in a responsible and lawful manner, in utmost good faith, and in accordance with the representations on which the plaintiffs relied in entrusting their monies to these defendants, so as not to cause injury to the plaintiffs.

195.   These defendants each owed directly to each of the plaintiffs, as shareholders of the Funds, the duty to exercise due care and diligence in the management and administration of the Funds, in the use and preservation of the plaintiffs' property and assets and in ensuring the accuracy of information transmitted to investors concerning the holdings and valuation of the Funds' assets.   These defendants also each owed directly to the plaintiffs the duties of full and candid disclosure of all material facts relevant to the Funds and duties to deal fairly and honestly with the plaintiffs.   These defendants were obligated to ensure that Lauer and Lancer Management did not engage in any fraudulent, unsafe or unsound valuation practices.

196.   In engaging in the conduct alleged herein, including, but not limited to, falsely reporting prices and results of the plaintiffs' investments, and by failing to report that Lauer was fraudulently overstating the value of the Funds' portfolios and otherwise disregarding the representations made in the PPMs, these defendants repeatedly breached their fiduciary and related obligations to the plaintiffs.

197.    Each of the plaintiffs has been damaged by the wrongful conduct of these defendants in that the plaintiffs were induced to purchase and/or hold shares in the Funds at inflated values until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment.

198.    The conduct of these defendants was purposeful and it departed in the extreme from the norms expected of such persons.  Citco NV and IFS cavalierly disregarded their duties to, and the interests of, the plaintiffs.  By reason of the foregoing, the plaintiffs are entitled to a judgment against these defendants, jointly and severally, awarding them compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## ELEVENTH CLAIM FOR RELIEF

### (Against Citco NV for Aiding and Abetting Common Law Fraud)

199.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

200.    Defendant Citco NV played a significant and vital role in the fraudulent scheme alleged herein, with knowledge or reckless disregard thereof.

201.    Citco NV knew or should have known that investors would rely on the NAV statements and newsletters that it was disseminating as a basis for investing in and/or maintaining their investments in the Funds.  Plaintiffs derived great comfort from representations that Citco NV would independently calculate the Funds' NAV.

202.    Instead, Citco NV knowingly or recklessly failed in its role.  Citco NV knowingly and substantially aided and abetted the fraud committed by Lauer and the

Director Defendants by using the NAV's provided by Lauer without verifying that the NAV's were consistent with market value, failing to conduct any independent valuation of the Funds' portfolios, and disseminating monthly statements to plaintiffs that contained false and overstated NAVs.

203.    The conduct of Citco NV proximately caused significant damage to the plaintiffs.  The fraud could not have succeeded without the active and knowing participation of Citco NV.

204.    Each of the plaintiffs has been damaged by the wrongful conduct of Citco NV in that the plaintiffs were induced to purchase and/or hold shares of the Funds at inflated values, and to retain those shares until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment in the Funds.

205.    Citco NV's conduct was purposeful and malicious, or reckless, and departed in the extreme from the norms expected of an administrator.  Citco NV cavalierly disregarded its duties to, and the interests of, the plaintiffs.

206.    By reason of the foregoing, plaintiffs are entitled to a judgment against Citco NV awarding the plaintiffs compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## TWELFTH CLAIM FOR RELIEF

**(Against Citco NV for Aiding and Abetting Breach of Fiduciary Duty)**

207.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

208.   Citco NV knew or recklessly disregarded the fact that Lauer and the Director Defendants owed fiduciary and other obligations to the plaintiffs, and knew or recklessly disregarded the fact that these defendants were breaching said obligations by engaging in the conduct alleged herein.

209.   With such knowledge, Citco NV knowingly participated, aided and abetted, and otherwise conspired to bring about these defendants' breaches of fiduciary obligations by, inter alia, using the NAV's provided to them by Lauer without verifying that the NAV's were consistent with market value, failing to conduct any independent valuation or assessment of the Funds' portfolios, and disseminating monthly statements to plaintiffs that contained false and overstated NAVs.

