Form: All Guided Search Forms > **News**
Terms: (Edit Search)

↙Select for FOCUS™ or Delivery
☐

*The New York Post January 27, 2003, Monday*

Copyright 2003 N.Y.P. Holdings, Inc. All rights reserved.
The New York Post

January 27, 2003, Monday

**SECTION:** All Editions; Pg. 035

**LENGTH:** 1469 words

**HEADLINE:** HEDGE FUND SQUEEZE - AS INVESTORS STORM THE GATES, LANCER PAYS STOCK, NOT CASH

**BYLINE:** Christopher Byron

**BODY:**
IS a nearly $1 billion hedge fund on Park Avenue in financial hot water?

That's the worry confronting investors in the Lancer Offshore Fund - the subject of some critical recent coverage in this space - as the news spread last week that the fund is undergoing a severe, and intensifying, liquidity squeeze.

Confronted with what the fund itself calls "unprecedented" redemption demands that are "tantamount to a run on the bank" from its own investors, the Lancer folks were busy last week explaining that the fund's shareholders wouldn't be getting their money back in cash. Instead, payment would be coming in the form of shares in a specially created new fund - this one with a portfolio containing a portion of the same illiquid stocks from the current fund's portfolio.

One immediate concern is how far the ripples will spread, as banks and other creditors that may have extended loans secured by the fund's shares begin to wonder whether the collateral they're holding is worth what they thought. A Lancer lawyer describes the fund's investors as including "prestigious domestic and international public pensions and endowments."

More than a few of the fund's investors will doubtless be asking some tough questions of Lancer's white-shoe accounting firm of PricewaterhouseCoopers as a result of all this. Among other things, Lancer's most recent audit is based on the notion that the fund itself is best equipped to decide how much its portfolio is actually worth. PricewaterhouseCoopers declined to comment on any aspect of the matter.

Yet Lancer's investors really have no one to blame but themselves for buying into this mess. That's because everything about the fund - from its ultra-high-risk investment strategy of speculating in volatile small-cap stocks to its claimed right to say what those investments would be worth once they'd been added to the portfolio - was all spelled out for investors from the beginning.

The investors could - and should - have seen that the Lancer Offshore fund, a creature of the late 1990s bull market, was basically just a penny-stock house of cards. Supported by bull market greed that inevitably morphed in time into bear market fear, the fund has been attempting since summer to hold that fear at bay by means of a strange accounting theory -

and that effort, too, now seems to have failed.

The news regarding Lancer is the latest jolt to the badly shaken hedge fund industry, which has been rocked by periodic fund failures since the collapse of Greenwich, Conn.-based Long Term Capital Management four years ago. In the Lancer case, the potential losses are smaller to be sure. But the situation is nonetheless unsettling, unfolding as it does in the half-lit gloom of offshore finance, where oversight by U.S. regulators is almost nonexistent.

As such, the Lancer affair serves as yet another reminder that lack of meaningful regulation of the hedge fund industry - especially its so-called "offshore" arena - has created what amounts to a ticking time bomb in the capital markets of America.

The danger lies in the thousands of offshore funds that have set up shop to exploit America's financial markets free of public accountability or control.

Legitimate offshore hedge funds certainly conduct business from these palm-shaded island nations. But the lack of disclosure required of the funds makes it almost impossible to tell the good guys from the bad.

Late last month the U.S. Federal Reserve, the Treasury Department and the SEC issued a joint report on terrorism and money laundering, warning that funds based in offshore tax haven jurisdictions were "particularly attractive" to money launderers, and calling for tougher regulations to govern their activities.

Be that as it may, a review of the fund's latest audit, prepared by PricewaterhouseCoopers and released last summer, alone makes clear enough why the investors now want their money back.

Beginning in 2001 - and with the stock market in a state of accelerating decline - PricewaterhouseCoopers agreed to let the fund's board of directors dramatically expand the use of a murky sounding "methodology" developed by the fund's founder and investment manager, **Michael Lauer,** to decide how much the portfolio was actually worth.

In the audit of the previous year, 2000, the explanatory notes make clear that 89.9 percent of the portfolio was valued according to the price of its securities on the public market.

But the notes for the following year - 2001 - say that "100%" of the fund's investment securities were now being valued on the basis of Lauer's "methodology" - on which basis the portfolio was reported to be worth $827 million.

Late last week, Lauer issued a brief half-page fax describing the methodology as consisting of an "oversight committee's appraisal of independent third parties' assessments of all holdings" to decide whether or not the market prices of the securities "reflect fair value." The fax suggested that the whole procedure had been prudently put in place to assure that the portfolio wasn't somehow overvalued, and that on occasion the portfolio's assets had actually been marked down on the basis of it.

But altruism hardly seemed to play much of a part in the actual audit - at least according to the document's accompanying notes, which say nothing about "oversight committees" and "independent third parties' assessments." Instead, the notes say it was the fund's board of directors, in conjunction with Lauer, who together came up with the value of the portfolio, cautioning that the resulting number of $827 million is nothing but an estimate that might never pan out.

Why was this new "methodology" being used? According to the notes, roughly two-thirds of the entire portfolio consisted of companies in which the fund was the controlling shareholder,

meaning the fund had gone from "stockholder" in the 1990s bull market to "stuckholder" in the bear market that has followed.

Stripped of jargon like "trigger events" and "pricing inefficiencies," the Lancer strategy boiled down to pouring most of the fund's money into large positions in cheap, micro-cap stocks, then hoping to get bailed out when some unexpected future development would send the stock soaring in the volatile market for low-priced stocks.

Put simply, this was plain old gambling in penny stocks. In the frothy bull market of the late 1990s, rising stock prices lifted the value of the Lancer portfolio along with the prices of penny stocks everywhere, enabling the fund to report the double-digit performance gains that kept new money flowing in.

But when the market tanked, so did the fund's portfolio, and when investors tried to begin pulling their money back out at mid-year 2002, they discovered what they should have realized all along: The money had been sunk into a portfolio of illiquid penny stocks that were hard to unload even in an up market, let alone one that was collapsing.

Against that backdrop, the switch from market pricing to the Lauer "methodology" seems to have been little more than an 11th-hour effort to stave off the very redemption calls the switch seems to have accelerated instead.

In the end, that is why the fund - with its back to the wall and unable to meet its redemption calls by selling off the portfolio's illiquid assets - has at last decided to take what seems the only course left, and begin divvying out the unwanted holdings to the very people who actually own them already: the fund's own investors.

\*

LAST week The Post received a letter from lawyers representing the Lancer Offshore Fund, asserting several errors in our stories of Sept. 10, 2002, and Jan 13, 2003. The letter asserts only one error in the Sept. 10 story, claiming that the story alleges the Lancer fund's books and records to be unaudited. The story makes no such assertion, directly or indirectly.

The letter also charges that in our story of January 13, some artwork material that was not part of the text states that **Michael Lauer** is a "colleague" of three individuals. The Post wishes to clarify the word to mean that Lauer's ties to the named individuals refer only to the ties documented in the story, which are drawn from the public records of the U.S. Securities and Exchange Commission.

-----

"A run on the bank"

A PricewaterhouseCoopers audit said the Lancer Offshore hedge fund began last year with a portfolio of more than $800 million. Now the fund faces a severe liquidity crisis.

* A PWC audit says the fund had $827 million in securities at the end of 2001.

* The portfolio's 2001 valuation was based on a "methodology" of the fund's investment manager - not on actual market values.

* Now the fund is paying back its investors with a portfolio of the same stocks they already own.

**LOAD-DATE:** January 27, 2003