UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/7/05

:

THE PENSION COMMITTEE OF THE
UNIVERSITY OF MONTREAL
PENSION  PLAN, et al.,                              :

        Plaintiffs,                              :

  - against -                                          :

BANC OF AMERICA SECURITIES,
LLC; CITCO FUND SERVICES                 :
(CURACAO) N.V.; THE CITCO GROUP
LIMITED; INTERNATIONAL FUND           :
SERVICES (IRELAND) LIMITED;
PRICEWATERHOUSECOOPERS               :
(NETHERLAND ANTILLES); JOHN W.
BENDALL, JR.; RICHARDGEIST;              :
ANTHONY STOCKS; KIERAN
CONROY; and DECLAN QUILLIGAN;  :

       Defendants.                              :

**OPINION AND ORDER**

**05 Civ. 9016 (SAS)**

------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

A group of eighty-seven investors ("Investment Group" or "plaintiffs") is suing International Fund Services Ireland ("IFSI") for breach of fiduciary duty, professional malpractice and negligence in its administration of two off-shore hedge funds, Lancer Offshore, Inc. and The Omnifund, Ltd.

1

("Funds"), operated by Michael Lauer.[1] In its Amended Complaint, the

Investment Group invokes this Court's subject matter jurisdiction under 15 U.S.C.

§ 78aa and 28 U.S.C. §§ 1331 and 1367.[2] IFSI now moves to dismiss the

Complaint on two grounds: lack of personal jurisdiction under Federal Rule of

Civil Procedure ("Rule") 12(b)(2) and failure to state a claim pursuant to Rule

12(b)(6).[3] For the reasons that follow, IFSI's motion to dismiss for lack of

personal jurisdiction is denied. The 12(b)(6) motion will be addressed in a

separate opinion.

## I.    BACKGROUND

The Investment Group, comprised of investors from a variety of

countries, collectively invested upwards of five hundred eighty million dollars in

the two British Virgin Islands based Funds, both of which are in liquidation.[4]

Plaintiffs allege that virtually all of the money invested in the Funds has been

---

[1]      *See* Corrected First Amended Complaint ("Compl.") ¶¶ 193-198, 280-287.

[2]      *See id.* ¶ 26 (alleging both diversity and federal question jurisdiction).

[3]      *See* Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Mem.") at 2.

[4]      *See* Compl. ¶ 1.

lost.[5] Plaintiffs further allege that this loss was caused by a fraudulent scheme

known as "marking the close."[6] In such a scheme, hedge fund managers

artificially inflate the reported value of their holdings by acquiring a controlling

stake in thinly traded stocks. Then, when they report the value of the holdings to

shareholders, they purchase additional shares of these stocks at artificially high

prices. The hedge fund reports the value of its stocks based solely on the

artificially high prices, creating a portfolio value that is vastly higher than its true

value.[7] The Investment Group contends that this scheme was successful due to the

reckless and negligent conduct of the Funds' service providers, including IFSI, the

Funds' administrator.[8]

## A.    The Parties

The Investment Group is made up of eighty-seven investors, at least

four of whom are located in New York.[9] Each plaintiff invested money in the

---

[5]      *See id.* ¶¶ 1-2.

[6]      *Id.* ¶¶ 3-4.

[7]      *See id.* ¶¶ 2-4.

[8]      *See id.* ¶¶ 6-12.

[9]      *See id.* ¶ 14 (Cedar Fund, HSBC Republic, Defined Benefit Plan for
Hunicutt & Co., and IRA f/b/o William Hunnicutt VFTC as Custodian, are all
New York residents).

3

Funds during the period from 1997 until 2002, with the amount invested ranging from fifty thousand to fifty million dollars.[10]

IFSI is an Irish corporation that provides administrative services to off-shore hedge funds.[11] IFSI is affiliated with International Fund Services of North America ("IFS NA") based in New York, and both IFSI and IFS NA are subsidiaries of State Street Corporation, a Massachusetts corporation.[12]

IFSI became the administrator of the Funds pursuant to Administrative Services Agreements (the "Agreements") in 2002.[13] These Agreements outlined IFSI's responsibilities, which included providing daily reporting, maintaining a register of shareholders of the Funds, calculating the net asset value ("NAV") of the Funds for monthly NAV statements, preparing investor

---

[10]    *See id.* ¶¶ 14(a)-14(hhhh).

