**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
                                                          :
**THE PENSION COMMITTEE OF THE**
**UNIVERSITY OF MONTREAL**
**PENSION PLAN, et al.,**                                 :

                    **Plaintiffs,**                       :

          **- against -**                                 :

                                                          :
**BANC OF AMERICA SECURITIES,**                           :
**LLC; CITCO FUND SERVICES**
**(CURACAO) N.V.; THE CITCO GROUP** :
**LIMITED; INTERNATIONAL FUND**
**SERVICES (IRELAND) LIMITED;**                           :
**PRICEWATERHOUSECOOPERS**
**(NETHERLAND ANTILLES); JOHN W.** :
**BENDALL, JR.; RICHARD GEIST;**
**ANTHONY STOCKS; KIERAN**                                :
**CONROY; and DECLAN QUILLIGAN;**

                    **Defendants.**                       :

                                                          :
-------------------------------------------------------X

JSDC S[...]
DOCUMEN[...]
ELECTRONIC[...]LY FILED
DOC #:
DATE FILED: 3/20/06

**OPINION AND ORDER**

**05 Civ. 9016 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

A group of eighty-seven investors ("Investment Group" or

"plaintiffs") is suing The Citco Group Limited ("Citco Group"), a Cayman Islands

corporation, for violating section 20(a) of the Securities Exchange Act. Plaintiffs

seek to hold Citco Group liable as a "control person" of Citco Fund Service

1

(Curacao) N.V. ("Citco NV"). Citco NV provided administrative services to two off-shore hedge funds in which plaintiffs held shares: Lancer Offshore, Inc. and the Omni Fund ("Funds").[1] In its Amended Complaint, the Investment Group invokes this Court's subject matter jurisdiction under 15 U.S.C. § 78aa and 28 U.S.C. §§ 1331 and 1367.[2]

Citco Group now moves to dismiss the Complaint on five grounds: lack of standing to sue, lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2), forum non conveniens, improper venue, and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).[3] For the reasons that follow, Citco Group's motion to dismiss for lack of standing is denied. The motion to dismiss for lack of personal jurisdiction is denied with leave to renew after the completion of limited discovery.[4] The Rule 12(b)(6) motion will be addressed in a separate opinion.

---

[1]     See Corrected First Amended Complaint ("Compl.") ¶¶ 178-183.

[2]     See id. ¶ 26 (alleging both diversity and federal question jurisdiction).

[3]     See Memorandum of Law in Support of Defendant The Citco Group Limited's Motion to Dismiss Plaintiffs' First Amended Complaint ("Def. Mem.") at 1-2.

[4]     Because the Rule 12(b)(2) motion is denied with leave to renew, and this Court may yet lack personal jurisdiction over Citco Group, I do not address the forum non conveniens and venue arguments in this opinion.

2

# I.   BACKGROUND

## A.   The Claims

The Investment Group, comprised of investors from a variety of countries, invested upwards of five hundred eighty million dollars in the two British Virgin Islands based Funds, both of which are in liquidation.[5] Plaintiffs allege that virtually all of the money invested in the Funds has been lost.[6] Plaintiffs further allege that this loss was caused by a fraudulent scheme known as "marking the close."[7] In such a scheme, hedge fund managers artificially inflate the reported value of their holdings by acquiring a controlling stake in thinly traded stocks. Then, when they report the value of the holdings to shareholders, they purchase additional shares of these stocks at artificially high prices. The hedge fund reports the value of its stocks based solely on the artificially high prices, creating a portfolio value that is vastly higher than its true value.[8] The Investment Group contends that this scheme was successful due to the reckless

---

[5]     *See* Compl. ¶ 1.

[6]     *See id.* ¶¶ 1-2.

[7]     *Id.* ¶ 4.

[8]     *See id.* ¶¶ 2-4.

and negligent conduct of the Funds' service providers, including Citco NV.[9]

## B.    The Parties

The Investment Group is made up of eighty-seven investors, at least four of whom are located in New York.[10]  Each plaintiff invested money in the Funds during the period from 1997 until 2002, with the amount invested ranging from fifty thousand to fifty million dollars.[11]

Citco Group is a Cayman Islands corporation with its registered office in the Cayman Islands and administrative offices in Nyon, Switzerland and in Monaco.[12]  Citco NV is a corporation organized under the laws of the Netherlands Antilles, with its offices in Curacao.[13]  Citco NV is a wholly owned subsidiary of a company that is in turn a wholly owned subsidiary of Citco Group.[14]  Citco NV

---

[9]    *See id.* ¶¶ 6-12.