210.   Based on the information that it had, Citco NV knew or should have known that these defendants were breaching their fiduciary duties to plaintiffs by disseminating false and overstated NAVs to plaintiffs.

211.   Each of the plaintiffs has been damaged by the wrongful conduct of Citco NV in that the wrongful conduct caused each plaintiff to purchase and/or hold shares in the Funds at inflated values until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment.

212.   Citco NV's wrongful conduct, as alleged herein, was done purposefully, maliciously, recklessly, and without regard for the rights and interests of the plaintiffs.

213.   By reason of the foregoing, the plaintiffs are entitled to a judgment against Citco NV awarding the plaintiffs compensatory and punitive damages in an

63

amount to be determined at the trial of this action, together with interest at the statutory rate.

## THIRTEENTH CLAIM FOR RELIEF

### (Against Citco NV for Negligence, Negligent Misrepresentation and Professional Malpractice)

214.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

215.    Citco NV had a duty to the plaintiffs to independently calculate and verify the NAVs each month, to verify that the NAV's used by Lauer reflected market value and to send accurate NAV statements to plaintiffs.

216.    Citco NV performed its duties negligently and/or grossly negligently, and in reckless disregard of its duties, thereby enabling Lauer and the Director Defendants to perpetrate and continue their fraudulent scheme.  Citco NV failed to independently value the NAVs of the Funds and to ensure the accuracy of the values supplied by the Lauer.  Instead, Citco NV used valuation information provided by Lauer, including the B of A Position Reports, to calculate and send false NAV statements to plaintiffs.  Citco NV then disseminated this false and fraudulent information directly to the plaintiffs.

217.    Citco NV knew, or reasonably should have known, that the plaintiffs would rely upon this information in purchasing their shares or, with respect to existing investors, that those investors would rely upon this information in determining not to redeem their shares and/or to purchase new and additional shares in the Funds.

218.    Citco NV did not utilize the requisite skill and knowledge to perform its duties as administrator, woefully failed to exercise ordinary and reasonable care in

the application of its professional knowledge and skill, and woefully failed to use its best professional judgment in the application of its knowledge and skill.

219.    In the course of this conduct, Citco NV failed to inquire into many crucial facts, which, in the exercise of ordinary care, they should not have ignored and should have investigated.  Citco NV demonstrated a complete disregard for the rights of the plaintiffs, as well as for the security of their investments.

220.    Plaintiffs were damaged by Citco NV's negligence.  Plaintiffs would not have purchased and/or maintained their shares in the Funds had they known that Citco NV had engaged in the negligent conduct alleged herein.

221.    Each of the plaintiffs has been damaged by the wrongful conduct of Citco NV in that the plaintiffs were induced to purchase and/or hold shares in the Funds at inflated values until such time as the Funds were unable to honor redemption requests, which caused each plaintiff to lose a substantial portion of its investment.

222.    By reason of the foregoing, the plaintiffs are entitled to a judgment against Citco NV awarding them compensatory damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## FOURTEENTH CLAIM FOR RELIEF

### (Against PWC NA for Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder)

223.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

224.    This claim is brought on behalf of those plaintiffs who purchased all or part of their shares in the Funds after March 2000.

225.    The audit reports that were issued by PWC NA to Plaintiffs were materially false and misleading in that they falsely represented that the audits of the Funds' financial statements were conducted "in accordance with international standards on auditing." PWC NA's representation and commitment was false and misleading in that PWC NA did not conduct its audits of the Funds in the manner represented. Moreover, it did not establish reasonable procedures to confirm the values presented in the Funds financial statements as it claimed to have done.

226.    The audit reports issued by PWC NA were also materially false and misleading in that they falsely represented that the Funds' financial statements "[p]resented fairly, in all material respects the financial positions of [the Funds] ... in conformity with international accounting standards." In fact, as PWC NA knowingly or recklessly disregarded, the Funds' financial statements materially overstated the financial position, performance and net assets of the Funds and had not been prepared in accordance with international accounting standards.