[11]    *See* Reply Affidavit of Susan Byrne, Managing Director of Shareholder Services for IFSI ("Byrne Reply Aff.") ¶ 6.

[12]    *See id.* ¶ 5; *see also* SEC Form for State Street Corp., Ex. 13 to Declaration of Anne Beaumont, Counsel for Plaintiffs ("Beaumont Decl.").

[13]    *See* Compl. ¶¶ 109, 110. *See also* Administrative Services Agreement Between IFSI and Lancer Offshore, Inc. ("Lancer Offshore Services Agreement"), Ex. A to Affidavit of Susan Byrne, Managing Director of Shareholder Services for IFSI ("Byrne Aff.") (dated July 1, 2002); Administrative Services Agreement Between IFSI and The Omnifund, Ltd. ("Omnifund Services Agreement"), Ex. B to Byrne Aff. (dated November 1, 2002).

4

statements, and many other tasks.[14]  Because shareholders often did not know

which stocks were held by the Funds, and therefore could not monitor their value,

the investors relied on the NAV statements to evaluate the Funds' performance.[15]

IFSI prepared the NAV statements using the stock price figures supplied by Lauer

and Lancer Management Group, a company controlled by Lauer.[16]  Lauer was

allegedly overstating the value of the stocks owned by the Funds, and thus the

stock prices provided to IFSI were also overstated.[17]  The Investment Group

claims that it relied upon these fraudulently compiled NAV statements, as well as

other communications provided by IFSI, in making investment decisions

concerning the Funds.[18]

## B.    Jurisdictional Allegations

In its Complaint and response to IFSI's motion to dismiss, the

Investment Group asserts that this Court has personal jurisdiction over IFSI under

New York's long arm statute pursuant to sections 301 and 302 of the New York

---

[14]     *See* List of Services, Ex. A to Lancer Offshore Services Agreement;
List of Services, Ex. A to Omnifund Services Agreement; Compl. ¶¶ 12, 110, 195.

[15]     *See* Compl. ¶¶ 3, 112, 196-197, 285-287.

[16]     *See id.* ¶¶ 282-284; *see also* Def. Mem. at 3.

[17]     *See* Compl. ¶¶ 281-284.

[18]     *See id.* ¶¶ 197, 285-286.

Civil Practice Laws and Rules.[19]

## 1.   General Jurisdiction

In support of its claim for general jurisdiction under section 301, the Investment Group alleges that IFSI maintains offices in New York, maintains New York-based computer facilities, and distributes recruiting material listing IFSI's New York offices and its many New York-based clients.[20]   The Investment Group asserts that these contacts are continuous and systematic such that IFSI is doing business in New York and is therefore subject to personal jurisdiction within the state.[21]   While IFSI does not contest that IFS NA has offices and computer facilities in New York, it argues that this is irrelevant, as IFS NA is a separate entity from IFSI.[22]   IFSI claims that it has no clients in New York, and that it does not solicit business from New York based companies.[23]   IFSI denies any direct

---

[19]      *See id.* ¶ 33; Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss ("Pl. Mem.") at 1.

[20]      *See* Compl. ¶ 33; Pl. Mem. at 20-21.

[21]      *See* Compl. ¶ 33; Pl. Mem. at 20-21.

[22]      *See* Reply Memorandum in Further Support of Defendant's Motion to Dismiss ("Reply Mem.") at 6; Byrne Reply Aff. ¶¶ 6, 7.  Plaintiffs do not argue that IFSI and IFS NA are the same company, or that facts relevant solely to IFS NA can be used as a basis for exercising jurisdiction over IFSI.