[10]    *See id.* ¶ 14 (Cedar Fund, HSBC Republic, Defined Benefit Plan for Hunicutt & Co., and IRA f/b/o William Hunnicutt VFTC as Custodian, are all New York residents).

[11]    *See id.*

[12]    *See* 11/14/05 Declaration of Christopher G. Smeets, President and Chief Executive Officer of The Citco Group Limited ("Smeets Decl.") ¶ 2.

[13]    *See id.* ¶ 4.

[14]    *See id.*  The moving papers do not identify the intermediate corporation.

began providing administrative services to the Lancer Offshore, Inc. in 1995.[15]
According to plaintiffs, Citco NV has conceded that it has sufficient minimum
contacts with the United States to establish personal jurisdiction.[16]

### C. Jurisdictional Allegations

In its Complaint and response to Citco Group's motion to dismiss, the
Investment Group asserts that this Court has personal jurisdiction over Citco
Group because of its contacts with the forum and because it is a "control person"
of Citco NV.[17]

### 1. General Jurisdiction

Plaintiffs allege that Citco Group is a worldwide company with
offices in the United States.[18]  Citco Group allegedly uses these U.S. offices to
conduct "regular systematic and continuous business activities resulting in the
derivation of substantial revenues."[19]

---

[15]     *See id.*

[16]     *See* Plaintiffs' Memorandum of Law in Opposition to Motion to
Dismiss of Defendant The Citco Group Limited ("Pl. Mem.") at 2.

[17]     *See id.* at 1; Compl. ¶ 33.  Plaintiffs do not claim that Citco Group
should be subject to specific jurisdiction.

[18]     *See* Compl. ¶¶ 21, 31.

[19]     *Id.* ¶ 31.

5

## 2. Control of Citco NV

Plaintiffs describe Citco Group as "an independent financial services organization with approximately 46 offices in 27 countries around the world" and assert that "one of its regional offices is defendant [Citco NV]."[20] Citco NV is also referred to as "a division and wholly-owned and controlled subsidiary of [Citco Group]."[21] Plaintiffs note that Citco Group "represents that by administering funds in offices throughout the world it is able to provide a 'consistent service platform'" and that it "allows its personnel 'the ability to transfer between offices and divisions' in order to maintain consistent levels of excellence."[22] Citco Group allegedly "had the power, both direct and indirect, to control [Citco NV]... [and] did in fact exercise such control."[23]

## II. APPLICABLE LAW

### A. Standing and Rule 17(a)

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has

---

[20]     *Id.* ¶ 21.

[21]     *Id.* ¶ 22.

[22]     *Id.* ¶ 21.

[23]     *Id.* ¶ 181.

traditionally been referred to as the question of standing to sue."[24]  Federal courts

must determine standing at the threshold of every case:  "[i]t would violate

principles of separation of powers for us to hear a matter that was not a case or

controversy and therefore not delegated to the judiciary under Article III."[25]  At an

"irreducible constitutional minimum," Article III standing requires that the

plaintiff "have suffered an injury in fact – an invasion of a legally protected

interest which is (a) concrete and particularized; and (b) actual or imminent, not

conjectural or hypothetical."[26]  While the party invoking the court's jurisdiction

bears the burden of establishing standing,[27] "when standing is challenged on the

basis of the pleadings," the court "'accept[s] as true all material allegations of the

[24]    *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972). *Accord Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 87 (2d Cir. 1988).

[25]    *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 381-82 (2d Cir. 2000) (citation omitted). *Accord United States v. Hays*, 515 U.S. 737, 742 (1995) ("The federal courts are under an independent obligation to examine their own jurisdiction, and 'standing is perhaps the most important of [the jurisdictional] doctrines.'") (citation omitted) (alteration in original).

[26]    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted).  Article III standing also requires that there be "a causal connection between the injury and the conduct complained of" and that it is "likely . . . that the injury will be redressed by a favorable decision." *Id.* at 560-61.

[27]    *See id.* at 561. *See also Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329-30 (2d Cir. 1997).