227.    PWC NA knew or recklessly disregarded the fact that its audit reports would be a principal means by which investors would be induced to purchase shares of the Funds, in that there was no other purportedly independently verified information available to investors upon which they could rely to value the assets of the Funds. PWC NA further knew that plaintiffs would rely on this false and misleading information in making decisions on whether to purchase and retain shares in the Funds.

228.    The plaintiffs relied upon these misstatements in making investment and retention decisions with respect to the shares of the Funds. Plaintiffs would not have purchased the securities of the Funds at the prices they did, or at all, if

they had known that the statements made and/or caused to be made by PWC NA were materially false and misleading and/or omitted to state material facts necessary in order to make the statements accurate. Furthermore, had they known of such misstatements, the plaintiffs would have divested themselves of any securities they had purchased in the Funds.

229.    By virtue of the foregoing, PWC NA violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in that it, directly or indirectly, by use of means and instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct whereby it knowingly and/or recklessly made material misrepresentations and failed to correct misrepresentations which were materially false and misleading in light of the circumstances in which they were made, employed devices, schemes and artifices to defraud, participated in fraudulent manipulation and engaged in acts and practices and a course of business that operated as a fraud and deceit upon plaintiffs in connection with their purchase of shares of the Fund.

230.    Each of the plaintiffs has been damaged by PWC NA's wrongful conduct in that such wrongful conduct caused each of them to purchase and/or hold shares in the Funds at inflated values and to retain those shares until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment in the Funds.

231.    By reason of the foregoing, the plaintiffs are entitled to judgment against PWC NA awarding the plaintiffs compensatory damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

67

## FIFTEENTH CLAIM FOR RELIEF

### (Against PWC NA for Common Law Fraud)

232.  Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

233.  As set forth more fully above, PWC NA knowingly and/or recklessly issued materially false and misleading audit reports, specifically addressing such audit reports to the investors in the Funds, including plaintiffs.

234.  PWC NA materially misrepresented to the plaintiffs that it had conducted audits in accordance with international standards on auditing, and that it had a reasonable basis for expressing its opinion that the Funds' financial statements were fairly presented in accordance with international accounting standards.  Neither of these statements was correct.  In fact, PWC NA had not conducted any meaningful audit in accordance with international standards on auditing, and PWC NA had no reasonable basis upon which to express an opinion on the Funds' financial statements.

235.  Moreover, as detailed above, the audit reports issued by PWC NA were materially false and misleading in that they falsely represented that the Funds' financial statements "presented fairly, in all material respects, the financial positions" of the Funds.  In fact, as PWC NA knowingly or recklessly failed to know, the Funds' financial statements materially overstated the Funds' NAV.

236.  PWC NA knew that investors would rely upon the fact that it had audited the Funds' financial statements in deciding to invest in the Funds, and in deciding not to redeem their shares.  PWC NA's audit opinions gave investors, including plaintiffs, a false sense of security in the historical performance of the Funds and

provided investors with assurance that the returns being reported by the Funds had been independently verified by a "Big Four" accounting firm. PWC NA's misrepresentations in its audit opinions concerning the adequacy of its audits and the basis for its opinions were material.

237. Plaintiffs relied on PWC NA's misrepresentations in deciding to purchase shares in the Funds, to increase their investments in the Funds and/or not to redeem the shares they held. Given that there was no other purportedly independent verification of the Funds' financial information, PWC NA knew or recklessly disregarded that the audit reports it issued would be a principal means by which investors would be induced to purchase shares of the Funds, to increase their shares in the Funds and/or to retain their existing shares. PWC NA was under an affirmative duty to obtain competent evidentiary material verifying the assets held by the Funds, as well as the true value of such assets, yet it failed to do so.

238. Each of the plaintiffs has been damaged by PWC NA's wrongful conduct in that such wrongful conduct caused each of them to purchase and/or hold shares in the Funds at inflated values and to retain those shares until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment.