[23]      *See* Byrne Reply Aff. ¶ 6.

link to IFS NA, other than that both companies are owned by the same parent corporation, and that for a short period of time the president of IFS NA had the power to sign documents on behalf of IFSI.[24]

## 2.    Specific Jurisdiction

The Investment Group asserts that IFSI transacted business in New York and contracted to provide services in New York as defined by section 302(a)(1). In particular, the Investment Group notes that the Funds were managed by Lauer from his New York offices, that IFSI had frequent contact with Lauer's New York offices, and that IFSI entered into the Agreements, which created a "'continuing commercial obligation' to the Funds in New York."[25] The Investment Group also relies on forum selection clauses in the Agreements that designate New York as the forum for all disputes arising out of the Agreements, as well as a website allowing New York investors to access their IFSI accounts, as evidence that IFSI transacted business in New York.[26]

Finally, the Investment Group claims that IFSI committed a tortious

---

[24]    *See id.*; *see also* Declaration of Eugene Mannella, former President of IFS NA ("Mannella Decl.") ¶ 2.

[25]    Pl. Mem. at 11 (citing *First Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)).

[26]    *See id.* at 12.

act outside New York, namely, compiling false NAV statements in Ireland, that caused injury to investors in New York, thereby permitting the exercise of jurisdiction under section 302(a)(3).[27] The Investment Group argues that IFSI derives substantial revenue from interstate commerce and should reasonably have expected to face suit in New York due to the nature of its international practice and its targeted misrepresentations to investors within the state.[28] Without conceding that it is responsible for any misleading NAV statements, IFSI denies that its actions caused an injury to plaintiffs within New York, arguing that the harm occurred where the faulty statements were created, not where the statements were received and relied upon by investors.[29]

## II. APPLICABLE LAW

### A. Rule 12(b)(2)

The plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant.[30] Prior to discovery, a plaintiff may defeat a motion to dismiss by making a prima facie showing that the defendant is subject to

---

[27] *See id.* at 16-18.

[28] *See id.*

[29] *See* Reply Mem. at 5-6.

[30] *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 & n.3 (2d Cir. 1994).

personal jurisdiction in New York.[31] Ultimately, a plaintiff must demonstrate that the court has personal jurisdiction by a preponderance of the evidence, but prior to discovery, "allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."[32] Where a defendant has contested a plaintiff's allegations with "highly specific, testimonial evidence regarding a fact essential to jurisdiction – and plaintiffs do not counter that evidence – the allegation may be deemed refuted."[33]

## B. Personal Jurisdiction

Personal jurisdiction in a diversity action "is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee."[34] There is a two-part test to establish personal jurisdiction: (1) the plaintiff must demonstrate that the

---

[31]   *See A.I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993).

[32]   *Id.* at 79-80.

[33]   *Schenker v. Assicurazioni Generali S.p.A., Consol.,* No. 98 Civ. 9186, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002). *Accord Allojet PLC v. Vantage Assocs.*, No. 04 Civ. 05223, 2005 WL 612848, at *3 (S.D.N.Y. Mar. 15, 2005).

[34]   *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963).

9

defendant is subject to jurisdiction under New York law; and (2) this exercise of jurisdiction must comport with constitutional due process requirements.[35] The due process requirement of the Fourteenth Amendment requires that, in order for a court to exercise jurisdiction over a non-resident defendant, the defendant must have "'certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[36] Both of these determinations are "necessarily fact sensitive because each case is dependent upon its own particular circumstances."[37]

### 1. General Jurisdiction Under Section 301

Under section 301, a defendant is subject to jurisdiction in New York if it is "doing business" within the state.[38] This standard is stringently applied, as a finding of general jurisdiction permits a party to be sued for conduct wholly

---

[35] *See Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 22-24 (2d Cir. 2004); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997).

[36] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[37] *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (quotation omitted).