7

complaint, and . . . construe[s] the complaint in favor of the complaining party."[28]

Citco Group conflates the standing inquiry with plaintiffs' right to bring this action under Federal Rule of Civil Procedure 17(a), which requires that all actions shall be brought by the "real party in interest." Because the claims in this case arise under the federal securities laws, federal law determines who is the real party in interest.[29] The test is whether plaintiff has the kind of interest that will "afford [defendant] the protection of res judicata when the suit is terminated."[30]

At times, the constitutional standing inquiry and the Rule 17(a) real party in interest inquiry do boil down to the same issue – the nature and extent of a plaintiff's stake in the controversy.[31] In applying these standards to cases

---

[28] *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). *Accord Irish Gay & Lesbian Org. v. Giuliani*, 143 F.3d 638, 650 (2d Cir. 1998) (general allegations of harm arising from defendant's conduct are sufficient to establish standing at pleading stage).

[29] *See Drachman v. Harvey*, 453 F.2d 722 (2d Cir. 1971).

[30] *Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 607 (S.D.N.Y. 1989) (citing *Blau v. Lamb*, 314 F.2d 618, 620 (2d Cir. 1963)).

[31] *See APCC Servs. v. Sprint Commc'ns Co.*, 418 F.3d 1238, 1244-45 (D.C. Cir. 2005) (per curiam) ("We see no basis for distinguishing the personal stake required under Rule 17(a) from the interest required for [assignee] standing."). *See also* 6A Charles Alan Wright and Arthur R. Miller, Edward H. Cooper, Fed. Prac. & Proc. Civ. 2d § 1542 at 330 (1998) ("To the extent that standing . . . is understood to mean that the litigant actually must be injured by the

8

involving securities fraud, "[t]he record holder of securities is a real party in interest who may sue in his own name."[32]

## B.    Personal Jurisdiction

A plaintiff bears the burden of demonstrating that the court may exercise jurisdiction over each defendant.[33] Ultimately, a plaintiff must prove this by a preponderance of the evidence, but prior to discovery, "allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."[34] Thus, a plaintiff may defeat a motion to dismiss by making a prima facie showing that the defendant is subject to personal jurisdiction.[35]

The Securities Exchange Act allows the exercise of personal

---

[] action that he is assailing, then it closely resembles the notion of real party in interest under Rule 17(a), inasmuch as both terms are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits.").

[32]    *Lemanik, S.A.*, 125 F.R.D. at 607 (quotation marks omitted).

[33]    *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

[34]    *A.I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

[35]    *See id.* at 79.

9

jurisdiction to the limits of the Due Process Clause of the Fifth Amendment.[36] The

Due Process Clause permits a state to exercise jurisdiction over a defendant who

has "certain minimum contacts with the forum such that maintenance of the suit

does not offend traditional notions of fair play and substantial justice."[37] A non-

resident defendant "must know, or have good reason to know, that his conduct will

have effects in the state seeking to assert jurisdiction over him."[38] In meeting this

standard, a plaintiff must make a prima facie showing that satisfies the two

components of this test: the minimum contacts inquiry and the reasonableness

inquiry.[39] The tests are "necessarily fact sensitive because each case is dependent

---

[36]    *See S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990)
(citing *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 998 (2d Cir. 1975)).

[37]    *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).
Although this line of cases interprets the Fourteenth Amendment's Due Process
Clause, the Second Circuit has noted that "the due process analysis is basically the
same under both the Fifth and Fourteenth Amendments. The principal difference
is that under the Fifth Amendment the court can consider the defendant's contacts
throughout the United States, while under the Fourteenth Amendment only the
contacts with the forum state may be considered." *Chew v. Dietrich*, 143 F.3d 24,
28 n.4 (2d Cir. 1998). *Accord In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d
204, 207-08 (2d Cir. 2003) (using the specific and general jurisdiction tests in a
due process analysis under the Fifth Amendment).

[38]    *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326,
1341 (2d Cir. 1972).

[39]    *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560,
567 (2d Cir. 1996).

upon its own particular circumstances."[40]

## 1. Contacts with the Forum for General Jurisdiction

The minimum contacts requirement ensures that a defendant is not haled into court "solely as a result of random, fortuitous, or attenuated contacts."[41] "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'"[42] Where the exercise of jurisdiction is based on federal securities laws, the applicable forum for minimum contacts analysis is the United States rather than the forum state.[43]

### a. Citco Group's Alleged Control Over Citco NV

Section 20(a) of the Securities Exchange Act establishes liability for

---

[40] *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (quotation omitted).

[41] *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations omitted).