239. The fraudulent conduct of PWC NA, as outlined above, was done purposefully, maliciously, recklessly and without regard for the rights and interests of the plaintiffs.

240. By reason of the foregoing, the plaintiffs are entitled to a judgment against PWC NA, awarding the plaintiffs compensatory and punitive damages in an

amount to be determined at the trial of this action, together with interest at the statutory rate.

## SIXTEENTH CLAIM FOR RELIEF

### (Against PWC NA for Aiding and Abetting Common Law Fraud)

241.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

242.    Defendant PWC NA played a significant and vital role in the fraudulent scheme alleged herein, with knowledge or reckless disregard thereof.

243.    PWC NA knowingly and substantially aided and abetted the fraud committed by Lauer and the Director Defendants by providing the Funds with clean audit opinions purportedly performed in accordance with the acceptable international accounting procedures.

244.    Plaintiffs derived great comfort from PWC NA's participation in the business of the Funds, particularly  PWC NA's consistently clean audit opinions.

245.    PWC NA knowingly or recklessly failed in its role as auditor of the Funds. PWC NA knew or should have known that the Funds' NAV that it was "auditing" was grossly over-inflated.

246.    The conduct of PWC NA proximately caused significant damage to the plaintiffs.  The fraud could not have succeeded without the active and knowing participation of PWC NA.

247.    Each of the plaintiffs has been damaged by the wrongful conduct of PWC NA in that the plaintiffs were induced to purchase and/or hold shares of the Funds at inflated values, and to retain those shares until such time as the Funds were unable

70

to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment in the Funds.

248.    PWC NA's conduct was purposeful and malicious, or reckless, and departed in the extreme from the norms expected of an auditor. PWC NA cavalierly disregarded its duties to, and the interests of, the plaintiffs.

249.    By reason of the foregoing, plaintiffs are entitled to a judgment against PWC NA awarding the plaintiffs compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

<u>**SEVENTEENTH CLAIM FOR RELIEF**</u>

**(Against PWC NA for Aiding and Abetting Breach of Fiduciary Duty)**

250.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

251.    PWC NA knew or recklessly disregarded the fact that Lauer and the Director Defendants all owed fiduciary and other obligations to the plaintiffs, and knew or recklessly disregarded the fact that these Defendants were breaching said obligations by engaging in the conduct alleged herein.

252.    With such knowledge, PWC NA knowingly participated, aided and abetted, and otherwise conspired to bring about Lauer and the Director Defendants' breaches of fiduciary obligations by, <u>inter alia</u>, issuing "clean" audit opinions in 2000 and 2001.

253.    Each of the plaintiffs has been damaged by the wrongful conduct of PWC NA in that the wrongful conduct caused each plaintiff to purchase and/or hold shares in the Funds at inflated values until such time as the Funds were unable to honor

redemption requests, causing each plaintiff to lose a substantial portion of its investment.

254.    PWC NA's wrongful conduct, as alleged herein, was done purposefully, maliciously, recklessly, and without regard for the rights and interests of the plaintiffs.

255.    By reason of the foregoing, the plaintiffs are entitled to a judgment against PWC NA awarding the plaintiffs compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

## EIGHTEENTH CLAIM FOR RELIEF

### (Against PWC NA for Negligence, Negligent Misrepresentation and Professional Malpractice)

256.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

257.    PWC NA had a duty to the plaintiffs to independently audit the books and records of the Funds.  The audits prepared by PWC NA were specifically addressed and distributed to the investors in the Funds.

258.    PWC NA performed its duties negligently and/or grossly negligently, thereby enabling Lauer and the Director Defendants to perpetrate and continue their fraudulent scheme.  PWC NA failed to properly audit the financial records of the Funds and to ensure the accuracy of the NAV values supplied by Lauer.

259.    PWC NA knew, or reasonably should have known, that the plaintiffs would rely upon its audits in purchasing their shares or, with respect to existing

plaintiffs, that those plaintiffs would rely upon this information in determining not to redeem their shares and to purchase new and additional shares in the Funds.