[38] N.Y. C.P.L.R. § 301 (McKinney 2003).

unconnected to its contacts with the forum state.[39] A defendant is only subject to general jurisdiction if it has been doing business within New York in a "continuous, permanent, and substantial" manner.[40] This requirement can be met by proof of "1) the existence of an office in New York; 2) the solicitation of business in New York; 3) the existence of bank accounts or other property in New York; and 4) the presence of employees in New York."[41] This list is non-exclusive, as a court must look at the case as a whole rather than focusing on any single factor.[42]

## 2. Specific Jurisdiction Under Section 302(a)(1)

Under section 302(a)(1) a court may exercise specific jurisdiction over a non-domiciliary defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." Two conditions must be met before a court exercises jurisdiction under this section; the non-domiciliary

---

[39]   *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990) (citing *Cohen v. Vaughan Bassett Furniture Co.*, 495 F. Supp. 849, 850 (S.D.N.Y. 1980)).

[40]   *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (quotation omitted).

[41]   *Carell v. Shubert Org.*, 104 F. Supp. 2d 236, 268 (S.D.N.Y. 2000) (quotation omitted).

[42]   *See PDK Labs*, 103 F.3d at 1108; N.Y. C.P.L.R. § 302(a)(3).

defendant must transact business within New York, and the claim against the non-domiciliary defendant must arise directly out of this activity.[43] In deciding whether a defendant has transacted business within New York, courts ask whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."[44] There is no definitive test to determine if a defendant has purposefully availed itself of the privilege of conducting activities in New York. Rather, the totality of the defendant's contacts must be reviewed to determine whether jurisdiction is proper.[45]

### 3. Specific Jurisdiction Under Section 302(a)(3)(ii)

Section 302(a)(3)(ii) allows a court to exercise jurisdiction over a non-domiciliary defendant who "commits a tortious act without the state causing injury to a person or property within the state" if he "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."[46] In deciding where an injury occurs,

---

[43]     *See Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

[44]     *Bradley v. Staubach*, No. 03 Civ. 4160, 2004 WL 830066, at *4 (S.D.N.Y. Apr. 12, 2004). *Accord Cutco Indus.*, 806 F.2d at 365.

[45]     *See Cutco Indus.*, 806 F.2d at 368.

[46]     N.Y. C.P.L.R. § 302(a)(3).

New York courts generally apply a situs of injury test, whereby an injury is deemed to occur where the tortious action takes place, not where the harm to the plaintiff is first realized.[47] The situs of the injury is "generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort."[48]

This general rule is difficult to apply to commercial torts, an area of law that this circuit has acknowledged is "not the type [of case]" which section 302(a)(3) "was primarily designed to cover."[49] In cases of commercial fraud or misrepresentations, the tortious act is complete when the false statement is received and relied upon, thereby causing economic injury.[50] This leads courts to find that a "plaintiff's reliance in New York on defendant's misrepresentation

---

[47] *See Whitaker v. American Telecasting*, 261 F.3d 196, 209 (2d Cir. 2001).

[48] *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999).

[49] *American Eutectic Welding Alloys Sales v. Dytron Alloys Corp.*, 439 F.2d 428, 432 (2d Cir. 1971). *Accord Hargrave v. Oki Nursery*, 636 F.2d 897, 900 (2d Cir. 1980).

[50] *See Hargrave*, 636 F.2d at 900; *see also Schultz v. Ocean Classroom Found.*, No. 01 Civ. 7487, 2004 WL 488322, at *7 (S.D.N.Y. Mar. 15, 2004); *Palace Exploration Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 435 (S.D.N.Y. 1998).

13

fixes the situs of the injury in New York."[51] This rule only applies where the

misrepresentation results in direct and immediate economic harm to the plaintiff,

rather than indirect or incidental negative consequences,[52] and where the false

representations created a "'closer expectation of consequences within the State'

than the indirect loss of profits."[53] By requiring that a defendant expect to face

consequences within the state, courts have distinguished between cases involving

misrepresentations directed at parties within New York, and cases where the only

connection between a defendant and the state is that the plaintiff suffered

---

[51]     *Palace Exploration Co.*, 41 F. Supp. 2d at 435. *Accord Hargrave*,
636 F.2d at 900; *Rx USA Int'l v. Superior Pharm. Comp.*, No. 04 Civ. 5074, 2005
WL 3333843, at *3 (E.D.N.Y. Dec. 7, 2005).