[42] *Metropolitan Life Ins.*, 84 F.3d at 568 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)).

[43] *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 207. *See also* Def. Mem. at 5 (citing *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001).

11

those who control the actions of securities law violators,[44] and plaintiffs argue that a court should automatically have personal jurisdiction over the "control persons" of defendants that are subject to the court's jurisdiction.[45] While the Second Circuit has not directly ruled on this argument, many courts have followed the reasoning recently set forth by the Sixth Circuit: "The broad understanding of control person liability adopted by the securities laws cannot on its own support personal jurisdiction. This approach would . . . 'impermissibly conflate[ ] statutory liability with the Constitution's command that the exercise of personal jurisdiction must be fundamentally fair.'"[46] I agree, and thus decline to circumvent

---

[44]     *See* 15 U.S.C. § 78t(a) (attaching liability to "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action").

[45]     *See* Pl. Mem. at 11-13 (citing *San Mateo County Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992) (to establish jurisdiction, plaintiff must only make "a non-frivolous allegation that the defendant controlled a person liable for the fraud")).

[46]     *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 667 (6th Cir. 2005) (quoting *In re Baan Co. Sec. Litig.*, 245 F. Supp. 2d 117, 129 (D. D.C. 2003)). *Accord In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 454 (S.D.N.Y. 2005) (noting that "the Due Process Clause is 'made of sterner stuff" than a mere allegation of control"). *But see Landry v. Price Waterhouse Chartered Accountants*, 715 F. Supp. 98, 101-02 (S.D.N.Y. 1989) (relying on control person status as well as "evidence of jurisdictional contacts" submitted by plaintiffs in finding personal jurisdiction over defendant).

12

due process safeguards in favor of a Congressional definition of "control."

Although plaintiffs' legal argument is unavailing, Citco Group's alleged control of Citco NV is nevertheless relevant to establishing general jurisdiction.[47] One of the factors in determining whether Citco Group's contacts with the forum are "continuous and systematic" may be the relationship between Citco Group and Citco NV. In examining such a relationship under federal securities laws, courts should not apply state laws about imputing forum contacts to an affiliated corporation.[48] Instead, the analysis concerning the import of a relationship between a non-resident defendant and a resident corporation is conducted using the general due process standards outlined above.[49]

---

[47] *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 207-08 (plaintiffs were entitled to engage in limited discovery on question of whether the corporation had sufficient control over its United States subsidiary to be subject to general jurisdiction based on subsidiary's contacts with United States).

[48] *See Cromer Fin. Ltd.*, 137 F. Supp. 2d at 473 n.17 ("The parties incorrectly apply New York law to the personal jurisdiction issue. Where a case is brought pursuant to federal question jurisdiction and 'a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process.'") (quoting *PDK Labs,* 103 F.3d at 1108 (quotation marks and citation omitted)).

[49] *See, e.g., In re Parmalat Sec. Litig.*, 376 F. Supp. 2d at 454 (declining to exercise jurisdiction over Martellini as a "control person" and noting "[t]he question whether Martellini's role . . . involved sufficient contact with the United States to satisfy the minimum contacts branch of the due process analysis is

13

## 2. Reasonableness

If a plaintiff makes the requisite showing of minimum contacts, the

exercise of jurisdiction "may be defeated where the defendant presents 'a

compelling case that the presence of some other considerations would render

jurisdiction unreasonable.'"[50] At a minimum, the following five factors enter into

the reasonableness inquiry: "(1) the burden that the exercise of jurisdiction will

impose on the defendant; (2) the interests of the forum state in adjudicating the

case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the

interstate judicial system's interest in obtaining the most efficient resolution of the

controversy; and (5) the shared interest of the states in furthering substantive

social policies."[51]

## III. DISCUSSION

### A. Standing and Rule 17(a)

Citco Group argues that this Court should dismiss the claims of

several plaintiffs because they are allegedly not beneficial owners of the Funds'

---

somewhat more troublesome").

[50]    *Metropolitan Life Ins.*, 84 F.3d at 568 (quoting *Burger King*, 471 U.S. at 477).

[51]    *Id.* (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano County*, 480 U.S. 102, 113-14 (1987)).