260.    PWC NA did not utilize the requisite skill and knowledge to perform its duties as auditor, woefully failed to exercise ordinary and reasonable care in the application of its professional knowledge and skill, and woefully failed to use its best professional judgment in the application of its knowledge and skill.

261.    In the course of this conduct, PWC NA failed to inquire into many crucial facts, which, in the exercise of ordinary care, they should not have ignored and should have investigated.  PWC NA demonstrated a complete disregard for the rights of the plaintiffs, as well as for the security of their investments.

262.    PWC NA failed to perform duties with the due and professional care required of an experienced auditor of hedge funds such as Lancer Offshore and OmniFund.

263.    Plaintiffs were damaged by PWC NA's negligence.  Plaintiffs would not have purchased or maintained their shares in the Funds had they known that PWC NA had engaged in the negligent conduct alleged herein.

264.    Each of the plaintiffs has been damaged by the wrongful conduct of PWC NA in that the plaintiffs were induced to purchase and/or hold shares in the Funds at inflated values until such time as the Funds were unable to honor redemption requests, which caused each plaintiff to lose a substantial portion of its investment.

265.    By reason of the foregoing, the plaintiffs are entitled to a judgment against PWC NA awarding them compensatory damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

73

## NINETEENTH CLAIM FOR RELIEF

### (Against B of A for Aiding and Abetting Common Law Fraud)

266. Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

267. Defendant B of A played a significant and vital role in the fraudulent scheme alleged herein, with knowledge or reckless disregard thereof.

268. B of A knowingly and substantially aided and abetted the fraud committed by Lauer and the Director Defendants by allowing Lauer to create false position reports from B of A's computer system which were then given to PWC NA and Citco NV by Lauer as part of the preparation of fraudulent audit reports and monthly NAV statements. Upon information and belief, B of A knew that Lauer was generating these B of A Position Reports and providing them to the auditor, administrator and certain investors.

269. The conduct of B of A proximately caused significant damage to the plaintiffs. The fraud could not have succeeded without the active and knowing participation of B of A.

270. Each of the plaintiffs has been damaged by the wrongful conduct of B of A in that the plaintiffs were induced to purchase and/or hold shares of the Funds at the inflated values set forth in the monthly NAV statements, audit reports and/or B of A Position Reports, and to retain those shares until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment in the Funds.

74

271.   B of A's conduct was purposeful and malicious, or reckless, and departed in the extreme from the norms expected of a prime broker and custodian. B of A cavalierly disregarded its duties to, and the interests of, the plaintiffs.

272.   By reason of the foregoing, plaintiffs are entitled to a judgment against B of A awarding the plaintiffs compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

### TWENTIETH CLAIM FOR RELIEF

#### (Against B of A for Aiding and Abetting Breach of Fiduciary Duty)

273.   Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

274.   B of A knew or recklessly disregarded the fact that Lauer and the Director Defendants owed fiduciary and other obligations to the plaintiffs, and recklessly disregarded the fact that Lauer and the Director Defendants were breaching said obligations by engaging in the conduct alleged herein.

275.   With such knowledge, B of A knowingly participated, aided and abetted, and otherwise conspired to bring about Lauer and the Director Defendants' breaches of fiduciary obligations by, inter alia, allowing Lauer to create and forward to the auditor and administrator false position reports from B of A's computer system which were then used by PWC NA and Citco NV to prepare fraudulent audit reports and monthly NAV statements.  These B of A Position Reports were also provided, at times, to certain investors who relied upon such reports in making investment and retention decisions. Upon information and belief, B of A knew that Lauer was generating these B of A Position Reports and providing them to the auditor, administrator and/or certain investors.

276.    The conduct of B of A proximately caused significant damage to the plaintiffs. The breaches of fiduciary duty could not have occurred undetected without the active and knowing participation of B of A.