[52]     *See Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) (no
jurisdiction over New Jersey employer for the incidental effect firing had on
employee's financial affairs in New York).

[53]     *Hargrave*, 636 F.2d at 900 (quoting *Fantis Foods v. Standard
Importing Co.*, 49 N.Y.2d 317, 326 (1980)) (exercising jurisdiction because
plaintiffs were domiciled and doing business in New York, and "[n]othing could
be a 'closer' or more 'direct' result from [defendant's] representations than the
extraction of money from plaintiffs in New York."). *Accord National Westminster
Bank PLC v. Retirement Care Assocs., Inc.*, No. 98 Civ. 6023, 1999 WL 239677,
at *8 (S.D.N.Y. Apr. 23, 1999) (exercising jurisdiction because defendant knew
that "its actions were directed at avoiding a financial obligation to a New York
entity under a contract that was partially negotiated and executed in New York and
should have expected that its actions would cause financial loss in New York").

economic harm in New York.[54] If the harm is determined to be within New York, a court must still find that the defendant reasonably expected that the act giving rise to the suit would have consequences in the state and that the defendant derives substantial revenue from interstate or international commerce.[55]

## 4.    Jurisdiction Based on Website Activity

The Investment Group also cites IFSI's interactive website as proof that the company transacted business within New York.[56] Because most websites are accessible anywhere in the world, acquiring jurisdiction over a defendant based on its website depends entirely upon the nature and quality of the commercial activity conducted online.[57] "Passive websites which primarily make information available to viewers, but do not permit an exchange of information, [do not] justify the exercise of specific jurisdiction over a non-domiciliary."[58] By contrast, when "the defendant clearly does business over the Internet, such as

---

[54]    *See Hargrave*, 636 F.2d at 900; *Rx USA Int'l*, 2005 WL 3333843, at *7; *Mije Assocs. v. Halliburton Servs.*, 552 F. Supp. 418, 420 (S.D.N.Y. 1982).

[55]    *See* N.Y. C.P.L.R § 302(a)(3).

[56]    *See* Pl. Mem. at 12.

[57]    *See Aqua Prods., Inc. v. Smartpool, Inc.*, No. 04 Civ. 5492, 2005 WL 1994013, at *5 (S.D.N.Y. Aug. 18, 2005).

[58]    *Id.*

where it repeatedly transmits computer files to customers in other states" the exercise of jurisdiction is appropriate.[59] However, not all cases fall neatly within these defined lines. Occupying the middle ground are "cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction."[60]

### 5. Due Process Requirements

The Due Process clause permits a state to exercise jurisdiction over a non-resident defendant who has "certain minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."[61] In meeting this standard, a plaintiff must make a prima facie showing that satisfies the two components of this test: the minimum contacts inquiry and the reasonableness inquiry.[62] The minimum contacts requirement

---

[59]     *Hsin Ten Enter. USA v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000). *Accord Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).

[60]     *Citigroup*, 97 F. Supp. 2d at 565. *Accord Allojet,* 2005 WL 612848, at *4.

[61]     *International Shoe*, 326 U.S. at 316.

[62]     *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

ensures that a defendant is not haled into court "solely as a result of random, fortuitous, or attenuated contacts."[63] In deciding whether an exercise of jurisdiction is reasonable, courts consider: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."[64]

## III.   DISCUSSION

### A.   General Jurisdiction

The Investment Group bases its argument that this Court can assert general jurisdiction over IFSI on the following allegations: (1) IFSI maintains offices and computer facilities in New York; (2) IFSI has regular contact with New York clients; (3) IFSI recruits Irish students to work in its New York office; and (4) IFSI's marketing material lists offices in New York, Dublin and the Grand

---

[63]     *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations omitted).

[64]     *Metropolitan Life Ins.*, 84 F.3d at 568 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano County*, 480 U.S. 102, 113-14 (1987)).

Cayman Islands.[65] If these allegations are true, they would constitute a prima facie

showing of jurisdiction under section 301.