14

shares, and thus should not be considered "real parties in interest" under Rule17(a).[52] Citco Group identifies three plaintiffs that it claims "have not alleged that they invested in the Funds on their own behalf, sustained any injury, or received express authority to maintain this suit on behalf of others."[53]

The Amended Complaint alleges that all three of these plaintiffs themselves invested in the Funds.[54] Indeed, the fact that they are record holders of the securities in question might itself be enough to defeat defendant's argument.[55] But plaintiffs also submitted sworn affidavits from representatives of the three contested entities, supporting the claim that each one of them has authority to bring this action.[56]

---

[52]    *See* Def. Mem. at 13-14; Reply Memorandum of Law in Support of Defendant The Citco Group Limited's Motion to Dismiss Plaintiffs' First Amended Complaint ("Reply Mem.") at 6-7.

[53]    Def. Mem. at 13.

[54]    *See* Compl. ¶¶ 14(h), 14(lll), 14(ooo).

[55]    *See Lemanik, S.A.*, 125 F.R.D. at 607.

[56]    *See* 12/7/05 Declaration of Denis Halard, President of Noblis S.A., ¶¶ 2-4 (Noblis S.A. is suing only on its own behalf); 12/7/05 Declaration of Jacques Lucier, President of the Pension Committee of the University of Montreal Pension Plan, ¶¶ 13-17 (the Pension Committee has authority to sue on behalf of the University of Montreal Pension Plan under Canadian law); 12/6/05 Declaration of Mark Hucker, Director of Liberty Ermitage North American Absolute Fund ("Liberty Fund"), ¶¶ 2-4 (Bank of Bermuda (Luxembourg) S.A., which acts as custodian to Liberty Fund, has authority to sue on behalf of Liberty Fund).

15

Citco Group argues that the three affidavits submitted with plaintiffs' opposition brief should be disregarded.[57] But it is well established that district courts deciding a Rule 12(b)(2) motion have "considerable procedural leeway,"[58] and the sole case that Citco Group cites in support of its argument is inapposite.[59] In that case, as part of his opposition to a motion to dismiss, the plaintiff submitted an affidavit outlining "additional material misrepresentations" that went to the heart of the substantive claim.[60] Here, plaintiffs' affidavits do not "attest[] to facts and particulars not in the Complaint," but only serve as more specific and concrete evidence to support allegations that were made in the Amended Complaint.[61] Together, plaintiffs' original allegations and the supporting affidavits sufficiently demonstrate that all three plaintiffs have alleged a concrete and actual injury in fact and that defendants will be afforded the protection of res judicata following

[57]     Reply Mem. at 6.

[58]     *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (noting that a court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion") (citing cases).

[59]     *See* Reply Mem. at 6 (citing *Lam v. American Express Co.*, 265 F. Supp. 2d 225 (S.D.N.Y. 2003)).

[60]     *Lam*, 265 F. Supp. 2d at 234 n.1.

[61]     *Id.*

16

the termination of this litigation.

## B. Personal Jurisdiction

### 1. Minimum Contacts for General Jurisdiction

As an initial matter, Citco Group has no physical presence in the forum. Citco Group has submitted sworn testimony that it has never maintained any offices in the United States.[62] Citco Group has never owned or leased property, maintained a telephone listing or bank account, paid taxes, or had a license to do business in the U.S.[63]

On the other hand, it is well established that a lack of physical presence in the forum is not a bar to the exercise of personal jurisdiction over a defendant.[64] Plaintiffs allege that Citco Group conducts "regular systematic and continuous business activities resulting in the derivation of substantial revenues."[65] Indeed, William Keunen, identified in connection with a 2003

---

[62]    *See* Smeets Decl. ¶ 2.

[63]    *See id.* ¶ 3.

[64]    *See, e.g., Burger King*, 471 U.S. at 476 ("So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.") (quotation marks and citations omitted).

[65]    Compl. ¶ 31.

17

interview as Director of Fund Services for "Citco,"[66] described various examples of "significant new business" from the United States in 2003.[67] But according to its CEO, Citco Group "has never provided, or contracted to provide, services of any kind in the United States[, and] has never manufactured or contracted to supply any goods, products, or materials in the United States."[68] This is an important factual dispute, because revenue derived from the forum can be a persuasive factor in establishing the minimum contacts required for the exercise of general jurisdiction.[69]

     Plaintiffs' allegations that Citco NV functions as an "office" or a

---

[66]    It is unclear which Citco entity the article, which was published in an industry magazine called "Hedgeweek," intended to describe.