277.    Each of the plaintiffs has been damaged by the wrongful conduct of B of A in that the wrongful conduct caused each plaintiff to purchase and/or hold shares in the Funds at inflated values set forth in the monthly NAV statements and audit reports until such time as the Funds were unable to honor redemption requests, causing each plaintiff to lose a substantial portion of its investment.

278.    B of A's wrongful conduct, as alleged herein, was done purposefully, maliciously, recklessly, and without regard for the rights and interests of the plaintiffs.

279.    By reason of the foregoing, the plaintiffs are entitled to a judgment against B of A awarding the plaintiffs compensatory and punitive damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

### TWENTY-FIRST CLAIM FOR RELIEF

### (Against IFS for Negligence and Professional Malpractice)

280.    Plaintiffs repeat and reallege, as if set forth in full herein, the allegations of all of the preceding paragraphs of this Complaint.

281.    IFS had a duty to the plaintiffs to independently calculate and verify the NAVs each month, to verify that the NAVs used by Lauer reflected market value and to send accurate NAV statements to plaintiffs. IFS sent fraudulent NAV statements directly to the plaintiffs.

282.    IFS performed its duties negligently, thereby enabling Lauer to perpetrate and continue his fraudulent scheme. IFS failed to independently confirm or assess the NAVs of the Funds and to ensure the accuracy of the values supplied by Lauer. IFS simply used Lauer's valuations to calculate and send false NAV statements to plaintiffs.

283.    IFS did not utilize the requisite skill and knowledge to perform its duties as administrator, woefully failed to exercise ordinary and reasonable care in the application of its professional knowledge and skill, and woefully failed to use its best professional judgment in the application of its knowledge and skill.

284.    In the course of this conduct, IFS failed to inquire into many crucial facts, which, in the exercise of ordinary care, it should not have ignored and should have investigated. IFS demonstrated a complete disregard for the rights of the plaintiffs, as well as for the security of their investments.

285.    Plaintiffs were damaged by IFS' negligence. Plaintiffs would not have maintained their shares in the Funds had they known that IFS had engaged in the negligent conduct alleged herein.

286.    Each of the plaintiffs has been damaged by the wrongful conduct of IFS in that the plaintiffs were induced to hold shares in the Funds at inflated values until such time as the Funds were unable to honor redemption requests, which caused each plaintiff to lose a substantial portion of its investment.

287.    By reason of the foregoing, the plaintiffs are entitled to a judgment against IFS awarding them compensatory damages in an amount to be determined at the trial of this action, together with interest at the statutory rate.

77

## **CONCLUSION**

WHEREFORE, plaintiffs demand judgment from this Court awarding:

(1)    Compensatory damages to all plaintiffs against the defendants, jointly and severally, in an amount to be determined at the trial of this action, but no less than the entire consideration paid by these plaintiffs for their interests in Lancer Offshore and OmniFund;

(2)    On Counts 2, 3, 9, 10, 11, 12, 15, 16, 17, 19 and 20, punitive damages in an amount to be determined at the trial of this action.

(3)    Interest on any award at the appropriate statutory or other rate; and.

(4)     Such other and further relief as this Court deems just and proper to adequately compensate plaintiffs.

Plaintiffs further demand a trial by jury of all claims set forth in this Complaint.

Dated:     Miami, Florida
           February 12, 2004

Genovese Joblove & Battista, P. A.

By: _____
           David C. Cimo, Esq. # 775400
36th Floor
100 S.E. 2nd Street
Miami, Florida  33131
305-349-2300
305-349-2310 (fax)

        -AND-

BROWN RUDNICK BERLACK ISRAELS LLP

Scott M. Berman (SB-4023)*
    120 West 45th Street
    New York, New York 10036
    (212) 704-0100

Gregory T. Arnold (GA-2147)*
Travis Corder (TC-7552)*
    One Financial Center
    Boston, Massachusetts 02111
    (617) 856-8200

Attorneys for the Plaintiffs

*Not admitted to practice in Florida

#1253662 v\3 - arnoldgt - qvby03!.doc   - 24027/1

79