But, in fact, the Investment Group has failed to distinguish IFSI from

the New York-based IFS NA. Affidavits submitted by Susan Byrne and Eugene

Mannella, the managing director of IFSI and the former President of IFS NA,

respectively, explicitly refute these allegations.[66] For example, while IFS NA

maintains offices and computer servers in New York, IFSI has neither.[67]

Similarly, with respect to New York-based clients, plaintiffs rely on an

International Fund Services marketing brochure listing a number of clients located

within the state.[68] However, this brochure refers to the services provided by

International Fund Services as a whole; not specifically to services provided by

---

[65]    *See* Pl. Mem. at 20-21; *see also* Fund Accounting, Administration and
Trade Support Services ("Fund Accounting"), Ex. 1 to Beaumont Decl., at 4, 7, 28.

[66]    *See* Byrne Aff. ¶ 6 ("IFSI has no physical office or other presence
within New York"), ¶ 8 ("IFSI currently has no customers or clients located in
New York and at all relevant times had no customers or clients located in New
York."); *see also* Byrne Reply Aff. ¶¶ 6-7 (IFSI and IFS NA maintain separate
computer systems, bank accounts and records); Mannella Decl. ¶ 2 (IFSI makes its
own administrative decisions apart from IFS NA).

[67]    *See* Byrne Reply Aff. ¶¶ 6-7.

[68]    *See* Pl. Mem. at 21.

18

IFSI.[69] Once again, Susan Byrne attests that IFSI only services off-shore hedge funds and does not manage New York-based funds.[70]

The recruitment of Irish students to work in New York does not satisfy the "doing business" test of section 301 because these solicitations occurred in Ireland, not in New York.[71] Further, the recruitment materials, submitted by the Investment Group, reveal that the brochures are recruitment tools for International Fund Services as a whole, rather than for IFSI in particular.[72]

In sum, the Investment Group's allegations of jurisdictional facts have explicitly been refuted by IFSI. Accordingly, there is no basis to find that IFSI is subject to the general jurisdiction of this Court.[73]

## B.    Specific Jurisdiction Under Section 302(a)(1)

---

[69]    *See* Fund Accounting at 28 (listing clients of International Fund Services, with no differentiation between clients of IFSI and IFS NA).

[70]    *See* Byrne Aff. ¶¶ 6, 8.

[71]    *See* ACCA Ireland – Graduate Guide, Ex. 14 to Beaumont Decl.; *see also* GradIreland: Sector Career Guides, Finance 2006, Ex. 15 to Beaumont Decl.

[72]    *See id.*; Byrne Reply Aff. ¶ 8 ("references to 'offices in New York' on the website and in other promotional material are to the offices of IFS NA").

[73]    I note that this finding is consistent with that of another court in this district, which recently held that because IFSI was not located in New York it could not be required to participate in discovery. *See The Jordan (Bermuda) Inv. Co. v. Hunter Green, Invs.*, No. 00 Civ. 9214, 2005 WL 3254578 (S.D.N.Y. Dec. 1, 2005).

### 1.    Transaction of Business in New York

The Investment Group alleges that IFSI transacted business in New York based on the following allegations:  (1) IFSI's contact with Lauer, who managed the two off-shore hedge funds from his offices in New York; (2) IFSI's mailing of fraudulent NAV statements to investors in New York; (3) an interactive website that allowed investors to access their IFSI accounts from New York; and (4) a forum selection clause in the Agreements between IFSI and Lauer that designated New York as the forum for any disputes arising from investments in the Funds.[74]

Assuming these allegations to be true, as I must at this stage of the litigation, they collectively are sufficient to support a prima facie showing of jurisdiction.  The Investment Group specifically alleges that IFSI failed to "independently confirm or assess the NAVs of the Funds and to ensure the accuracy of the values supplied by Lauer."[75]  These allegations are directly related to the contacts between IFSI and New York, as the nature of the contacts concerned the purportedly negligent administrative services provided by

---

[74]    *See* Pl. Mem. at 9-12; Lancer Offshore Services Agreement ¶ 18; Omnifund Services Agreement ¶ 18.