[67]    11/28/03 Interview of William Keunen ("Keunen Interview"), Ex. 9 to Declaration of Jenny F. Kaufman, Counsel to Plaintiffs, in Opposition to Motions to Dismiss of Defendants Citco Fund Services (Curacao) N.V., The Citco Group Limited, Anthony J. Stocks, Kieran Conroy and Declan Quilligan ("Kaufman Decl."), at 1. *See also id.* at 2 ("at the beginning of next year we are taking over the Standard Pacific hedge fund (primarily equity) group in San Francisco which stands at around USD 4 billion in assets under management. . . . We've also won a number of other high profile start-up funds such as David Ganek's Level Global, also a US-based hedge fund, and Lee Hobson's Highside out of Dallas"), 3 ("We already have 20 clients in the US using Aexeo").

[68]    Smeets Decl. ¶ 3.

[69]    *See, e.g., Metropolitan Life Ins. Co.*, 84 F.3d at 573 (explaining that defendant's four million dollars in sales in the forum over six years was one factor making the exercise of general jurisdiction permissible).

"division" of Citco Group are also contested. Though the two corporations are separate legal entities,[70] it is clear that they are affiliated with one another, because Citco NV is a "wholly-owned subsidiary of a separate corporate entity, which in turn [i]s a wholly-owned subsidiary of [Citco Group]."[71] Defendant attempts to downplay the relationship by pointing out that there is no overlap of officers or directors between Citco Group and Citco NV,[72] and that a parent subsidiary relationship alone is not sufficient to support a finding that one corporation controls another under Section 20(a).[73]

Plaintiffs have submitted some evidence in support of their allegations that Citco Group in fact controls Citco NV. For example, in 2003, an industry magazine noted that each Citco "office" has a managing director who regularly reports to William Keunen, and that he in turn reports to the Executive Committee of Citco Group.[74] This raises a question about whether there is an oversight process linking the worldwide Citco entities despite their legal

[70]     *See* Smeets Decl. ¶ 4.

[71]     *Id.*

[72]     *See id.* ¶ 6.

[73]     *See* Def. Mem. at 17-20 (citing *Suez Equity Investors, LP v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001)).

[74]     *See* Pl. Mem. at 3; Keunen Interview at 1.

19

independence. Plaintiffs also point to an overlap in leadership – for example, the fact that an employee of Citco NV was also a director of the International Fund Services division of Citco Group.[75] Finally, plaintiffs submitted a letter in which Citco NV "specifically touts this integrated corporate structure when soliciting clients."[76] The letter, which contains a "fee proposal for the set-up and administration [of a] proposed new offshore fund" by Citco NV, relies on the assertion that "[t]he Citco Group of Companies is a global financial service organization."[77]

The foregoing evidence is not itself sufficient to subject Citco Group to general jurisdiction in the United States. But Citco Group is allegedly maintaining profitable direct contacts with the United States, and plaintiffs have offered some evidence that Citco NV is the agent or alter ego of Citco Group in this forum despite its nominal independence.[78] Together, there is enough evidence

---

[75]   *See* Pl. Mem. at 4; Compl. ¶¶ 5, 18.

[76]   Pl. Mem. at 4-5 (citing 08/27/99 Letter from Employee of Citco NV to Michael Sapourn of Sapourn Financial Services (a prospective customer) ("08/27/99 Letter"), Ex. 10 to Kaufman Decl.).

[77]   08/27/99 Letter at 1. Plaintiffs offer no evidence to support their allegation that Citco Group allows its personnel the ability to transfer between offices and divisions. *See* Compl. ¶ 21.

[78]   *Cf. In re Parmalat Sec. Litig.*, No. 04 MDL 1653, 2006 WL 317021 (S.D.N.Y. Feb. 9, 2006) (holding that general jurisdiction over a London

to suggest that plaintiffs may be able to demonstrate that it would be appropriate

for this Court to exercise jurisdiction over Citco Group.

## 2. **Reasonableness**

Given the sparse factual record, the burden that the exercise of

jurisdiction would impose on the defendant is unclear – this may also depend on

the nature of its relationship to Citco NV.[79] What is clear is that a court may, in its

discretion, allow discovery to aid in determining whether it has in personam or

subject matter jurisdiction.[80] Jurisdictional discovery "should be granted where

pertinent facts bearing on the question of jurisdiction are controverted . . . or

---

corporation was proper despite lack of physical presence in the forum because due
process analysis looked to contacts with United States as whole, and corporation
had a relationship with a forum corporation in which the two companies behaved
as an integrated, global organization). *Accord In re Parmalat Sec. Litig.*, 381 F.
Supp. 2d 283, 289-90 (S.D.N.Y. 2005) (citing *Perkins v. Benguet Mining Corp.*,
342 U.S. 437 (1952)).