[75]    Compl. ¶ 282.

defendant. The website activity, in isolation, would not be sufficient for a finding of jurisdiction over IFSI. The website allowed hedge fund managers, rather than individual investors, to access investors' accounts, and did not permit a two-way exchange of information.[76] However, when considered together with the frequent contacts with Lauer and the regular mailings, the website adds some weight to the conclusion that IFSI does business in New York that is related to the claims in the Complaint.

## 2. Contracting to Supply Services in New York

The Investment Group alleges that IFSI contracted to supply services in New York by (1) agreeing to send NAV statements to investors in New York, (2) contracting to send reports to Lauer in New York on a daily basis, and (3) agreeing to transmit money to the Funds' brokerage accounts in New York.[77] IFSI contends that these services were supplied in Ireland, not New York, and that there is no direct connection between these services and the harm alleged by defendant.[78]

---

[76]     *See* Byrne Reply Aff. ¶ 9.

[77]     *See* Pl. Mem. at 15; *see also* Lancer Offshore Services Agreement; Omnifund Services Agreement.

[78]     *See* Reply Mem. at 4-5.

These allegations are sufficient at the pre-discovery pleading stage to establish that IFSI contracted to supply services in New York, and that there is a nexus between these services and the alleged harm. While IFSI did all of its administrative work concerning the Funds in Ireland, the services it contracted to provide to the Funds were supplied directly to the Funds' New York manager and multiple New York investors.[79] This is not a case where the fruits of the work done in Ireland had the indirect effect of benefitting the Funds in New York.[80] Rather, IFSI explicitly contracted to supply its administrative services to the New York manager and to investors of the Funds.[81]

There is a direct nexus between the services provided by IFSI in New York under its contract with the Funds and the claims against it. The Investment

---

[79] *See* Compl. ¶ 281; *see also* List of Services, Ex. A to Lancer Offshore Services Agreement; List of Services, Ex. A to Omnifund Services Agreement.

[80] *See Bank Brussels Lambert*, 171 F.3d at 789 (no exercise of jurisdiction when the defendant has not purposefully directed actions at the forum state).

[81] *See* Compl. ¶ 281; Services Agreement, at 11; *Schur v. Porter*, 712 F. Supp. 1140, 1145 (S.D.N.Y. 1989) (contracting to supply services clause of section 301(a)(1) should be read broadly to allow jurisdiction over a defendant who "'intentionally creates a contact with New York by contracting to do something having effects in New York'") (quoting Recommendation of the Law Revision Commission to the 1979 Legislature, 1979 McKinney's Session Laws of New York, at 1450-55).

Group alleges that IFSI failed in its duty to independently calculate the NAV values of the Funds and to send accurate NAV statements to investors.[82]  These responsibilities were created by the Agreements between IFSI and Lauer,[83] thereby directly linking the contract to provide services in New York and the plaintiffs' allegations.

The Investment Group has made a prima facie showing that IFSI transacted business in New York, as well as that IFSI contracted to supply services in the state, and the harms alleged by the Investment Group are directly related to these actions.  Accordingly, this Court has jurisdiction over IFSI under both prongs of section 302(a)(1).

### 3.    Personal Jurisdiction Under Section 302(a)(3)(ii)

The Investment Group argues that IFSI is also subject to specific jurisdiction under section 302(a)(3)(ii) because it committed a tortious act outside the state that caused injury in New York, it could reasonably expect its acts to have consequences in New York, and it derives substantial revenue from interstate

---

[82]     *See* Compl. ¶¶ 281-284.