[79]     *Cf. In re Parmalat Sec. Litig.*, 381 F. Supp. 2d at 290 ("[Defendant
Banc of America Securities Limited] would suffer no material burden from this
litigation, assuming the correctness of [plaintiff]'s theory that [defendant] is
merely an alter ego or extension of other [Bank of America] entities.").

[80]     *See, e.g., In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208.
In arguing that the Court should not allow such discovery, defendants cite a case
in which the Second Circuit merely held that it was not an abuse of discretion for
the district court to deny jurisdictional discovery when plaintiffs had offered no
evidence to support their jurisdictional claims. *See* Reply Mem. at 3 (citing *Jazini
v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998)).

where a more satisfactory showing of the facts is necessary."[81] Many courts have considered such a showing necessary when faced with an unclear relationship between two corporations.[82] Indeed, the Second Circuit noted in *In re Magnetic Audiotape Antitrust Litigation* that the question of whether a particular corporation's "numerous contacts with the United States should be imputed to defendant [a related corporation] for purposes of general personal jurisdiction . . . involves a multi-factor test that is very fact-specific."[83] In that case, the Circuit reversed the trial court's dismissal of a defendant on jurisdictional grounds because "[g]iven the nature of this inquiry, it was premature to grant dismissal

---

[81] *Kilpatrick v. Texas & Pac. Ry. Co.*, 72 F. Supp. 635, 638 (S.D.N.Y. 1947), rev'd on other grounds, 166 F.2d 788 (2d Cir. 1948).

[82] *See, e.g., Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 194 (S.D.N.Y. 2000) (granting jurisdictional discovery to ascertain "the precise interrelatedness between Sprint Corporation and Sprint/Sprint Communications," even though "the allegation that Sprint Communications and Sprint Spectrum are mere departments of Sprint Corporation remains conclusory despite evidence of overlapping management and the fact that any doubts are to be resolved in the light most favorable to the plaintiff") (citations omitted); *Seema Gems v. Shelgem, Ltd.*, No. 93 Civ. 4473, 1994 WL 86381, at *2 (S.D.N.Y. Mar. 16, 1994) (stating that "plaintiff is entitled to limited discovery as to the relationship between the two entities" regarding whether a subsidiary was a "mere department" of the parent corporation); *Gear, Inc. v. L.A. Gear Cal., Inc.*, 637 F. Supp. 1323, 1328-29 (S.D.N.Y. 1986) (granting jurisdictional discovery and denying motion to dismiss without prejudice to renewal when the "[d]efendants are interrelated" but the "actual relationship among the defendants [is] something of a mystery").

[83] *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208.

22

prior to allowing discovery on plaintiffs' insufficiently developed allegations regarding the relationship between [defendant] and its subsidiary."[84]  For the reasons just discussed, plaintiffs may conduct discovery limited to the issue of personal jurisdiction.  This discovery shall be supervised by Magistrate Judge Frank Maas and completed within 120 days.

## IV.  CONCLUSION

For the reasons set forth above, Citco Group's motion to dismiss for lack of standing is denied.  The motion to dismiss for lack of personal jurisdiction is denied with leave to renew after the completion of limited discovery.  The parties shall contact Judge Maas to schedule a conference to set a discovery schedule.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
        March 20, 2006

---

[84]      *Id.*

## - Appearances -

### For Plaintiffs:

Scott M. Berman, Esq.
Anne E. Beaumont, Esq.
Amy C. Brown, Esq.
Jenny F. Cohen, Esq.
FRIEDMAN, KAPLAN, SEILER & ADELMAN LLP
1633 Broadway
New York, New York 10019
(212) 833-1100

### For Defendant:

Eliot Lauer, Esq.
Michael Moscato, Esq.
Milos Naumovic, Esq.
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
(212) 696-6000

Lewis N. Brown, Esq.
Dyanne E. Feinberg, Esq.
Terence M. Mullen, Esq.
GILBRIDE, HELLER & BROWN, PA
One Biscayne Tower, Suite 1570
2 South Biscayne Boulevard
Miami, Florida 33131
(305) 358-3580