[83]     *See* List of Services, Ex. A to Lancer Offshore Services Agreement; List of Services, Ex. A to Omnifund Services Agreement.

or international commerce.[84] For the purpose of this motion, IFSI does not contest that any negligent conduct occurred outside New York, that the alleged claims derive directly from this negligent conduct and that it derives substantial revenue from interstate or international commerce. However, it does dispute that the injury occurred in New York and that it could reasonably have expected its actions to have consequences in New York.[85] IFSI contends that the situs of the injury is Ireland, where the allegedly false NAV statements were created.[86]

A recent case, *Rx USA International v. Superior Pharmaceutical*, demonstrates why IFSI's argument must fail. In that case, a non-domiciliary law firm was accused of negligence in preparing SEC filings for its client. The law firm was not charged with fraud, but with reckless and negligent conduct in the preparation of the filings.[87] The court held that "[c]ourts examining cases involving misrepresentations have held that the injury occurs where it is 'immediately felt,'" and that defendant law firm was subject to jurisdiction in New

---

[84]    *See* Pl. Mem. at 15-18.

[85]    *See* Def. Mem. at 13-14.

[86]    *See id.*

[87]    *See Rx USA Int'l,* 2005 WL 3333843, at *1.

York under section 302(a)(3)(ii) because the injury occurred in New York.[88] Here, as in *Rx USA International*, the fact that IFSI is alleged to have engaged in negligent conduct that furthered the fraud perpetrated by others is irrelevant.[89] The fact remains that the injury occurred in New York.

Section 302(a)(3)(ii) also requires that a defendant "reasonably expect the act to have consequences in the state."[90] Here, IFSI disseminated the alleged fraudulent statements directly to at least four New York investors,[91] who used these statements to decide whether to maintain their investments in the Funds.[92] Thus, their injury was directly linked to the alleged fraudulent statements. IFSI explicitly targeted its misrepresentations to New York residents, knowing that they would rely on these statements in making their investment decisions.

### 4. Due Process

There is no question that IFSI has maintained minimum contacts with New York by mailing its NAV statements directly to New York investors and by

---

[88]    *Id.* at *3 (quoting *Hargrave*, 636 F.2d at 900).

[89]    *See id.*

[90]    N.Y. C.P.L.R. § 302(a)(3)(ii).

[91]    *See* Compl. ¶ 14; Pl. Mem. at 16; Reply Mem. at 6.

[92]    *See* Compl. ¶ 112.

maintaining continuing communications with Lauer, the New York-based manager of the Funds.[93] The claims derive directly from these mailings and these communications. As a result, IFSI is not being haled into New York "solely as a result of random, fortuitous, or attenuated contacts."[94] Moreover, the exercise of jurisdiction in New York is reasonable. IFSI is a large corporation, doing business internationally, maintaining direct contacts with New York, and selecting New York as the forum for the resolution of all disputes regarding the Funds.[95] New York surely has an interest in adjudicating a case in which its residents claim to be the victims of a fraud.[96] This case, involving a large number of plaintiffs and defendants from many jurisdictions, can be efficiently heard in the federal court in New York and this Court has a good deal of experience adjudicating complex cases.[97] For all of these reasons, there is no question that the exercise of jurisdiction over IFSI comports with due process.

---

[93]     The forum selection clause in the contract between IFSI and the Funds further negates any argument that the defendant could not have foreseen being haled into a court in New York.

[94]     *Burger King*, 471 U.S. at 475 (quotations omitted).

[95]     *See* Lancer Offshore Services Agreement ¶ 18; Omnifund Services Agreement ¶ 18.

[96]     *See Cromer Fin. v. Berger*, 137 F. Supp. 2d 452, 479 (S.D.N.Y. 2001).

[97]     *See id.*

## IV.    CONCLUSION

For the reasons set forth above, this Court has jurisdiction over IFSI

under sections 302(a)(1) and 302(a)(3). IFSI's motion to dismiss for lack of

personal jurisdiction is denied.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          March 7, 2006

**For Plaintiffs:**

Scott M. Berman, Esq.
Anne E. Beaumont, Esq.
Amy C. Brown, Esq.
Jenny F. Cohen, Esq.
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
1633 Broadway
New York, NY 10019
(212) 833-1100

**For Defendant:**

Seth M. Schwartz, Esq.
William F. Clarke, Jr., Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
Four Times Square
New York, NY 10036
(212) 735-3000