UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                :

THE PENSION COMMITTEE OF THE
UNIVERSITY OF MONTREAL
PENSION PLAN, et al.,         :

       Plaintiffs,      :

   - against -         :

BANC OF AMERICA SECURITIES,  :
LLC; CITCO FUND SERVICES
(CURACAO) N.V.; THE CITCO GROUP :
LIMITED; INTERNATIONAL FUND
SERVICES (IRELAND) LIMITED;   :
PRICEWATERHOUSECOOPERS
(NETHERLAND ANTILLES); JOHN W. :
BENDALL, JR.; RICHARD GEIST;
ANTHONY STOCKS; KIERAN     :
CONROY; and DECLAN QUILLIGAN,

                :

     Defendants.

                :
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/20/01

**OPINION AND ORDER**

**05 Civ. 9016 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

A group of investors brings this action to recover losses stemming

from the liquidation of two British Virgin Islands ("BVI") based hedge funds in

which they held shares:  Lancer Offshore, Inc. and the OmniFund Ltd. ("Funds").[1]

---

[1]     *See* Corrected First Amended Complaint ("Compl.") ¶¶ 1, 14.

The Funds were managed by Michael Lauer ("Lauer") through Lancer

Management Group, LLC ("Lancer Management").[2] Plaintiffs bring claims for

violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5

promulgated thereunder against three former directors of Lancer Offshore,

Anthony J. Stocks, Kieran Conroy, Declan Quilligan (collectively, "Citco

Directors"), and a former administrator of the Funds, Citco Fund Services

(Curacao) N.V. ("Citco NV," and together with the Citco Directors, "Citco

Defendants").[3] Plaintiffs also bring a claim under section 20(a) of the Securities

and Exchange Act against The Citco Group Limited ("CGL"), based on CGL's

alleged status as a control person of Citco NV.[4] Plaintiffs also bring various

common-law claims under New York law against the Citco Defendants,

---

[2]     *See id.* ¶ 1.

[3]     15 U.S.C. § 78j(b); 17 C.F.R. § 240.10(b)(5).

[4]     15 U.S.C. § 78t(a). In an Opinion and Order dated March 20, 2006, this Court denied CGL's motion to dismiss for lack of personal jurisdiction with leave to renew after the completion of limited discovery, and denied CGL's motion to dismiss for lack of standing. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, No. 05 Civ. 9016, 2006 WL 708470 (S.D.N.Y. Mar. 20, 2006) ("*Pension Comm. II*"). By letter dated May 22, 2006, CGL informed the Court that it does not intend to renew its motion to dismiss for lack of personal jurisdiction. *See* 5/22/06 Letter from Dyanne E. Feinberg, Counsel to CGL, to Magistrate Judge Frank Maas. To the extent that the other defendants have adopted the arguments made by CGL with respect to standing, their motions to dismiss on that ground are denied.

International Fund Services (Ireland) Limited ("IFSI"), a former administrator of the Funds,[5] and Banc of America Securities, LLC ("BAS"), the former prime broker and custodian of the Funds.[6] The Citco Defendants, CGL, IFSI, and BAS now move to dismiss all claims against them.

## I. BACKGROUND[7]

### A. The Parties

Plaintiffs are eighty-seven investors from a variety of countries, four of whom are located in New York.[8] Each plaintiff invested money in the Funds during the period from 1997 until 2002, with the amount invested ranging from

---

[5] In an Opinion and Order dated March 7, 2006, this Court denied IFSI's motion to dismiss for lack of personal jurisdiction. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, No. 05 Civ. 9016, 2006 WL 559811 (S.D.N.Y. Mar. 7, 2006) ("*Pension Comm. I*").

[6] Plaintiffs bring claims against the Citco Defendants for fraud, breach of fiduciary duty, negligence, negligent misrepresentation, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty. Plaintiffs also bring a claim for professional malpractice against Citco NV. Plaintiffs bring claims against IFSI for breach of fiduciary duty and professional malpractice, and against BAS for aiding and abetting fraud and aiding and abetting breach of fiduciary duty.

[7] Unless otherwise noted, the following allegations are drawn from the Complaint and are presumed to be true for purposes of this motion.

[8] *See* Compl. ¶¶ 14(q), (pp), (qq), (rr) (Cedar Fund, HSBC Republic, Defined Benefit Plan for Hunicutt & Co., and IRA f/b/o William Hunnicutt VFTC as Custodian, are all New York residents).

3

fifty thousand to fifty million dollars.[9]  Virtually all of the money invested in the Funds, upwards of five hundred eighty million dollars, has been lost.[10]

Citco NV is allegedly a division and wholly-owned and controlled subsidiary of CGL.[11]  Citco NV is a business entity organized under the laws of the Netherlands Antilles, with places of business in Curacao, Netherlands Antilles, and Tortola, British Virgin Islands.[12]  Citco NV performs fund administration services for hundreds of hedge funds throughout the world, including many in the United States, and receives substantial revenue from sources in the United States, including New York.[13]  Citco NV acted as administrator of the Funds until September 2002, at which time it was replaced by IFSI, a business entity organized under the laws of Ireland, with a principal place of business in Ireland.[14]

---

[9]    *See id.*

[10]   *See id.* ¶¶ 1-2.

[11]   CGL and its relationship to Citco NV are described more fully in this Court's opinion in *Pension Comm. II*, familiarity with which is presumed.  *See Pension Comm. II*, 2006 WL 708470, at *1-2.

[12]   *See* Compl. ¶ 22.

[13]   *See id.* ¶ 30.

[14]   *See id.* ¶¶ 60, 109.  IFSI is described more fully in this Court's opinion in *Pension Comm. I*, familiarity with which is presumed.  *See Pension Comm. I*, 2006 WL 708470, at *1-2.

Citco NV assigned three officers, the Citco Directors, to serve as directors of the Funds "in furtherance of their duties on behalf of Citco NV."[15] Stocks, who resides in London, England, served as a director of Lancer Offshore from 1995 until July 2001, during which time he was also a director of CGL's International Fund Services division.[16] Conroy, who resides in Dublin, Ireland, served as a director of Lancer Offshore from 1998 until early 2002, during which time he was also a managing director of Citco NV.[17] Quilligan, who resides in Curacao, Netherlands Antilles, was a director of Lancer Offshore from 2001 until early 2002, during which time he was also a managing director of Citco NV.[18] The Citco Directors participated in fund administration activities by Citco NV directed to the United States and New York.[19]

BAS is a New York limited liability corporation with a principal place of business in New York.[20] BAS acted as the prime broker and custodian for

---

[15]   Compl. ¶ 64.

[16]   *See id.* ¶ 18.

[17]   *See id.* ¶ 19.

[18]   *See id.* ¶ 20.

[19]   *See id.* ¶ 29.

[20]   *See id.* ¶ 24.

5

the Funds, holding the Funds' securities in custody "at least through December 3, 2001."[21]

## B. The Alleged Scheme

All of the claims asserted in the Complaint derive from the same set of operative facts related to mismanagement of the Funds by Lauer and Lancer Management and Lauer in the United States.[22] Plaintiffs allege that their losses were caused by a fraudulent scheme known as "marking the close."[23] To execute this scheme, Lauer and Lancer Management acquired substantial and sometimes controlling stakes in thinly-traded stocks on behalf of the Funds.[24] Then, prior to the end of the Funds' reporting periods, Lauer would purchase additional shares of these stocks at significantly higher prices, with the intent of raising the closing market price of the stocks.[25] Each Fund would report its net asset value ("NAV") based on the artificially high prices, creating the appearance of a portfolio value vastly higher than its true value, and generating large fees for Lauer and Lancer

[21]    *Id.* ¶ 103.

[22]    *See id.* ¶¶ 26-34.

[23]    *Id.* ¶ 4.

[24]    *See id.* ¶ 45.

[25]    *See id.*

6

Management.[26]

Plaintiffs contend that this scheme was successful due to misrepresentations in the Funds' private placement memoranda ("PPMs"), monthly newsletters, and other materials.[27] These misrepresentations pertained to the types of investments that would be made by the Funds, the processes for determining the values of securities held by the Funds, and the performance of the Funds' portfolios.[28] Plaintiffs also allege that "from at least March 2000" they received monthly statements of the Funds' NAVs which included fraudulently manipulated month-end closing prices of securities held by the Funds.[29] Lancer Offshore's annual reports for 2000, 2002, and 2003 also contained fraudulent NAV figures.[30] Plaintiffs allege that defendants, as the Funds' directors and service providers, were pivotal to this fraudulent scheme.[31]

### 1.    Citco Defendants

---

[26]    *See id.* ¶¶ 46-47.

[27]    *See id.* ¶¶ 39-43, 53-55, 121.

[28]    *See id.*

[29]    . *Id.* ¶¶ 44, 67.

[30]    *See id.* ¶¶ 50-52.

[31]    *See id.* ¶¶ 6-12.

As the Funds' administrator, Citco NV was responsible for providing various services, including maintenance of the Funds' corporate records and books of accounts, preparation and dissemination of the Funds' annual financial statements and quarterly reports, and communication with shareholders and the general public.[32] The PPMs represented that the Citco Directors would fairly and reasonably report the values of securities held by the Funds.[33] The restated audited financial statements for 2000, and audited financial statements for 2001 state that the Funds' "Board of Directors in conjunction with the investment manager determine at what value the investment securities are reported for the determination of the [NAV] of the Fund."[34] Plaintiffs claim that the Citco Defendants breached their obligations by failing to conduct a fair and independent valuation of the Funds and failing to disclose irregularities in the conduct of the

---

[32]     *See id.* ¶ 61. *See also* 4/1/00 Amended and Restated Administrative Services Agreement between Lancer Offshore and Citco NV ("Administration Agreement") at ¶ 1.1, Ex. E to Declaration of Eliot Lauer, Counsel to CGL and the Citco Defendants, in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Lauer Decl.").

[33]     *See id.* ¶ 56. *See also* 2/15/02 Placement Memorandum of Lancer Offshore, Inc. ("Lancer Offshore PPM"), at 34-35, Ex. B to Lauer Decl.

[34]     *Id.; see also id.* ¶ 57 (alleging that the financial statements also "state that the Board of Directors of the [Lancer] Offshore Fund determined the value of 100% of the Fund's securities").

8

Funds to investors.[35]

Plaintiffs allege that the Citco Defendants are responsible for false statements of the Funds' NAVs. Citco NV provided materials to investors stating that "Citco NV itself prepares monthly NAV calculations for the Funds" and "each month, Citco NV distributed to each shareholder of the Funds a statement setting forth the NAVs of the Funds."[36] Plaintiffs allege that the Citco Defendants knew or recklessly disregarded the fact that the "NAV statements, monthly newsletters and offering materials sent to the plaintiffs" included fraudulently inflated NAV figures.[37]

Plaintiffs also allege that the Citco Defendants made false statements about their procedures for ensuring accurate valuations of the Funds. Plaintiffs allege that "Citco NV's marketing materials" and "materials prepared by Citco NV and provided to certain investors" stated that Citco followed procedures to ensure accurate valuation of the Funds, such as reconciling manager's reports with third-party information on pricing.[38] Plaintiffs allege that the Citco Directors made

---

[35]     See id. ¶¶ 5,7, 59, 72, 123, 194-195.

[36]     Id. ¶¶ 63, 67.

[37]     Id. ¶¶ 124, 185.

[38]     Id. ¶¶ 62-63, 170. The Complaint contains a quotation from Quilligan in a 2001 article that Citco NV's role was to provide "independence"

similar misstatements in the PPMs and other offering materials.[39] Plaintiffs allege that these statements were materially false because "Citco NV failed to independently value the portfolios and instead slavishly adhered to the valuations provided by Lauer."[40]

Citco NV "knew or should have known of the fraud because, among other things, three of its employees were also members of the Funds' Board of Directors."[41] The Citco Directors, and therefore Citco NV, had "intimate involvement" in the "affairs of the Funds" and "access to non-public information concerning the Funds' financial affairs and business practices, including periodic internal reports detailing revenues, holdings, and other financial information."[42] Thus, the Citco Defendants "knew, or should have known, that the valuations

---

and "experience" so that shareholders "don't have to entirely rely on the investment manager." *Id.* ¶ 66. The Complaint contains a quotation from John M.S. Verhooren, a former director of Lancer Offshore and a Citco NV employee, in an industry publication in May 2003, that the role of a hedge fund administrator is to "insist[] on independent pricing." *Id.* ¶ 65.

[39]    *See id.* ¶ 132.

[40]    *Id.* ¶ 67.

[41]    *Id.* ¶ 7.

[42]    *Id.* ¶ 69.

10

provided by Lauer and Lancer Management to Citco NV were false."[43]

### 2. IFSI

Plaintiffs claim that IFSI, Citco NV's successor as administrator to
the Funds, also negligently disseminated misleading NAV statements based upon
Lauer's false valuations.[44]  Plaintiffs also claim that IFSI breached its duty to
independently value the portfolios.[45]

### 3. BAS

BAS, as prime broker and custodian to the Funds, allegedly aided and
abetted Lauer's fraud and breach of duty by providing Lauer with dial-in access to
its computer network and allowing him to generate false position statements
("BAS Position Reports") of the Funds' holdings.[46]  BAS employees created BAS
Position Reports using valuation information sent to them by Lauer, sometimes by
facsimile, without verifying the accuracy of Lauer's information.[47]  These false
BAS Position Reports, captioned "Banc of America Securities, LLC; Client

---

[43]     *Id.* ¶ 172.

[44]     *See id.* ¶ 12.

[45]     *See id.*

[46]     *See id.* ¶¶ 10, 104.

[47]     *See id.* ¶ 105.

11

Position Summary by Asset Class," were printed and provided to third parties,

including investors and Citco NV, who relied on them to value the Funds.[48]

Plaintiffs allege that BAS knew or should have known that Lauer would use the

position reports for these purposes.[49]

## C. Defendants' Motions to Dismiss

The Citco Defendants now move to dismiss the federal securities

claims against them on the grounds that plaintiffs have not alleged that those

defendants are primarily liable for any misrepresentation or fraudulent act, that

plaintiffs have failed to plead scienter, and that the claims are not pled with

particularity.[50] CGL joins that motion, arguing that plaintiffs failed to plead that it

is a control person under section 20(a), and that it is not liable in the absence of a

primary violation of the securities laws by Citco NV.[51] The Citco Defendants also

move to dismiss the common-law claims against them, arguing that BVI, not New

[48]     *Id.* ¶ 106.

[49]     *See id.* ¶ 107.

[50]     *See* Omnibus Memorandum of Law in Support of Defendants
Citco Fund Services (Curacao) N.V., Anthony J. Stocks, Kieran Conroy, Declan
Quilligan and Banc of America Securities LLC's Motion to Dismiss Plaintiffs'
First Amended Complaint ("Def. Mem.") at 6-13, 36-39.

[51]     *See* Memorandum of Law in Support of Defendant The Citco Group
Limited's Motion to Dismiss Plaintiffs' First Amended Complaint ("CGL Mem.")
at 15.

12

York law applies.[52]  In the alternative, the Citco Defendants argue that plaintiffs have failed to plead their claims under New York law.[53]  BAS and IFSI move to dismiss the common-law claims against them on the grounds that those claims are deficient under New York law.[54]  The Citco Defendants and CGL move to dismiss all claims against them on the grounds of improper venue and forum non conveniens.[55]

Because plaintiffs have failed to plead the scienter of any Citco Defendant, the Citco Defendants and CGL's motions to dismiss the federal securities law claims are granted.[56]  On similar grounds, the Citco Defendants

[52]  *See* Def. Mem. at 16, 19-22.

[53]  *See id.* at 30-32.

[54]  *See id.* at 18-19, 22-30, 39; Memorandum of Law in Support of Defendant Interational Fund Services (Ireland) Ltd.'s Motion to Dismiss the Complaint ("IFSI Mem.") at 15-16.

[55]  *See* CGL Mem. at 10-13; Def. Mem. at 6 n.8.

[56]  A putative class action against these defendants alleging similar claims related to these Funds is pending before Judge Kenneth Marra in the District Court for the Southern District of Florida. *See Bruhl v. PriceWaterhouseCoopers Int'l, Ltd.*, No. 03 Civ. 23044 (S.D. Fl.). On March 31, 2006, Judge Marra granted in part and denied in part motions by the Citco Defendants and BAS to dismiss the complaint for failure to state federal securities law claims for violations of section 10(b) and Rule 10b-5. Plaintiffs filed an amended complaint in the District Court for the Southern District of Florida in April 28, 2006.

13

motions to dismiss plaintiffs' claims against them for common-law fraud, aiding

and abetting fraud, and aiding and abetting breach of fiduciary duty are also

granted. BAS's motion to dismiss the claims against it is granted. All other

motions are denied. Plaintiffs are given leave to replead to correct the deficiencies

identified by this Opinion and Order.[57]

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a

motion to dismiss should be granted only if "'it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him

to relief.'"[58] When deciding a motion to dismiss, courts must accept all factual

---

[57]     CGL, the Citco Defendants, and BAS argue that after dismissal of
plaintiffs' federal securities claims, this Court should decline to exercise
supplemental jurisdiction over plaintiffs' common law claims. *See* Def. Mem. at
15. I do not address this issue because plaintiffs are given leave to amend their
Complaint to remedy the deficiencies in their federal securities law pleadings.
Likewise, I do not address the argument that this Court would not have personal
jurisdiction over the Citco Defendants in the absence of the federal claims. *See id.*
at 32-36. A court may assert pendent personal jurisdiction over defendants with
respect to state-law claims where that court has personal jurisdiction over those
defendants based on federal claims stemming from the same facts. *See IUE
AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993); *Cromer
Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 474 (S.D.N.Y. 2001).

[58]     *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005)
(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The task of the court in
ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the
complaint, not to assay the weight of the evidence which might be offered in

allegations in the complaint as true, and draw all reasonable inferences in plaintiffs' favor.[59] Courts generally do not consider matters outside the pleadings but may consider documents attached to, referenced in, or integral to the pleadings.[60] Courts may also take judicial notice of stock prices and press articles, for the fact of their publication.[61]

## III. DISCUSSION

### A. Venue

CGL and the Citco Defendants move to dismiss for improper venue. Under section 27 of the Securities Exchange Act of 1934, venue is proper in any district "wherein any act or transaction constituting the violation occurred" or

---

support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004) (quotation and citation omitted).

[59]     *See Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 30 (2d Cir. 2004) (citation omitted).

[60]     *See Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *see also In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 331 (S.D.N.Y. 2003). A court at the motion to dismiss stage can also consider "public disclosure documents . . . that have been [] filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2003 WL 21250682, at *6 (S.D.N.Y. May 29, 2003) (citation omitted).

[61]     *See In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, 381 F. Supp. 2d 192, 246 n.61 (S.D.N.Y. 2004) (stock prices); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 425 n.15 (S.D.N.Y. 2003) (citation omitted) (press articles).

"wherein the defendant is found or is an inhabitant or transacts business."[62]

Courts have interpreted the statutory language to mean that the commission of "any non-trivial act in the district establishes venue."[63] Moreover, "courts in this circuit have been willing to find that venue is appropriate even where based solely on communications (involving the dispute) directed by a party to the forum state."[64]

The valuation fraud underlying plaintiffs' claims originated and was executed from Lauer and Lancer Management's offices in New York.[65] Plaintiffs allege that all defendants, including the Citco Defendants, communicated regularly with Lauer and Lancer Management,[66] and that the Citco Defendants distributed

---

[62]   15 U.S.C. § 78aa.

[63]   *ATO RAM, II, Ltd. v. SMC Multimedia Corp.*, No. 03 Civ. 5569, 2004 WL 744792, at \*3 (S.D.N.Y. Apr. 7, 2004). *Accord SST Global Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 452-53 (S.D.N.Y. 2003); *Greenwood Partners v. New Frontiers Media, Inc.*, No. 99 Civ. 9099, 2000 WL 278086, at \*6 (S.D.N.Y. Mar. 14, 2000).

[64]   *SST Global Tech., LLC*, 270 F. Supp. 2d at 453 n.9 (collecting cases).

[65]   *See* Compl. ¶ 15; Plaintiffs' Memorandum of Law in Opposition to Omnibus Motion to Dismiss of Defendants Citco Fund Services (Curacao) N.V., Anthony J. Stocks, Kieran Conroy, Declan Quilligan and Banc of America Securities, LLC ("Pl. Mem.") at 19; Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant International Fund Services (Ireland) Limited ("Pl. IFSI Mem.") at 5.

[66]   *See* Compl. ¶ 26; Pl. Mem. at 19; Pl. IFSI Mem. at 5.

16

misstatements to plaintiffs, including investors in New York.[67] CGL's liability is

premised on the theory that it controlled Citco NV, and therefore, it is sufficient

that acts or transactions by Citco NV in furtherance of the scheme occurred in this

district.[68] Thus, venue is proper.

## B.   Forum Non Conveniens

CGL and the Citco Defendants also move to dismiss based on forum

non conveniens, arguing that the action should have been brought in the BVI.  The

Second Circuit has established a framework for resolving a motion to dismiss

---

[67]   *See* Compl. ¶¶ 14, 26, 29.  Upon the transfer of this action from the
United States District Court for the Southern District of Florida, the parties
stipulated that references to Florida in paragraphs 29 through 34 of the Complaint
will be deemed references to New York. *See* 11/28/05 Stipulation at 2.

[68]   *See Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 620 (2d Cir. 1968)
(for venue to be proper over a specific defendant, it is enough "if there occurred in
that district any act or transaction by any defendant in furtherance of a
manipulative scheme in which [the specific defendant] knowingly participated").
*Accord ATO RAM, II, Ltd.*, 2004 WL 744792, at *3 ("The co-conspirator theory of
proper venue on securities fraud cases applies to acts or transactions in furtherance
of the scheme."); *Ryan v. Allen*, No. 97 Civ. 55, 1997 WL 567717, at *3 (S.D.N.Y.
Sept. 11, 1997) (quoting *Securities Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309,
1317 ([9]th Cir. 1985) ("under the co-conspirator venue theory, 'where an action is
brought against multiple defendants alleging a common scheme of acts or
transactions in violation of securities statutes, so long as venue is established for
any of the defendants in the forum district, venue is proper as to all defendants.'
The rule is such even if some of the defendants have had not contact with the
forum district.").

based on forum non conveniens.[69] Initially, the court must determine the degree of

deference to be afforded to the plaintiff's choice of forum.[70] Deference towards a

plaintiff's choice of forum extends even to foreign plaintiffs, where those

plaintiffs are not forum shopping, but rather have selected the forum for valid

reasons, such as convenience.[71] The greater the degree of deference afforded to

the plaintiffs' choice of forum, the heavier the burden on the defendant to establish

*first,* that an adequate and available alternative forum exists; and *second,* that the

private and public interest factors set forth by the Supreme Court in *Gulf Oil Corp.*

*v. Gilbert* militate in favor of dismissal.[72] *Gilbert*'s private interest factors relate

to convenience for litigants,[73] and the public interest factors involve the

---

[69]     *See Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc); *Base Metal Trading, S.A. v. Russian Aluminum,* 253 F. Supp. 2d 681, 693-713 (S.D.N.Y. 2003) (applying framework).

[70]     *See Iragorri,* 274 F.3d at 70-73; *Concesionaria DHM, S.A. v. Int'l Fin. Corp.,* 307 F. Supp. 2d 553, 562 (S.D.N.Y. 2004).

[71]     *See Iragorri,* 274 F.3d at 71 (deference extends to foreign plaintiffs, where those defendants selected the forum for valid reasons, such as convenience or avoiding expense, and not invalid reasons such as forum shopping).

[72]     *See id.* (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947)).

[73]     *Gilbert,* 330 U.S. at 508 (private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and

18

administration of justice.[74]

Here, I afford significant deference to the choice of forum of "nearly ninety investors," including four located in New York, who represent "the overwhelming majority of the Funds' net investment capital."[75] CGL argues that the presumption in favor of plaintiffs' choice of forum does not apply because the case involves investments in BVI funds by predominantly non-U.S. residents.[76] But CGL fails to demonstrate that plaintiffs are engaged in any improper purpose such as forum shopping.[77] Plaintiffs have legitimate reasons for selecting New York, such as convenience — the majority of the events in this case occurred in New York, and the bulk of relevant evidence and witnesses are located here.[78]

inexpensive").

[74]     *Id.* at 508-09 (public interest factors include avoiding court congestion and imposition of jury duty on persons unrelated to the controversy, ensuring publicity for "cases which touch the affairs of many persons," serving the "local interest in having localized controversies decided at home," and avoiding problems in conflict of laws).

[75]     Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant The Citco Group Limited ("Pl. CGL Mem.") at 6 n.4 (citing Compl. ¶¶ 14(q), (pp), (qq), (rr)).

[76]     *See* CGL Mem. at 11.

[77]     *See Iragorri*, 274 F.3d at 71.

[78]     *See* Pl. CGL Mem. at 8 (arguing that the relevant documents have been produced in Florida, and Lauer and the Funds' fomer employees are all based

19

Moreover, the Second Circuit has held that the interest of the United States in enforcing its securities laws is a "quite valid reason" for suing in federal court.[79]

Even assuming that the BVI is an adequate forum,[80] the public and private interest factors weigh in favor of this district.[81] Defendants make no attempt to argue that the private interest factors support the choice of the BVI.[82] With respect to the public interest factors, I have already held that "[t]his case, involving a large number of plaintiffs and defendants from many jurisdictions, can

---

in New York and Connecticut).

[79] *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002). CGL argues that because plaintiffs bought these offshore funds for the express purpose of avoiding United States regulation and taxes, they should not now be entitled to take advantage of United States securities laws. *See* Reply Memorandum of Law in Support of Defendant The Citco Group Limited's Motion to Dismiss Plaintiffs' First Amended Complaint ("CGL Reply") at 4-5 (citing the Funds' PPMs and Subscriptions Agreements). I do not give substantial consideration to the "offshore" nature of the Funds here, due to the fact that the alleged fraud emanated from a hedge fund manager's operation in New York. *See Cromer Finance Ltd.*, 137 F. Supp. 2d at 476.

[80] *See* CGL Reply at 5 (citing Supplemental Declaration of Stephen Smith QC, Member of the English Bar and the Bar of the Eastern Caribbean States Supreme Court, stating that all defendants are amenable to process in the BVI and the BVI would permit litigation of the subject matter of the action).

[81] *See Iragorri*, 274 F.3d at 74 ("A defendant does not carry the day simply by showing the existence of an adequate alternative forum. The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable.").

[82] *See* CGL Reply at 5.

be efficiently heard in the federal court in New York and this Court has a good deal of experience adjudicating complex cases."[83] Therefore, the motion to dismiss based on forum non conveniens is denied.

## C.   Section 10(b) and Rule 10-b5

### 1.   Prima Facie Case

To state a prima facie case for securities fraud under section 10(b) and Rule 10b-5, a plaintiff must allege that "'the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused injury to the plaintiff.'"[84] The requisite state of mind, or scienter, in a securities fraud action is "'an intent to deceive, manipulate or defraud.'"[85]

### 2 .   *Central Bank*

In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver,*

---

[83]     *Pension Comm. I*, 2006 WL 559811, at *7 (citing *Cromer Fin. Ltd.*, 137 F. Supp. 2d at 479).

[84]     *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir. 2003) (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000)). *Accord Dura Pharm. v. Broudo*, 544 U.S. 336, 341 (2005) (citation omitted) (basic elements of 10b-5 action are "a material misstatement or omission, scienter . . . a connection with the purchase or sale of a security, reliance. . . economic loss; and 'loss causation'").

[85]     *Ganino*, 228 F.3d at 168 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).

*N.A.*, the Supreme Court held that there is no private cause of action under the federal securities laws against aiders and abettors of section 10(b) violations.[86] "The statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act. The proscription does not include giving aid to a person who commits a manipulative or deceptive act."[87] The Second Circuit interpreted *Central Bank* in *Wright v. Ernst & Young LLP*, holding that "substantial participation" in the deception is not enough; "a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)."[88] Furthermore, the defendant "must 'know or should know' that [its] representation would be communicated to investors."[89] "[A] secondary actor cannot incur primary liability under the Act for a statement not attributed to that actor at the time of its dissemination [–] that is, in advance of the investment decision."[90] It is not enough for a plaintiff to allege that a defendant merely "knew

---

[86]     511 U.S. 164 (1994). The Court noted, however, that "[i]n any complex securities fraud [ ] there are likely to be multiple [primary] violators." *Id.* at 191.

[87]     *Id.* at 177.

[88]     152 F.3d 169, 175 (2d Cir. 1998).

[89]     *Id.* (citation omitted).

[90]     *Id.*

22

of the purported fraud through transactions with the defrauders, but failed to expose the deception."[91]

   *Wright* emphasized, however, that *Central Bank* "did not hold that secondary actors are always free from liability under the Act. Rather, secondary actors like accountants may be held liable as primary violators if all the requirements for primary liability are met.'[92] *Wright* also held that "[t]here is no requirement that the alleged violator *directly* communicate misrepresentations to [investors] for primary liability to attach."[93] It is sufficient to allege that the person communicating the misrepresentations "was speaking on behalf of and at the behest of defendants."[94]

### 3. Rule 9(b) and the PSLRA

---

[91]  *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001).

[92]  *Wright*, 152 F.3d at 174.

[93]  *Id.* at 175 (emphasis added) (alteration in original). *Accord Suez Equity Investors, L.P.*, 250 F.3d at 101 ("[t]he fact that DeRoziere, or any other agent of the corporate defendants, may have supplied the [misrepresentations] does not preclude [the corporate defendants] from primary liability").

[94]  *Seippel v. Sidley, Austin, Brown & Wood, LLP*, 399 F. Supp. 2d 283, 295 (S.D.N.Y. 2005). *Accord In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 334 (S.D.N.Y. 2004) ("Allegations that Andersen 'prepared, directed or controlled'. . . false statements issued by Global Crossing place its involvement well beyond the realm of 'aiding and abetting' liability precluded by Central Bank.").

23

Securities fraud actions are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b),[95] and the Private Securities Litigation Reform Act of 1995 ("PSLRA").[96] To plead a material misrepresentation or omission under the PSLRA "the complaint [must] specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed."[97] Rule 9(b) requires that the complaint "identify the speaker" of the alleged misstatements and also "state where and when the statements were made."[98] The Second Circuit has held that "[e]ven with the heightened pleading standard under Rule 9(b) and the Securities Reform Act we

---

[95]     Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances concerning fraud and mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind may be averred generally." *See also Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (applying Rule 9(b) standard to securities fraud claims).

[96]     Pub. L. No. 104-67, 109 Stat. 737 (1995). *See Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).

[97]     15 U.S.C. § 78u-4(b)(1)(B).

[98]     *Eternity Global Master Fund Ltd.*, 375 F.3d at 187 (quotation marks and citation omitted).

24

do not require the pleading of detailed evidentiary matter in securities litigation."[99]

The "group pleading doctrine" allows a plaintiff to rely on "'a presumption that statements in . . . press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company.'"[100] However, this doctrine is "'extremely limited in scope, applying only to clearly cognizable corporate insiders with active daily roles in the relevant companies or transactions.'"[101] The doctrine may apply to outside directors, who "although almost by definition [are] excluded from the day-to-day management of a corporation, can fall within the group pleading presumption when, by virtue of their status or a special relationship with the corporation, . . . have access to information more akin to a corporate insider."[102] But a bare allegation that a defendant has inside information, in the absence of any allegation to support a reasonable inference that

---

[99]     *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001).

[100]    *In re GeoPharma Inc. Sec. Litig.*, 399 F. Supp. 2d 432, 445 (S.D.N.Y. 2005) (quoting *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 142 (S.D.N.Y. 1999)).

[101]    *Id.* (quoting *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000)).

[102]    *In re Independent Energy Holdings PLC Sec. Litig.*, 154 F. Supp. 2d 741, 768 (S.D.N.Y. 2001), *abrogated on other grounds by In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d at 352.

25

the defendant had control over the content of the allegedly fraudulent statement, is not sufficient.[103]

## 4. Scienter

The PSLRA requires that a securities fraud complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[104] "Although speculation and conclusory allegations will not suffice, neither do we require 'great specificity' provided the plaintiff alleges enough facts to support 'a strong inference of fraudulent intent.'"[105] Facts giving rise to a strong inference of scienter can be alleged by one of two methods: the plaintiff may plead "motive and opportunity to commit fraud" or "strong

---

[103]   *Compare Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 494 (S.D.N.Y. 2005) (rejecting conclusory assertions that certain defendants exercised control over company for group pleading purposes where plaintiff did not allege that defendants took part in preparation of misstatements or acted as corporate insiders) *with Schnall v. Annuity & Life Re (Holdings), Ltd.*, No. 02 Civ. 2133, 2004 WL 231439, at *4-5 (D. Conn. Feb. 4, 2004) (applying the group pleading doctrine to a Chairman of the Board, active in company affairs, who also had a significant consulting agreement with the company, and who often signed SEC Form 10-Ks for the defendant company).

[104]   15 U.S.C. § 78u-4(b)(2).

[105]   *Ganino*, 228 F.3d at 169 (quoting *Stevelman v. Alias Research Inc.,* 174 F.3d 79, 84 (2d Cir. 1999)).

circumstantial evidence of conscious misbehavior or recklessness."[106]

### a.   Motive and Opportunity

"Motive [entails] concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged," while "[o]pportunity [entails] the . . . likely prospect of achieving concrete benefits by the means alleged."[107]   "Motives . . . generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud."[108] Specifically, insufficient motives include "the desire for the corporation to appear profitable and . . . the desire to keep stock prices high to increase officer compensation."[109]   Regarding the "opportunity" prong, courts often assume that corporations, corporate officers, and corporate directors would have the opportunity to commit fraud if they so desired.[110]

---

[106]   *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (quotation and citation omitted). *Accord Novak,* 216 F.3d at 311.

[107]   *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994).

[108]   *Kalnit,* 264 F.3d at 139.

[109]   *Id. Accord Acito v. IMCERA Group*, 47 F.3d 47, 54 (2d Cir. 1995).

[110]   *See, e.g., In re Time Warner Sec. Litig.*, 9 F.3d 259, 269 (2d Cir. 1993) (assuming that defendants had opportunity to manipulate company stock).

### b. Conscious Misbehavior or Recklessness

When plaintiffs have failed to plead motive and opportunity, "it is still possible to plead scienter by identifying circumstances indicating conscious behavior [or recklessness] by defendant, though the strength of the circumstantial allegations must be correspondingly greater."[111] Conscious misconduct is relatively easy to identify, "since it encompasses deliberate illegal behavior, such as securities trading by insiders privy to undisclosed and material information . . . or knowing sale of a company's stock at an unwarranted discount."[112]

"Recklessness is harder to identify with . . . precision and consistency."[113] To allege recklessness, plaintiff must allege facts showing that the defendant's conduct was "highly unreasonable, representing an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."[114] A strong inference of recklessness may arise where plaintiffs point

---

[111]   *Kalnit*, 264 F.3d at 142 (quotation and citation omitted).

[112]   *Novak*, 216 F.3d at 308 (citation omitted).

[113]   *Id.*

[114]   ˙ *Rothman,* 220 F.3d at 90 (citing *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47 (2d Cir. 1978)). The Second Circuit has also noted that "[a]n egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness." *Chill v. General Elec. Co.,*

28

to "facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud."[115] Recklessness is adequately alleged when a plaintiff "specifically alleges defendants' knowledge of facts or access to information contradicting their public statements."[116] A purposeful failure to follow an announced policy may also form the basis for an inference of recklessness.[117]

## B. Analysis of Section 10(b) and Rule 10-b5 Claims Against the Citco Defendants

### 1. Primary Liability under *Central Bank*

The Citco Defendants argue that plaintiffs' allegations amount, at best, to a claim that those defendants aided and abetted Lauer's violation of section 10(b), not that they "actively participated in the alleged fraud or made any false statements as to the NAV of the Funds."[118]

---

101 F.3d 263, 269 (2d Cir. 1996) (quotation and citation omitted).

[115] *Novak*, 216 F.3d at 308.

[116] *Id.*

[117] *See In re Scholastic Corp. Sec. Litig.,* 252 F.3d at 77 (defendants knowingly failed to follow own accounting standards); *Rothman*, 220 F.3d at 91 (defendants knowingly failed to follow announced policy of expensing royalty advances); *Novak,* 216 F.3d at 311 (defendants "knowingly sanctioned procedures that violated the Company's own markdown policy").

[118] Def. Mem. at 8.

29

### a.    Citco NV

Citco NV is correct that under *Central Bank*, it is not enough for

plaintiffs to allege that it merely "disseminated," "assisted," or "permitted"

misleading statements by Lauer and Lancer Management.[119]  But paragraph 7 of

the Complaint states that "*Citco NV* used Lauer's fraudulent valuations in

*preparing* the NAV statements."[120]  Paragraph 9 pleads that *Citco NV* "*create[ed]*

and/or confirm[ed] false valuations of the Funds' assets."  Paragraph 112 provides

that plaintiffs relied on "the NAV statements, audit reports, PPMs, performance

reports and other communications from Lauer *and the Funds' service*

*providers*."[121]  Construing these allegations in the light most favorable to

---

[119]    *See* Omnibus Reply Memorandum of Law in Support of Defendants Citco Fund Services (Curacao) N.V., Anthony J. Stocks, Kieran Conroy, Declan Quilligan and Banc of America Securities LLC's Motion to Dismiss Plaintiffs' First Amended Complaint ("Def. Reply") at 2-3 (distinguishing this case from *Seippel* because there, "the representations were made by the defendants indirectly through another, and in this case, the representations were made by another through [Citco NV]").  *See also Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 94 F. Supp. 2d 491, 508-09 (S.D.N.Y. 2000) (indirect representations not attributable to a defendant are not sufficient to support primary liability for securities fraud).

[120]    Compl. ¶ 7 (emphasis added). *See also id.* ¶ 118 (referring to "monthly statements prepared by Citco NV").

[121]    *Id.* ¶ 112 (emphasis added).  Paragraph 112 also alleges that the "reported NAV" was "a figure that was solely within the control of the defendants."

30

plaintiffs, I conclude that plaintiffs have alleged that Citco NV actually prepared the false statements.[122]

The Citco Defendants also argue that "[e]ven if Plaintiffs did allege that [Citco NV] prepared the NAV statements," Citco NV's role was only to calculate the NAV based on valuations supplied by Lauer, and Citco NV had no obligation to independently value the funds.[123] However, Citco NV's duties are not relevant to the issue here — whether the fraudulent NAV statements are directly attributable to Citco NV. Plaintiffs allege that Citco NV knew Lauer's valuations were false, but used those valuations nonetheless to prepare false NAV statements, and distributed those statements directly to plaintiffs.[124] This goes beyond an allegation that Citco NV was a mere conduit of Lauer.[125] Citco NV

---

[122] In their papers, plaintiffs argue "that Citco NV prepared false and misleading NAV statements on Citco NV letterhead and distributed them to the plaintiffs," and therefore those NAV statements are "directly attributable to Citco NV." Pl. Mem. at 9 (citing Compl. ¶¶ 112, 174). Because a complaint may not be amended by briefs submitted in opposition to a motion to dismiss, I cannot consider this allegation. *See, e.g., In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001).

[123] Def. Reply at 2.

[124] *See* Compl. ¶¶ 124, 185. Defendants also argue that plaintiffs' scienter allegations are insufficient, but this is a separate issue.

[125] *Cf. In re Kidder Peabody Securities Litigation*, 10 F. Supp. 2d 398, 407 (S.D.N.Y. 1998) (dismissing claim against GE where it was undisputed that GE's "role in disseminating this information was limited to serving as a conduit"

may ultimately prevail if plaintiffs are unable to demonstrate that Citco NV

prepared the false statements, but at this stage, plaintiffs' allegations are sufficient

to survive under *Central Bank*.[126]

### b. Citco Directors

Although it is a closer question, plaintiffs' allegations against the

Citco Directors are also sufficient under *Central Bank*. Plaintiffs allege that they

would not have purchased the securities if they had known that "the statements

made and/or caused to be made by the Director Defendants" were misleading.[127] It

is not clear exactly what "statements" this paragraph refers to, but the immediately

preceding paragraphs discuss "NAV statements, monthly newsletters and offering

materials," and "the Funds' audited financial statements."[128] This lack of

---

and "when GE opened its mouth regarding Kidder, Kidder's words came out").

[126]    *See Wright*, 152 F.3d at 173 ("The issue is not whether a plaintiff will
ultimately prevail but whether the claimant is entitled to offer evidence to support
the claims.") (citation omitted).

[127]    Compl. ¶ 126. *See also id.* ¶ 174 (plaintiffs would not have
purchased the securities if they had known that "the materials being distributed by
Citco NV, including statements *made and/or caused to be made* by the Director
Defendants and the audit reports and financial statements," were misleading)
(emphasis added).

[128]    *Id.* ¶¶ 124-125. It also unclear which "Director Defendants" this
allegation refers to. The Complaint defines the Director Defendants to include the
Citco Directors as well as two defendants that have not joined this motion: John
W. Bendall, Jr. and Richard Geist. *See id.* ¶ 5.

specificity is a problem, but one which pertains to the particularity of the
allegation and whether plaintiffs may avail themselves of the group pleading
doctrine, not to the sufficiency of the allegations under *Central Bank*.[129] Under
*Central Bank*, it is sufficient that the allegation can be fairly interpreted as stating
that the Funds and/or Citco NV communicated the misrepresentations at the behest
of the Citco Directors.[130]

## 2. Particularity of Pleading with Respect to Misstatements

The Citco Defendants argue that plaintiffs have failed to specify
"each statement alleged to have been misleading,"[131] because plaintiffs have not
provided the exact names, authors, dates, quantities, and locations of each of the
misleading documents.[132] Plaintiffs need not plead all of these details to withstand

---

[129]     *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d at 75 (allowing claim
to proceed against corporate insider despite the fact that "the alleged fraudulent
and misleading statements attributable to [the corporation]" were only alleged to
be attributable to the insider "on information and belief"); *In re Alstom SA*, 406 F.
Supp. 2d 433, 466 n.29 (S.D.N.Y. 2005) ("*Scholastic* suggests that the *Wright*
doctrine requiring attribution may be relaxed in the case of unattributed statements
of a corporate insider"); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d
319, 334 (S.D.N.Y. 2004) (finding allegations that the defendant "prepared" or
"helped create" the false statements issued by company were sufficient to plead
primary liability).

[130]     *See Seippel*, 399 F. Supp. 2d at 294.

[131]     15 U.S.C. § 78u-4(b)(1)(B).

[132]     *See* Def. Mem. at 37.

33

a motion to dismiss, but they are required to provide enough information to give defendants notice of the "specific statements or sets of statements believed to be materially false and misleading."[133]

### a. Citco NV

The Complaint makes frequent reference to amorphously described "financial information," "periodic reports," and "marketing materials."[134] These allegations could be referring to any number of documents and do not provide enough identifying information. But plaintiffs do provide enough specificity with respect to monthly NAV statements issued by Citco NV. Plaintiffs allege that "each month, Citco NV distributed to each shareholder of the Funds a statement setting forth the NAVs of the Funds."[135] Although the Complaint does not state the exact time period of these statements, it can be inferred that plaintiffs are referring to those statements issued between March 2000 and September 2002.[136]

---

[133]    *In re Scholastic Corp. Sec. Litig.,* 252 F.3d at 70. *Cf. Novak,* 216 F.3d at 314 ("The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based.") (quotation marks and citation omitted).

[134]    *See, e.g.,* Compl. ¶¶ 55, 68, 171.

[135]    *Id.* ¶ 67.

[136]    Plaintiffs allege that the NAV figures were fraudulently inflated "from at least March 2000," *id.* ¶ 44, and that Citco NV served as administrator to

34

Plaintiffs specify that the statements were distributed to shareholders by Citco NV.[137] Plaintiffs explain how these statements were fraudulent using specific examples of stocks that were assigned false values by defendants, and allege that the NAV statements were systematically infected by such faulty valuations.[138] Therefore, plaintiffs have pled with sufficient particularity that the monthly NAV statements prepared by Citco NV were misleading.

### b. Citco Directors

Plaintiffs allege that the Citco Directors are responsible for misstatements in "NAV statements, monthly newsletters and offering materials," and "the Funds' audited financial statements."[139] The Citco Directors argue that plaintiffs' claims against them should be dismissed because plaintiffs fail to specify which misstatements, if any, are attributable to each of them.[140]

Plaintiffs urge this Court to apply a "relaxed" pleading standard, because the alleged misstatements were found in corporate reports prepared by

the Funds "[a]t all relevant times until September 2002." *Id.* ¶ 60.

[137] Plaintiffs allege their locations and the location of Citco NV. *See id.* ¶¶ 14, 21.

[138] *See id.* ¶ 41.

[139] *Id.* ¶¶ 124-125.

[140] *See* Def. Mem. at 38-39.

35

insiders.[141] But the cases plaintiffs cite hold only that, in certain circumstances, a plaintiff may plead *scienter* based on the presumption that a corporate defendant had access to internal documents.[142] Cases from the scienter context are not relevant here, because the PSLRA sets forth specific requirements for pleading the misstatement element of a securities fraud claim.[143]

More germane is plaintiffs' argument that under the group pleading doctrine, they are not required to plead the role each Citco Director played, because the misstatements were found in group-published materials and the Citco Directors are corporate insiders. But plaintiffs' attempts to avail themselves of this doctrine are defeated by their failure to identify the "group" that published the documents.[144] It is possible to interpret the Complaint as alleging that the

---

[141]   *See* Pl. Mem. at 16.

[142]   *See, e.g., In re eSpeed, Inc. Sec. Litig.*, No. 05 Civ. 2091, 2006 WL 880045, at \*16 (S.D.N.Y. Apr. 3, 2006) (citing *Cosmas v. Hassett*, 886 F.2d 8, 10 (2d Cir. 1989)) (where "the subject-matter of the alleged misstatements is sufficiently 'significant' to a defendant company, it may be possible for knowledge of contradictory information (and thus, scienter) to be imputed to individual defendants even in the absence of specific information contradicting their public statements").

[143]   *See* 15 U.S.C. § 78u-4(b)(1)(B).

[144]   *See Oxford Health Plans*, 187 F.R.D. at 142 (group pleading doctrine applies only to "group-published" materials).

36

documents containing the misstatements "made and/or caused to be made by the Director Defendants" were published by Citco NV, Lauer, Lancer Management, both Funds, and/or the Funds' auditor.[145] Plaintiffs have not pled that the Citco Directors were insiders of any of these groups at the time of any alleged misstatement, with the exception of Citco NV.

Although plaintiffs do allege that the Citco Directors were insiders of both "Funds," no factual allegations connect the Citco Directors, who served on the board of Lancer Offshore, to any fraud related to Omnifund.[146] Accordingly, insofar as plaintiffs allege that the Citco Directors are liable for losses stemming from Omnifund, those claims are dismissed.

Plaintiffs have adequately alleged that the Citco Directors were insiders of Lancer Offshore. Plaintiffs allege the specific time periods during which each Citco Director served on the board of Lancer Offshore.[147] Plaintiffs also allege that the Citco Directors had "intimate involvement . . . in the affairs of the Funds" and "access to non-public information concerning the Funds' financial affairs and business practices, including periodic internal reports detailing

---

[145]    Compl. ¶¶ 126, 174.

[146]    *See, e.g., id.* ¶ 69.

[147]    *See id.* ¶¶ 18-20.

37

revenues, holdings and other financial information."[148] Plaintiffs do not allege that the Citco Directors took part in the day-to-day operations of Lancer Offshore, but they do allege, based on the fund's PPMs and annual financial statements, that the Citco Directors were responsible for reviewing the valuations of Lancer Offshore's securities to determine that fund's NAV.[149] Although it is a close question, these allegations are sufficient to support the inference that the Citco Directors had control over the content of Lancer Offshore's reports of its NAV at the times they served on that fund's board.

However, plaintiffs have not specified the timing of any allegedly fraudulent statements by Lancer Offshore.[150] It cannot be inferred that Lancer Offshore published any misstatement while any Citco Director was serving on its board.[151] By the time Lancer Offshore's audited financial statements for 2000 and

---

[148]    *Id.* ¶ 69.

[149]    *See id.* ¶¶ 42-43, 56-57.

[150]    For example, plaintiffs allege that Lancer Offshore's audited annual report for 2000 contained misstatements, but do not allege the date that the audited report was issued. *See id.* ¶ 50.

[151]    *See, e.g., Berry v. Valence Tech., Inc.*, 175 F.3d 699, 706-07 (9th Cir. 1999) (group pleading doctrine could not be used to attribute to a director misstatements made after his resignation).

2001 were published, the Citco Directors had resigned.[152]  Although plaintiffs

argue that the Citco Directors "are responsible" for misstatements in the PPMs and

other offering materials, plaintiffs have not argued, or pled, that those directors

*made* the misstatements, nor that these offering materials were published while

any Citco Director served on the board of Lancer Offshore.[153]

        Plaintiffs concede that each Citco Director may only be charged "with

misstatements made while he served as director" but plaintiffs argue that they

cannot be expected to know the precise dates of the Citco Directors'

employment.[154]  This is beside the point.  Plaintiffs must allege "when the

statements were made" with particularity.[155]  Plaintiffs allege date ranges for each

of the Citco Directors' service on Lancer Offshore's board, but do not allege that

---

[152]    *See* 2000 and 2001 Lancer Offshore, Inc. Audited Financial
Statements, Ex. F to Lauer Decl. (referring to the replacement of Quilligan and
Conroy by Geist and Bendall in February 2002).

[153]    Pl. Mem. at 15 (arguing that the allegations are sufficient because
"misrepresentations are alleged," but not because the Citco Directors made the
misrepresentations).  Plaintiffs must allege the speaker of a misrepresentation with
particularity and may not obscure pleading deficiencies by casting allegations in
the passive voice.

[154]    *Id.* at 16 n.19.

[155]    *Eternity Global Master Fund Ltd.*, 375 F.3d at 187 (quotation marks
and citation omitted).

39

any misstatements were made by Lancer Offshore during that time period.[156]

Nonetheless, as previously discussed, plaintiffs have alleged with particularity that the monthly NAV statements published by Citco NV contained misstatements. Plaintiffs allege that the Citco Directors served on Lancer Offshore's board on behalf of Citco NV and participated in Citco NV's fund administration activities on behalf of that Fund,[157] including dissemination of monthly NAV statements.[158] Plaintiffs allege that Conroy and Quilligan were managing directors of Citco NV.[159] Plaintiffs allege that Stocks was a director of CGL's International Fund Services division, and that CGL controlled Citco NV.[160] These allegations are also sufficient to support the inference that the Citco Directors were insiders of Citco NV who participated in its misstatements of Lancer Offshore's NAV. Thus, the section 10(b) claims survive against the Citco Directors with respect to the monthly NAV statements for Lancer Offshore published by Citco NV during each director's respective term.

---

[156]     *See* Compl. ¶¶ 18-20.

[157]     *See id.* ¶¶ 29, 67.

[158]     *See id.* ¶¶ 63-64.

[159]     *See id.* ¶¶ 19, 20.

[160]     *See id.* ¶¶ 18, 181.

### 3. Scienter

#### a. Motive and Opportunity

##### i. Citco NV

Plaintiffs argue that Citco NV had a motive to commit fraud because

its fees were tied to the Funds' NAVs, and it had the opportunity to commit fraud

because it was the "last line of defense between the Funds and the investors."[161]

Unlike a motive to increase stock prices, shared by all corporate insiders, a motive

to generate increased fees based on inflated NAV figures would be "a concrete and

personal benefit to the individual defendants resulting from the fraud."[162]

Plaintiffs argue that, "[a]s a service provider, rather than a corporate insider, Citco

NV had no interest in increasing the profitability of the Funds. Rather, Citco NV's

only possible motive to affect the Funds' NAVs was an illicit one — to inflate its

own fees."[163] But the Complaint contains no allegations with respect to Citco

---

[161] Pl. Mem. at 12-13 n.14.

[162] *Kalnit*, 264 F.3d at 139. *See, e.g.*, *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d at 346 (plaintiffs pled scienter by alleging that auditor with dual role as consultant had concrete motive to generate fees through sham valuations).

[163] Pl. Mem. at 13 n.14.

41

NV's fees,[164] and thus plaintiffs fail to plead scienter based on motive and opportunity.[165]

### ii.    Citco Directors

Even if plaintiffs had alleged Citco NV's scienter based on motive and opportunity, the group pleading doctrine does not allow plaintiffs to automatically impute the scienter of Citco NV to the Citco Directors.[166]  Plaintiffs

---

[164]    Schedule A to the Administration Agreement provides that Citco NV was to earn a fee computed based on the Lancer Offshores' NAV.  However, the Complaint contains no allegations of motive related to Citco NV.  Plaintiffs do allege that Lancer Management and unidentified "others" earned increased fees through the alleged valuation fraud. *See* Compl. ¶¶ 4, 38, 47.  However, this general reference is not enough to support "a strong inference of fraudulent intent" by Citco NV. *Ganino*, 228 F.3d at 169 (citation and quotation marks omitted).

[165]    Defendants also argue that plaintiffs have not pled opportunity because "the Placement Memoranda impose no *duty* on [Citco NV] to value the securities in the Funds' portfolios." Def. Reply at 6 n.5 (emphasis added).  But whether the PPMs imposed any duties is beside the point.  Plaintiffs allege that under the PPMs, the Citco Directors had the *opportunity* to determine the final assignment of values of securities in the Funds, *see* Compl. ¶¶ 42-43, and that Citco NV, as administrator, had the *opportunity* to fraudulently misstate the Funds' NAV in its reports. *See, e.g., id.* ¶ 46.

[166]    *See In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546, 2004 WL 2190357, at *15 (S.D.N.Y. Sept. 30, 2004). *See also In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) ("Although the group pleading doctrine may be sufficient to link the individual defendants to the allegedly false statements, Plaintiff must also allege facts sufficient to show that the Defendants had knowledge that the statements were false at the time they were made."); *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) ("[B]oilerplate allegations that defendants knew or

42

must "state with particularity facts giving rise to a strong inference" that each defendant acted with scienter.[167]

### b.    Recklessness

#### i.    Citco Directors

Plaintiffs argue that the Citco Directors acted recklessly because they did not prevent Lauer and Lancer Management from falsely reporting the Fund's NAV.[168]  Plaintiffs also allege that the Citco Directors failed to follow their own stated policies of independent review of valuations.[169]  But allegations such as these, without more, describe negligent conduct and do not establish a strong inference of recklessness.[170]

---

should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter.").

[167]    15 U.S.C. § 78u-4(b)(2).  Plaintiffs may plead scienter of the Citco Directors collectively, insofar as those directors are identically situated.  But plaintiffs may not use collective references to a group of defendants as a pleading technique to blur important distinctions among defendants and evade the requirement that fraud be pled with particularity.  *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

[168]    *See* Compl. ¶ 123.

[169]    *See id.* ¶¶ 62-63, 65-66, 132, 170.

[170]    *See Chill*, 101 F.3d at 270 ("Fraud cannot be inferred simply because GE might have been more curious or concerned about the activity at Kidder.");  *Shields*, 25 F.3d at 1129 ("The pleading strongly suggests that the defendants should have been more alert and more skeptical, but nothing alleged indicates that

Plaintiffs do not allege that the Citco Directors ignored red flags or failed to review any particular information that would have revealed the fraud.[171] Plaintiffs allege only that the Citco Directors had access to "information about the Funds' positions" and the Funds' "periodic internal reports detailing revenues, holdings and other financial information."[172] These allegations are too conclusory to support the inference that the Citco Directors should have discovered Lauer's scheme to manipulate stock prices.[173] Plaintiffs do not allege, for example, that the Citco Directors had access to information revealing that most of the issuers in which the Funds were heavily invested had virtually no operations or earnings or that the stocks held by the Funds were thinly traded and illiquid. Therefore, plaintiffs have failed to allege that the Citco Directors acted with scienter.

### ii.    Citco NV

management was promoting a fraud.").

[171]    *Cf. Cromer Fin. Ltd.*, 137 F. Supp. 2d at 493 (plaintiffs alleged that the fund administrator used false NAV figures provided by introducing broker despite concurrent receipt of accurate financial information from clearing broker).

[172]    Compl. ¶¶ 69, 172.

[173]    *See Rothman*, 220 F.3d at 91 (complaint must provide facts to support inference that defendants had reached the conclusion that the statements were false "at some point during the time period alleged") (quotation marks and citation omitted).

44

Plaintiffs allege "upon information and belief" that Citco NV knew of the fraud at the time it resigned as administrator.[174] This allegation is insufficient, because under the PSLRA, "if an allegation is made on information or belief, the complaint must state with particularity all facts on which that belief is formed."[175] Plaintiffs request that this Court consider scienter allegations made by the Funds' court-appointed receiver ("Receiver") in its complaint in the United States District Court for the Southern District of Florida against, *inter alia,* CGL and the Citco Defendants.[176] Plaintiffs argue that the Receiver's Complaint contains "lengthy verbatim quotations from e-mails sent and received by the Citco Defendants which demonstrate their knowledge of and participation in the fraud."[177] Plaintiffs'

---

[174]    *See* Compl. ¶ 72.

[175]    *Catton v. Defense Tech Sys., Inc.,* No. 05 Civ. 6954, 2006 WL 27470, at *7 (S.D.N.Y. Jan. 6, 2006).

[176]    *See* Amended Complaint, *Court Appointed Receiver of Lancer Offshore, Inc. and The OmniFund, Ltd. v. The Citco Group Ltd., Citco Fund Services (Curacao) N.V., Citco Fund Services (USA) Inc., Inter Caribbean Services, Ltd., Anthony Stocks, Kieran Conroy, and Declan Quilligan,* No. 05-60080-CIV-MARRA/VITUNAC ("Receiver's Compl."). The Receiver's Complaint was unsealed by the Florida court on February 21, 2006. Plaintiffs filed the Receiver's Complaint as "supplemental material" with this Court on March 2, 2006, after all defendants' motions to dismiss were fully submitted. *See* Plaintiffs' Notice of Filing of Supplemental Material ("Pl. Supp.").

[177]    Pl. Supp. at 2-3 (citing Receiver's Compl. ¶¶ 159-174).

motion papers also raise the allegation, not contained in the Complaint, that Citco

NV's recklessness is demonstrated by monthly account statements it received from

BAS that contained "obvious and alarming discrepancies" regarding the

composition and valuation of the Funds' portfolios.[178] Although these types of

allegations, if included in an amended complaint, would be likely to withstand a

motion to dismiss, I will not evaluate the sufficiency of these allegations at this

time.[179]

The Citco Defendants also argue that even if plaintiffs had pled that

the Citco Directors were reckless, the scienter of the Citco Directors may not be

imputed to Citco NV.[180] Plaintiffs argue that the Citco Directors' knowledge may

be imputed to Citco NV because they were Citco NV employees sitting as

directors of Lancer Offshore "in furtherance of their duties on behalf of Citco NV

---

[178]    Pl. Mem. at 14. Plaintiffs state that they became aware of this
information "through the investigations by the plaintiffs and the Receiver in the
two years since this action was filed." *Id.* at 14 n.9.

[179]    These documents are not attached to or referenced in the Complaint,
*see Subaru Distribs. Corp.*, 425 F.3d at 122, nor are they public documents that
plaintiffs relied on in bringing the suit, *see In re Interpublic Sec. Litig.*, 2003 WL
21250682, at *6.

[180]    *See* Def. Mem. at 12 (citing *United States v. Bestfoods*, 524 U.S. 51,
69 (1998) (rejecting the "automatic attribution of the actions of dual officers and
directors to the corporate parent")).

and to help Citco NV retain the Funds as clients."[181]  Plaintiffs are correct that this

allegation distinguishes the case from those in which a corporate officer

"'change[s] hats' and adopts distinct roles in order to represent two different

corporations."[182]  Therefore, although I dismiss the claims against all Citco

Defendants due to the failure to plead scienter under either a theory of motive and

opportunity or a theory of recklessness, I do not dismiss on the ground that the

Citco Directors' scienter may not be imputed to Citco NV.[183]

### 4.    Section 10(b) Claims Based on Retention of Shares

Plaintiffs allege that their section 10(b) claim "is brought on behalf of

only those plaintiffs who purchased all or part of their shares in the Funds after

March 2000," but also that plaintiffs were damaged by the decision "to purchase

and hold . . . and/or to retain those shares."[184]  Defendants argue that plaintiffs may

only bring a section 10(b) claim with respect to actual purchases or sales of

---

[181]    Compl. ¶ 64; *see also id.* ¶¶ 69-70.  Plaintiffs also argue in their
motion papers that Citco NV was compensated for the Citco Directors' services.
*See* Pl. Mem. at 12.

[182]    Pl. Mem. at 12 (citing *Bestfoods*, 524 U.S. at 69).

[183]    Defendants also correctly note that because the Citco Directors were
not directors of OmniFund, knowledge of fraud related to that Fund may not be
imputed from the Citco Directors to Citco NV.  *See* Def. Reply at 5 n.4.

[184]    Compl. ¶¶ 169, 176.

47

securities, and may not bring any claims that relate to the retention of securities.[185]

Defendants are correct.[186] To the extent that plaintiffs who invested prior to

March 2000 assert claims under section 10(b), those claims are dismissed.

C.    **Section 20(a) Claim Against CGL**

Section 20(a) states, in pertinent part:

> Every person who, directly or indirectly, controls any
> person liable under any provision of this chapter or of any
> rule or regulation thereunder shall also be liable jointly and
> severally with and to the same extent as such controlled
> person to any person to whom such controlled person is
> liable, unless the controlling person acted in good faith and
> did not directly induce the act or acts constituting the
> violation or cause of action.[187]

"The elements of a claim under Section 20(a) include both a primary violation and

control over the primary violator."[188] "Control over a primary violator may be

---

[185]    Def. Mem. at 6 n.9. Plaintiffs concede that section 10(b) claims "may
only be asserted by purchasers or sellers" but argue that "holders of securities may
assert state law claims for fraudulent maintenance, among other things." Pl. Mem.
at 9 n.8.

[186]    *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, – U.S. – ,
126 S. Ct. 1503, 1509-12 (2006) (citing *Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)).

[187]    15 U.S.C. §§ 78t(a).

[188]    *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 307 (S.D.N.Y. 2005).
*Accord In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d at 392.

established by showing that the defendant possessed 'the power to direct or cause

the direction of the management and policies of a person, whether through the

ownership of voting securities, by contract, or otherwise.'"[189] "A plaintiff is

required to prove actual control, not merely control person status. Naked

allegations of control, however, will typically suffice to put a defendant on notice

of the claims against her."[190]

        A claim under section 20(a) must be pleaded in accordance with Rule

8(a) of the Federal Rules of Civil Procedure.[191]  Rule 8(a) requires that the plaintiff

provide "a short and plain statement of the claim showing that the pleader is

entitled to relief." Rule 8(a) does not require "a plaintiff to plead the legal theory,

---

[189]    *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472-73 (2d Cir. 1996)
(quoting 17 C.F.R. § 240.12b-2 and adopting this standard for a section 20(a)
claim).

[190]    *In re Initial Public Offering Sec. Litig.,* 241 F. Supp. 2d at 352
(citations omitted).

[191]    *See id.* at 396-97 ("Neither the PSLRA (because scienter is not an
essential element), nor Rule 9(b) (because fraud is not an essential element), apply
to a Section 20(a) claim.") (citations omitted). *See also Teamsters Local 445
Freight Div. Pension Fund v. Bombardier Inc.*, No. 05 Civ. 1898, 2005 WL
2148919, at *7 n.95 (S.D.N.Y. Sept. 6, 2005) (collecting cases). *But see, e.g.,
JHW Greentree Capital, L.P. v. Whittier Trust Co.*, No. 05 Civ. 2985, 2006 WL
1080395, at *5 (S.D.N.Y. Apr. 24, 2006) (noting that there continues to be "some
confusion within this Circuit regarding the content of the culpable participation
requirement" and assuming that scienter must be pleaded).

facts, or elements underlying his claim."[192]  "To comply with Rule 8, plaintiffs need not provide anything more than sufficient notice to permit defendant to file an answer."[193]

CGL moves to dismiss the section 20(a) claim, arguing that the statute requires plaintiffs to provide more than conclusory allegations that CGL was a "culpable participant" in the alleged fraud.[194]  But the statutory language places "the burden . . . on defendants . . . to 'exculpate' themselves by proving either good faith or due diligence."[195]  As this Court has previously held, a plaintiff need not affirmatively plead scienter on the part of a control person under section 20(a).[196]  Moreover, under Rule 8, plaintiffs are not required to plead facts to

---

[192]    *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir. 2005) (citations omitted).

[193]    *In re Initial Public Offering Sec. Litig.,* 241 F. Supp. 2d at 324 (citations omitted).

[194]    CGL Reply at 9. *See also Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir. 1998) (to prove a section 20(a) claim, a plaintiff must demonstrate "'that the controlling person was in some meaningful sense a culpable participant'") (quoting *First Jersey,* 101 F.3d at 1472).

[195]     *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d at 395-96.

[196]    *See id.* (holding that under section 20(a) and to survive a motion to dismiss, a plaintiff must only plead control and an underlying violation).

demonstrate culpable participation.[197] Under Rule 8, a claim "[may] not be dismissed on the ground that it is conclusory or fails to allege facts."[198]

Plaintiffs have adequately alleged CGL's status as a control person of Citco NV.[199] Nonetheless, because plaintiffs' section 10(b) claims are dismissed (albeit without prejudice), plaintiffs have failed to plead a primary violation of the securities laws. Therefore I must also dismiss plaintiffs' section 20(a) claim against CGL, again without prejudice.[200]

## D. Common-Law Claims

### 1. Choice of Law

#### a. New York Choice-of-Law Rules

---

[197] *See Phillips,* 408 F.3d at 130. *See also In re Van der Moolen Holding N.V. Sec. Litig.,* 405 F. Supp. 2d 388, 413 (S.D.N.Y. 2005) (noting that no "particularized allegations" of "culpable participation in an underlying Section 10(b) fraud" are required to state a claim under section 20(a)).

[198] *In re Initial Public Offering Sec. Litig.,* 241 F. Supp. 2d at 323 (quoting *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002)).

[199] *See* Compl. ¶¶ 7, 21, 22, 181, 182. I have already addressed CGL's argument that Citco NV is not a division of CGL. *See Pension Comm. II,* 2006 WL 708470, at *5 (holding that plaintiffs had raised "a question about whether there is an oversight process linking the worldwide Citco entities despite their legal independence" that requires the parties to engage in discovery).

[200] *See In re GeoPharma,* 399 F. Supp. 2d at 453-54 (citing *Rombach,* 355 F.3d at 177-78).

In diversity actions, federal courts follow the choice-of-law rules of

the forum state to determine the controlling substantive law.[201] Under New York

choice-of-law rules, the first step of the analysis is to determine whether there is a

substantive conflict between the laws of the relevant choices.[202] "In the absence of

substantive difference . . . a New York court will dispense with choice of law

analysis; and if New York law is among the relevant choices, New York courts are

free to apply it."[203]

New York follows the internal affairs doctrine, which generally

requires that "questions relating to the internal affairs of corporations are decided

in accordance with the law of the place of incorporation."[204] This doctrine

---

[201]    *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006).

[202]    *See GlobalNet Financial.com, Inc.*, 449 F.3d at 382 (quoting *In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993)) ("The New York Court of Appeals has held that 'the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'").

[203]    *International Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

[204]    ˙ *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996) (citations omitted). *Accord City of Sterling Heights Police and Fire Ret. Sys. v. Abbey Nat., PLC*, 423 F. Supp. 2d 348, 363 (S.D.N.Y. 2006).

"recognizes that only one State should have the authority to regulate a
corporation's internal affairs – matters peculiar to the relationships among or
between the corporation and its current officers, directors, and shareholders –
because otherwise a corporation could be faced with conflicting demands."[205]
However, "the New York Court of Appeals has rejected 'any automatic
application of the so-called 'internal affairs' choice-of-law rule.'"[206] "[I]n certain
circumstances 'application of the local law of some other state is required by
reason of the overriding interest of that other state in the issue to be decided.'"[207]
"The principles compelling a forum state to apply foreign law come into play only
when a legitimate and substantial interest of another state would thereby be
served."[208]

---

[205]    *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).

[206]    *Stephens v. Nat'l Distillers & Chem. Corp.*, No. 91 Civ. 2901, 1996
WL 271789, at \*4 (S.D.N.Y. May 21, 1996) (applying New York law to breach of
fiduciary duty claim against Kentucky corporation) (quoting *Norlin Corp. v.
Rooney, Pace Inc.*, 744 F.2d 255, 263-64 (2d Cir. 1984)).

[207]    *Id.* (quoting Restatement (Second) of Conflict of Laws § 302 cmt. b
(1971)). *Accord Polar Int'l. Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 116 & n.6
(S.D.N.Y. 1999) (the law of a state other than that of incorporation may apply to
corporate internal affairs where the corporation has significant contacts with the
other jurisdiction) (citing *Norlin*, 744 F.2d at 263).

[208]    *Norlin*, 744 F.2d at 263 (citations omitted).

53

Thus, to resolve conflicts in tort cases, New York applies an "interest analysis" to identify the jurisdiction that has the greatest interest in the litigation based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that "relate to the purpose of the particular law in conflict."[209] When the law is one which regulates conduct, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."[210] A tort occurs in "the place where the injury was inflicted," which is generally where the plaintiffs are located.[211]

### b. New York Law Applies to the Common-Law Claims

Plaintiffs argue that New York law governs their common-law claims against the Citco Defendants, and those defendants, in turn, argue that BVI law

---

[209]   *GlobalNet Financial.com, Inc.*, 449 F.3d at 384 (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)). *Accord Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 337 (2d Cir. 2005) (citation omitted) (the interest analysis is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation").

[210]   *GlobalNet Financial.com, Inc.*, 449 F.3d at 384.

[211]   *Cromer Fin. Ltd.,* 137 F. Supp. 2d at 492 (citation and quotation marks omitted). *Accord Sack v. Low*, 478 F.2d 360, 365-66 (2d Cir. 1973) (interpreting New York law).

54

applies.[212] As noted above, the first question is whether there is a conflict between the laws of the New York and the BVI. The Citco Defendants argue that there is a conflict of law regarding the claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and aiding and abetting fraud.[213] The Citco Defendants argue that under BVI law,[214] plaintiffs would have no claims against them for breach of fiduciary duty because, *inter alia*, the BVI would require plaintiffs to prove more facts to establish a fiduciary relationship than would New

[212]   *See* Pl. Mem. at 18-20; Def. Mem. at 16-18.  BAS and IFSI do not argue for the application of any law other than New York's to plaintiffs' claims against them. *See* Def. Mem. at 18; IFSI Mem. at 15.

[213]   The Citco Defendants do not argue that BVI law conflicts with New York law with respect to the common-law fraud, negligence, negligent misrepresentation, and professional malpractice claims against them, and I will therefore apply New York law to those claims. *See International Bus. Mach. Corp.*, 363 F.3d at 143.

[214]   As evidence of BVI law, the Citco Defendants submit the affidavit of Stephen Smith, a member of the English Bar and the Bar of the Eastern Caribbean States Supreme Court. *See* Declaration of Stephen Smith QC, Ex. N to Lauer Aff. According to Smith, the BVI incorporates statutory law from the United Kingdom and applies English common law to areas not covered by BVI law. *See id*. at 6. For that reason, the Citco Defendants also submit the affidavit of English barrister John Wardell. *See* Declaration of John Wardell, QC, Ex. O to Lauer Aff.  These affidavits are uncontested by plaintiffs.  A court may rely on such affidavits for purposes of determining whether a conflict of law exists. *See, e.g.*, *City of Sterling Heights*, 423 F. Supp. 2d at 364, n.8 (relying on uncontested affidavit of English barrister).

55

York.[215] The Citco Defendants also argue that unlike New York, the BVI would not recognize causes of action for aiding and abetting fraud or aiding and abetting breach of fiduciary duty.[216]

To resolve these conflicts, I now turn to the law of the jurisdiction where the plaintiffs are located.[217] But here, plaintiffs are an international group, located in jurisdictions including both New York and the BVI.[218] As in *Cromer Finance Ltd. v. Berger*, "injury has occurred in locations with only limited

---

[215]   *Compare* Def. Mem. at 20 (arguing that plaintiffs breach of fiduciary duty claims against Citco NV are insufficient under English law because Citco NV's role as fund administrator "was not one involving trust and confidence that would give rise to fiduciary duties" and plaintiffs fail to allege "intentional misconduct"); *with infra* Part III.D.3 (holding that plaintiffs have adequately alleged claims for breach of fiduciary duty against Citco NV under New York law). *Compare also* Def. Mem. at 20 (arguing that "[t]he general rule in English law is that directors owe a fiduciary duty to the company and not to shareholders" and that plaintiffs have not alleged any basis for the Citco Directors' fiduciary duties to shareholders under English law); *with Norlin Corp.*, 744 F.2d at 264 (holding that under New York law, a board member has a duty of care to a corporation and its shareholders).

[216]   *Compare* Def. Mem. at 20 (arguing that under British common law, there is no cause of action for aiding and abetting the commission of a tort); *with infra* Part III.D.5 (analyzing elements of aiding and abetting torts under New York law).

[217]   *See Cromer Fin. Ltd.*, 137 F. Supp. 2d at 492.

[218]   *See* Compl. ¶ 14 (listing four plaintiffs with addresses in New York and three with addresses in the BVI).

56

connection to the conduct at issue."[219]  Thus, the plaintiffs' location is not a

dispositive factor, and I will also analyze other occurrences and contacts within

each jurisdiction that relate to the conflict of law.[220]

Plaintiffs argue that New York law should apply because the

underlying valuation fraud and breach of fiduciary duty were originated and

executed by Lauer and Lancer Management in New York.[221]  Lauer and Lancer

Management conducted the day-to-day operations of the Funds from their offices

in New York.[222]  The Citco Defendants could not have carried out their obligations

to compute the Funds' NAVs without extensive interaction with the Funds'

managers in New York, who were responsible for the purchases and sales of

securities on behalf of the Funds.[223]  Plaintiffs argue that all defendants, including

the Citco Defendants, communicated regularly with the Fund managers' New

---

[219]   *Cromer Fin. Ltd.,* 137 F. Supp. 2d at 492.

[220]   *See GlobalNet Financial.com, Inc.*, 449 F.3d at 382.

[221]   *See* Compl. ¶¶ 15, 26; Pl. Mem. at 19; Pl. IFSI Mem. at 5.

[222]   *See* Pl. IFSI Mem. at 5.

[223]   *See* Compl. ¶¶ 42-46 (describing the role of Lauer, Lancer
Management, and the Funds' directors in calculating each Funds' NAV); *id.* ¶ 63
(alleging that Citco NV agreed to review reports by the Fund manager).

57

York offices, and that the torts at issue stemmed from those communications.[224]

The Citco Defendants argue that the BVI has the greatest interest in litigation over investments organized under its laws.[225] In a similar vein, the Citco Directors argue BVI law should apply to the claims against them under the internal affairs doctrine.[226] The purpose of the internal affairs doctrine is to prevent a corporation and its current directors from being "faced with conflicting demands."[227] Here, the Funds are defunct and the Citco Directors no longer serve on their boards.[228] Moreover, the allegedly tortious conduct of the Citco Directors and Citco NV in relation to the management of the Funds had little more than a nominal connection to the BVI.

Because occurrences in New York and the parties' contacts with that

---

[224] *See* Pl. IFSI Mem. at 5.

[225] *See* Def. Mem. at 17-18. Citco NV also argues that plaintiffs' agreement that BVI law would govern disputes under the Lancer Offshore Subscription Agreement demonstrates their recognition that the BVI has the greatest interest in these disputes. *See* Def. Mem. at 18; Lancer Offshore Subscription Agreement at 8, Ex. C to Lauer Aff. But Citco NV concedes that this contract provision is not controlling as to tort claims. *See* Def. Mem. at 18.

[226] *See* Def. Mem. at 18. The "internal affairs doctrine" is not applicable to Citco NV, which was not organized under the laws of the BVI. *See* Compl. ¶ 22.

[227] *Edgar*, 457 U.S. at 645.

[228] *See* Compl. ¶¶ 1, 18-20.

forum bear the most relation to the torts at issue here, New York has the greatest interest in applying its law.[229] New York has a strong interest in applying its law with respect to defendants who aid and abet torts masterminded and executed by hedge fund managers from within the state, and who breach their fiduciary duties, to serve as a check against such misconduct.[230] The breach of fiduciary duty relates to the Citco Defendants' failure to independently verify false information issued to them from Lauer and Lancer Management in New York.[231] The Citco

---

[229]    *See Cromer Fin. Ltd.,* 137 F. Supp. 2d at 492 (applying New York law as the "jurisdiction where the fraud originated and where substantial activities in furtherance of the fraud were committed"). The Citco Defendants argue that *Cromer* is distinguishable because the primary tortfeasors, Lauer and Lancer Management are not parties to this case, *see* Def. Mem. at 17 n.19, but this does not lessen the centrality of the valuation fraud devised by Lauer and Lancer Management to plaintiffs' claims. Indeed, plaintiffs' claims in this action are wholly dependent on their allegations of misconduct by the Funds' managers. Plaintiffs are barred from asserting claims against Lauer and Lancer Management in this action by the the January 2004 case management order entered by the Honorable William J. Zloch in *SEC v. Lauer*, Case No. 03-80162 (S.D. Fla.). *See* Compl. ¶ 15.

[230]    *See Solow v. Stone*, 994 F. Supp. 173, 177 (S.D.N.Y. 1998), *aff'd,*163 F.3d 151 (2d Cir. 1998) (where the "'acts giving rise' to the secondary claims occurred 'in significant part' in New York," no jurisdiction has "an interest greater than New York's with respect to these tort claims"); *Cromer Finance Ltd. v. Berger*, No. 00 Civ. 2284, 2003 WL 21436164, at *8 (S.D.N.Y. June 23, 2003) ("[A]s the forum in which the primary tort occurred, New York has the greatest interest in applying its law to the claim of aiding and abetting fraud.").

[231]    *See Cromer Fin. Ltd.,* 137 F. Supp. 2d at 492-93 (applying New York law where fraudulent "audit reports were based on financial information

Defendants should reasonably have expected to face suit in New York due to Lauer's location, the nature of their international practices, and their alleged misrepresentations to international investors, including investors within this state.[232]

### 2. Common-Law Fraud

Because the elements of common-law fraud in New York are "substantially identical to those governing § 10(b), the identical analysis applies."[233] Plaintiffs' common-law fraud claims against the Citco Defendants

---

emanating from New York and were disseminated to Fund shareholders in many countries, including shareholders who either resided in the United States or whose affairs were managed from the United States").

[232]   *See id.*; Compl. ¶ 30 (alleging that Citco NV performs fund administration services for hundreds of hedge funds throughout the world, including many in the United States, and receives substantial revenue from the United States, including New York).

[233]   *AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC*, No. 01 Civ. 11448, 2005 WL 2385854, at *16 (S.D.N.Y. Sept. 26, 2005) (citation and quotation marks omitted). "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)). Moreover, common law fraud actions are subject to the heightened pleading requirements of Rule 9(b). *See Eternity Global Master Fund Ltd.*, 375 F.3d at 187.

suffer from the same deficiencies as their federal securities law claims. However, this claim is dismissed without prejudice as plaintiffs are granted leave to replead.

### 3.    Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty under New York law are "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages."[234] Generally, no fiduciary duties arise where parties deal at arm's length in conventional business transactions.[235] However, a fiduciary relationship may arise where the parties to a contract specifically agree to such a relationship, or if "one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party."[236] The plaintiff must demonstrate that the defendant was "under a duty to act for or to give advice for

---

[234]    *SCS Commc'ns., Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004).

[235]    *See In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002); *SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62, 65 (1st Dep't 2004).

[236]    *Ross v. FSG PrivatAir, Inc.,* No. 03 Civ. 7292, 2004 WL 1837366, at *5 (S.D.N.Y. Aug. 17, 2004) (quoting *Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000)).

the benefit of another upon matters within the scope of the relation."[237]

"While the 'exact limits' of what constitutes a fiduciary relationship
are 'impossible of statement,' a fiduciary relationship may be found in any case 'in
which influence has been acquired and abused, in which confidence has been
reposed and betrayed.'"[238] Contractual relations or formal writings are not
required to establish a fiduciary duty.[239] "Rather, the ongoing conduct between
parties must be considered."[240] Whether a party reposed confidence in another and
reasonably relied on the other's superior expertise or knowledge is a "fact-specific
inquiry."[241] Where a plaintiff alleges a breach of fiduciary duty by conduct not

[237]    *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir.
1991) (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (1st
Dep't 1987)).

[238]    *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216
F. Supp. 2d 198, 218 (S.D.N.Y. 2002) (quoting *Penato v. George*, 383 N.Y.S.2d
900, 904 (2d Dep't 1976)).

[239]    *See, e.g., Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins.
Services,* 388 F. Supp. 2d 292, 305 (S.D.N.Y. 2005).

[240]    *United Feature Syndicate, Inc.*, 216 F. Supp. 2d at 218 (citations and
quotation marks omitted). *Accord United States v. Chestman*, 947 F.2d 551, 568
(2d Cir. 1991) (finding a fiduciary relationship "exists when confidence is reposed
on one side and there is resulting superiority and influence on the other").

[241]    *Lumbermens Mut. Cas. Co.*, 388 F. Supp. 2d at 305; *Wiener v. Lazard
Freres & Co.*, 672 N.Y.S.2d 8, 14 (1st Dep't 1998) (noting that whether a
fiduciary duty exists "is necessarily fact-specific to the particular case") (citing
New York cases).

amounting to fraud, such as breach of a duty of care, disclosure, or loyalty, the general pleading standards set out by Rule 8(a) of the Federal Rules of Civil Procedure, not the heightened standards of Rule 9(b), apply.[242]

### a.    Citco Directors

Although the Citco Directors argue that the breach of fiduciary duty claims against them are deficient under BVI law, as previously discussed, New York law applies.[243]    The Citco Directors do not argue that these claims are deficient under New York law, and therefore, their motions to dismiss are denied.

### b.    Citco NV

Citco NV argues that as the Funds' administrator, it did not have any fiduciary duty to investors to ensure the accuracy of reports concerning the valuation of the Funds' assets.[244]    Plaintiffs allege that Citco NV had superior access to confidential information regarding the Funds' NAV by virtue of its role as the Funds' administrator.[245]    Although "[f]iduciary duties do not arise solely

---

[242]    *See Rahl v. Bande*, 328 B.R. 387, 413 (S.D.N.Y. 2005); *Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2002 WL 362794, at *9 (S.D.N.Y. Mar. 6, 2002).

[243]    *See* Def. Mem. at 20.

[244]    *See id.* at 30; IFSI Mem. at 15-16.

[245]    *See* Compl. ¶ 69.

because one party has expertise that is superior to another,"[246] here, plaintiffs also allege that Citco NV held itself out to investors as having policies and procedures to ensure that the Funds' valuations would be accurate and fair, and that they relied on these representations.[247] Moreover, the heightened pleading standards of Rule 9(b) do not apply because plaintiffs' claim rests on Citco NV's breach of its duty of care to ensure the accuracy of reports to investors, not necessarily on any allegedly fraudulent conduct. These allegations are sufficient, under Rule 8, to plead that Citco NV had a fiduciary duty.[248]

---

[246]     *Suthers v. Amgen Inc.*, No. 05 Civ. 4158, 2006 WL 1062895, at *8 (S.D.N.Y. Apr. 19, 2006).

[247]     *See* Compl. ¶¶ 63-66. *See Ross,* 2004 WL 1837366, at *5 (allegations that defendant "held itself out to be expert in aircraft sales and acquisitions, including without limitation, in negotiating contracts for the purchase and sale of aircraft," and that plaintiff "relied on those representations sufficient to allege a fiduciary relationship"); *Sergeants Benev. Ass'n Annuity Fund v. Renck,* 796 N.Y.S.2d 77, 79 (1st Dep't 2005) (allegations that defendants "held themselves out as experienced in the field of investment consulting and management" and plaintiffs "did not possess sophisticated knowledge of investment management" and relied on defendants' expertise sufficient to plead fiduciary duty).

[248]     *See Jordan (Bermuda) Inv. Co. v. Hunter Green Invs., Ltd.*, No. 00 Civ. 9214, 2003 WL 21263544, at *4 (S.D.N.Y. June 2, 2003) (holding that fund administrator had "a fiduciary duty to all Fund shareholders to implement all trades on behalf of those shareholders and to report the status of each shareholder's account accurately"); *E.P. Lehmann Co. v. Polk's Modelcraft Hobbies, Inc.*, 770 F. Supp. 202, 205 (S.D.N.Y. 1991) (refusing to dismiss claim for breach of fiduciary duty where the claim that defendant had a duty was "not without some plausibility").

In support of its argument, Citco NV cites *Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*, where the court found that a fund administrator had no fiduciary duty because the offering memorandum required the fund administrator only to compute the NAV, and not to independently value the fund's portfolio, a role reserved for the fund manager.[249] But here, the Administration Agreement states that Citco NV is responsible for "computing the monthly [NAV] of [Lancer Offshore's] shares" and "independently pricing the fund by reference to data supplied by . . . independent pricing sources, or as agreed by the Board of Directors."[250] Plaintiffs also allege that Citco NV's duties derive from the duties of the Citco Directors to independently review the Funds' NAVs under the PPMs.[251] Citco NV has not proffered any document relegating it to solely ministerial functions or establishing that the Funds' manager was exclusively charged with determining the value of the Funds' portfolio. Therefore, Citco NV's motion to dismiss the breach of fiduciary duty claim against it is denied.

### c. IFSI

---

[249]   376 F. Supp. 2d 443, 447 (S.D.N.Y. 2005).

[250]   Administration Agreement at ¶ 1.1(g)-(h).

[251]   *See* Compl. ¶¶ 59, 64.

IFSI also argues that it did not have any fiduciary duty to investors to ensure the accuracy of reports concerning the valuation of the Funds' assets.[252] Plaintiffs allege that IFSI assumed Citco NV's role as Fund administrator, and therefore owed the same fiduciary duties to shareholders.[253] IFSI argues that plaintiffs must allege facts to plead a fiduciary duty,[254] and that plaintiffs do not allege that they reposed trust and confidence in IFSI, or that IFSI accepted any such responsibility.[255] But because plaintiffs do not allege fraudulent conduct by IFSI, Rule 8 applies to this claim. IFSI may ultimately prevail if plaintiffs cannot demonstrate the existence of a fiduciary duty, but plaintiffs' allegation that IFSI stepped into Citco NV's role as administrator is sufficient at this stage.

IFSI also argues that plaintiffs cannot prevail on their claim because IFSI's agreements with the Funds demonstrate that it had no fiduciary duties to

---

[252]    *See* IFSI Mem. at 15-16.

[253]    *See* Compl. ¶ 12.

[254]    *See* IFSI Mem. at 15 (citing *OneBeacon Ins. Co. v. Forman Int'l Ltd.*, No. 04 Civ. 2271, 2005 WL 100849, at *5 n.2 & 3 (S.D.N.Y. Jan. 19, 2005) (dismissing breach of fiduciary duty claims where the assertions of duties owed by defendant to plaintiff were "general and conclusory")).

[255]    *See* Reply Memorandum of Law in Further Support of Defendant International Fund Services (Ireland) Ltd.'s Motion to Dismiss the Complaint ("IFSI Reply") at 9.

shareholders.[256] The Administration Agreements between IFSI and the Funds charged IFSI with pricing the Funds' portfolios in accordance with the Funds' PPMs, and reviewing statements to investors "for accuracy, completeness and presentation."[257] Although these agreements do not conclusively establish any fiduciary duty, neither do they demonstrate that plaintiff cannot prevail on its claim.[258] Therefore, IFSI's motion to dismiss the breach of fiduciary duty claim is denied.

### 4. Negligence, Negligent Misrepresentation, and Professional Malpractice

Plaintiffs allege claims for negligence and negligent misrepresentation against the Citco Defendants, and claims for professional malpractice against Citco NV and IFSI. To prevail on a negligence claim, a plaintiff must demonstrate "(1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff

---

[256] *See* IFSI Mem. at 15 n.10 (citing Administrative Services Agreements between IFSI and Lancer Offshore and between IFSI and OmniFund ("IFSI Administration Agreements"), Exs. A & B to Affidavit of Susan Byrne, Managing Director of Shareholder Services for IFSI ("Byrne Aff.")).

[257] IFSI Administration Agreements at 11-12.

[258] *Cf. Fraternity Fund Ltd.*, 376 F. Supp. 2d at 447-48 (plaintiffs could not prevail where agreements demonstrated that another party, not defendant, had duty of valuing the fund's portfolio).

suffered damage as a proximate result of that breach."[259]  "Under New York law,

professional malpractice is a species of negligence."[260]  Thus, to prevail on such a

claim, a plaintiff must demonstrate the elements of negligence, and the breach of

duty must be by a professional in a "departure from accepted standards of

practice."[261]  A claim of negligent misrepresentation must satisfy the following

five elements: (1) the defendant had a duty, as a result of a special relationship, to

give correct information; (2) the defendant made a false representation that he or

she should have known was incorrect; (3) the defendant knew that the plaintiff

desired the information supplied in the representation for a serious purpose; (4) the

plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on

it to his or her detriment.[262]

Each of these causes of action requires that the plaintiff demonstrate a

duty of care.  A duty of care may arise where the parties are in contractual privity

---

[259]    *DiBenedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir.
2004).

[260]    *Hydro Investors, Inc*, 227 F.3d at 15.

[261]    *VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP*, 348 F. Supp.
2d 255, 262 (S.D.N.Y. 2004) (citing *Herbert H. Post & Co. v. Sidney Bitterman,
Inc.*, 639 N.Y.S.2d 329, 335 (1st Dep't 1996)).

[262]    *See Hydro Investors, Inc.*, 227 F.3d at 20.

68

or have a relationship "'so close as to approach that of privity.'"[263]  The New York

Court of Appeals has held that to demonstrate that a non-privy relationship gave

rise to a duty to give correct information, a party must show "(1) an awareness by

the maker of the statement that it is to be used for a particular purpose; (2) reliance

by a known party on the statement in furtherance of that purpose; and (3) some

conduct by the maker of the statement linking it to the relying party and evincing

its understanding of that reliance."[264]  These "indicia, while distinct, are

interrelated and collectively require a third party claiming harm to demonstrate a

relationship or bond with the once-removed [maker of the statement]."[265]

> ### a. Plaintiffs' Pleading of Negligence Theories in One Count Does Not Violate Rule 10(b) of the Federal Rules of Civil Procedure

The Citco Defendants argue that plaintiffs have improperly pled three

distinct claims against them in one count, in violation of Rule 10(b) of the Federal

---

[263]  *VTech Holdings, Ltd.,* 348 F. Supp. 2d at 262 (professional malpractice) (quoting *Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483 (2000) (negligent misrepresentations) (citations omitted).

[264]  *Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 384 (1992). *Accord Securities Investor Protection Corp. v. BDO Seidman, LLP,* 723 N.Y.S.2d 750, 756 (2001) (citing *Credit Alliance Corp. v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 551 (1985) (analyzing claim of negligent misrepresentation by accountants)).

[265]  *Parrott*, 95 N.Y.2d at 484 (citation and quotation marks omitted).

Rules of Civil Procedure, which requires that "[e]ach claim founded upon a separate transaction or occurrence. . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth."[266] On the same page of their brief, the Citco Defendants argue that these claims "arise from the same alleged breach of duty and involve no distinct damages" and should therefore be dismissed as "duplicative."[267] These technical complaints are merely formalistic. Plaintiffs' claims are presented with sufficient clarity. At this early stage of the proceedings, it is not necessary to require plaintiffs to choose the cause of action that best supports their negligence claim.[268]

### b. Plaintiffs Have Alleged a Duty of Care

#### i. Citco Defendants

The Citco Defendants argue that plaintiffs fail to allege contractual

---

[266] Fed. R. Civ. P. 10(b). *See* Def. Mem. at 40.

[267] Def. Mem. at 40 n.33 (citing *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363 (S.D.N.Y. 2004)).

[268] *See G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 536 (S.D.N.Y. 2002). *Cf. Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d at 363 (claims merged into a legal malpractice claim and dismissed due to the shorter statute of limitations for legal malpractice). Here, defendants have not raised a statute of limitations issue.

privity or a bond "'so close as to approach that of privity.'"[269] However, it is reasonable to infer from the Complaint that the Citco Defendants were aware that plaintiffs would rely on their statements of the Funds' NAVs.[270] Plaintiffs allege that the NAV was the only measure by which they could evaluate shares in the Funds in order to make investment decisions.[271] Plaintiffs also allege that Citco NV's marketing materials evinced the understanding that as fund administrator, Citco NV would "serve the interests of investors by providing them with the independent, accurate and timely information they need to make informed decisions about their investments."[272] These allegations are adequate under *Credit Alliance* to allege a relationship which may give rise to a duty of care.[273]

---

[269]    Def. Mem. at 31 (quoting *VTech Holdings, Ltd.,* 348 F. Supp. 2d at 262).

[270]    *See* Compl. ¶ 61 (Citco NV was responsible for disseminating the Funds' NAV information).

[271]    *See id.* ¶ 112.

[272]    *Id.* ¶ 65.

[273]    Defendants argue that *Credit Alliance* should not be extended beyond its original application to accountants. *See* Def. Reply at 16 (citing *Crossland Sav. FSB v. Rockwood Ins. Co.,* 692 F. Supp. 1510, 1513-14 (S.D.N.Y. 1988) (refusing to extend *Credit Alliance* to allow a third-party, with no contractual relation to an attorney, to allege a duty of care). But since *Crossland,* courts have held that the test articulated in *Credit Alliance* has wide application "[f]rom bean counters, to engineers, accountants, and lawyers." *Jordan (Bermuda) Inv. Co.,* 2003 WL 1751780, at \*12.

71

The Citco Defendants also argue that plaintiffs fail to plead that fund administrators are "professionals."[274] I do not reach this issue at this time because plaintiffs have sufficiently pled a claim against the Citco Defendants on an alternative theory of negligence.

### ii.    IFSI

IFSI argues that plaintiffs have not alleged a duty of care sufficient to support a claim for professional malpractice, for the same reasons that plaintiffs failed to plead their claim for breach of fiduciary duty.[275]  For the reasons previously discussed, the Complaint sufficiently alleges that IFSI had a duty of care to plaintiffs, and therefore, IFSI's motion to dismiss the professional malpractice count is denied.

### c.    Plaintiff's Allegations of Negligent Misrepresentation Are Sufficient Under Rule 9(b) of the Federal Rules of Civil Procedure

The Citco Defendants argue that Rule 9(b) applies to plaintiffs' claim

---

[274]    *See* Def. Mem. at 40 (citing *Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 29-31 (2001) (defining a profession as one involving, *inter alia*, licensure and regulation, and concluding that insurance agents and brokers are not within the ambit of the shortened statute of limitations for professional malpractice) and *Frye v. Commissioner of Fin. of N.Y.*, 466 N.Y.S.2d 3, at *6 (1st Dep't 1983), *aff'd*, 62 N.Y. 2d 841 (1984) (defining the term for tax purposes)).

[275]    *See* IFSI Mem. at 15.

for negligent misrepresentation, and plaintiffs have failed to plead that claim with sufficient particularity.[276] For the reasons previously discussed, plaintiffs have pled with sufficient particularity that the monthly NAV statements prepared by the Citco Defendants were misleading. Therefore, the Citco Defendants and IFSI's motions to dismiss the negligence, negligent misrepresentation, and professional malpractice claims are denied.

## 5. Aiding and Abetting Fraud and Breach of Fiduciary Duty

To state a claim for aiding and abetting fraud under New York law, a plaintiff must plead facts showing the existence of a fraud; defendant's knowledge of the fraud; that the defendant provided substantial assistance to advance the fraud's commission, and damages.[277] The elements for a claim of aiding and abetting a breach of fiduciary duty under New York law are a breach by a fiduciary of obligations to another, that the defendant knowingly induced or

---

[276]    *See* Def. Mem. at 36; *Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770, 2003 WL 1858153, at \*4 (S.D.N.Y. Apr. 10, 2003) ("Negligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard.").

[277]    *See Wight v. Bankamerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000). Rule 9(b)'s particularity standards apply to pleading of aiding and abetting fraud. *See id.* at 91-92.

participated in the breach, and damages.[278]

These causes of action are parallel in several respects. *First,* both

causes of action require the putative secondary violator to have actual knowledge

of the primary violator's wrongdoing.[279] *Second,* aiding and abetting liability may

---

[278] *See Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),* 403 F.3d 43, 49-50 (2d Cir. 2005).

[279] *See JP Morgan Chase Bank v. Winnick,* 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005) (citation omitted) ("The knowledge requirement of an aiding and abetting fraud claim is satisfied by alleging actual knowledge of the underlying fraud."); *Kolbeck v. LIT Am., Inc.,* 939 F. Supp. 240, 246 (S.D.N.Y. 1996) (same, for aiding and abetting breach of fiduciary duty). Contrary to plaintiffs' contention, *see* Pl. Mem. 26-27 (citing cases), the overwhelming weight of authority holds that actual knowledge is required, rather than a lower standard such as recklessness or willful blindness. *See Allied Irish Banks, P.L.C. v. Bank of America, N.A.,* No. 03 Civ. 3748, 2006 WL 278138, at *11 (S.D.N.Y. Feb. 2, 2006) ("New York has not adopted a constructive knowledge test for aiding and abetting liability. Rather, actual knowledge is required."); *Steed Fin. LDC v. Laser Advisers, Inc.,* 258 F. Supp. 2d 272, 282 (S.D.N.Y. 2003) (New York law requires actual knowledge); *Bank Brussels Lambert v. Credit Lyonnais (Suisse, S.A.,* No. 93 Civ. 6876, 2000 WL 1694322, at *2 n.3 (S.D.N.Y. Nov. 13, 2000) (same); *Renner v. Chase Manhattan Bank,* No. 98 Civ. 926, 2000 WL 781081, at *6 (S.D.N.Y. June 16, 2000) (same); *Ascot Fund Ltd. v. UBS PaineWebber, Inc.,* 814 N.Y.S.2d 36, 36-37 (1st Dep't 2006) ("The aiding and abetting causes of action were also correctly dismissed because the amended complaint failed to allege any facts or conduct indicating that PaineWebber had actual knowledge" of primary violation.); *cf. Cromer Finance Ltd.,* 137 F. Supp. 2d at 495 n.28 (cases supporting lower standard, such as recklessness, tend to arise in different areas of law such as securities fraud and ERISA); *Kolbeck,* 939 F. Supp. at 246-47 (collecting cases) ("actual knowledge" standard consistent with New York and U.S. Supreme Court case law, Restatements of Torts, and the other elements of aiding and abetting liability).

74

attach when a defendant "'affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed.'"[280] When a plaintiff adequately pleads such assistance, concealment, or failure to act, she fulfills both the "substantial assistance" element of the fraud-based claim and the "participation" element of the breach of fiduciary duty-based claim.[281] *Third*, the plaintiff must allege that the aiding and abetting defendant proximately caused the harm on which the primary liability is predicated.[282] "But-for" causation is insufficient; aider and abettor liability requires the injury to be a direct or reasonably foreseeable result of the conduct.[283] At least with respect to an aiding

---

[280] *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960, 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999) (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992), *abrogated on other grounds by Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993)).

[281] *See Kolbeck*, 939 F. Supp. at 247 (equating "participation" with "substantial assistance").

[282] *See Diduck*, 974 F.2d at 284; *see also McDaniel v. Bear, Stearns & Co.*, 196 F. Supp. 2d 343, 359 (S.D.N.Y. 2002) (quotation and citation omitted) (with respect to aiding and abetting fraud claim, "[p]roximate cause exists where defendant's actions were a substantial factor in the sequence of responsible causation, and plaintiff's injury was reasonably foreseeable or anticipated as a natural consequence"); *Kolbeck*, 939 F. Supp. at 249 (quotation and citation omitted) (in an aiding and abetting breach of fiduciary duty case, "[a]iding and abetting liability arises only when plaintiff['s] injury was a direct or reasonably foreseeable result of the complained-of conduct").

[283] *See, e.g., Kolbeck*, 939 F. Supp. at 249.

and abetting fraud claim, the "substantial assistance" and "causation" elements are interrelated – "[w]hether the assistance is substantial or not is measured . . . by whether the action of the aider and abettor proximately caused the harm on which the primary liability is predicated."[284]

### a.   BAS

Plaintiffs allege that BAS aided and abetted Lauer's fraud, as well as Lauer's breach of his fiduciary duty to plaintiffs.[285]  Plaintiffs allege that BAS assisted Lauer by providing him with dial-in access to its computer network and allowing him to generate reports on BAS stationery of the Funds' alleged holdings.[286]  Plaintiffs also contend that BAS employees failed to verify the accuracy of the information sent to them by Lauer that formed the basis of the BAS Position Reports.[287]  According to plaintiffs, BAS knew or should have known that Lauer was using its resources for his wrongdoing.[288]

BAS urges dismissal on two grounds that apply to both claims. *First*,

---

[284]   *JP Morgan Chase Bank*, 406 F. Supp. 2d at 256 (quotation and citation omitted).

[285]   *See* Compl. ¶¶ 266-279.

[286]   *See id.* ¶¶ 10, 104.

[287]   *See id.* ¶ 105.

[288]   *See id.* ¶ 107.

76

plaintiffs have failed to adequately allege that BAS had "actual knowledge" of

Lauer's wrongdoing. *Second*, plaintiffs have failed to adequately allege that BAS

"participated" in Lauer's breach of fiduciary duty, or that BAS rendered

"substantial assistance" to Lauer's fraud. Defendants are correct in both respects.

### i. Actual Knowledge

The Complaint is devoid of allegations raising the inference that BAS

or its employees were actually aware of Lauer's fraudulent scheme. Instead,

plaintiffs attempt to impute constructive knowledge to BAS because Lauer's

position reports "were conspicuously false on their face."[289] According to

plaintiffs, the falsity of the information "had to have been apparent" to BAS

employees.[290] But plaintiffs allege no basis for inferring that BAS owed them any

*duty* to monitor, verify, or investigate the veracity of the information disseminated

by Lauer.[291] When a defendant is under no such duty, even alleged ignorance of

---

[289] Pl. Mem. at 28 ("The position reports assigned the same values to registered and unregistered shares, and the same or higher values to unregistered shares and warrants to purchase unregistered shares. . . . Moreover, the position reports reflected astronomical increases in the values of unregistered shares and warrants – which the Funds purportedly purchased for nothing or next to nothing – over very short periods of time.").

[290] *Id.*

[291] The only such allegation is the wholly conclusory assertion at paragraph 271 of the Complaint that "[BAS] cavalierly disregarded its duties to,

77

obvious warning signs of fraud does not suffice to adequately allege the actual knowledge necessary to sustain an aiding and abetting claim.[292]

Even if plaintiffs could plead a claim under a lower standard of "constructive knowledge," such as "recklessness" or "willful blindness,"[293] the allegations of the Complaint are insufficient. BAS' alleged role in the scheme was entirely passive – even according to plaintiffs' allegations BAS merely allowed Lauer to use its resources in the same manner as any other customer. And defendants are quite correct that "[p]laintiffs make no effort to specify how BAS's failure, as prime broker, to uncover Lauer's scheme amounts to an extreme departure from the standards of ordinary care . . . [and] [t]heir Complaint is utterly silent as to what the supposed standard of care is for a prime broker or how BAS might have departed from it."[294]

## ii. Substantial Assistance or Participation

---

and the interests of, the plaintiffs."

[292]    *See Nigerian Nat'l Petroleum Corp.*, 1999 WL 558141, at *8 (quotation and citation omitted) ("allegations that a bank disregarded suspicious circumstances which might have well induced a prudent banker to investigate do not suffice to state a claim for [aiding and abetting]").

[293]    Pl. Mem. at 25-26. *But see supra* n.283 (actual knowledge is required).

[294]    Reply Mem. at 15.

Plaintiffs do not adequately allege that BAS rendered substantial assistance to Lauer's fraud or induced or participated in Lauer's breach of fiduciary duty. As a general matter, "a defendant may provide substantial assistance by failing to act only when it was required to act. Absent a confidential or fiduciary relationship between the plaintiff and the aider and abettor, the inaction of the latter does not constitute substantial assistance warranting aider and abettor liability."[295]

Plaintiffs' allegations against BAS comprise failures of BAS to detect and prevent Lauer's wrongdoing,[296] but plaintiffs nowhere explain what duty BAS owed to any plaintiff. Plaintiffs do not dispute that, as a general matter, a clearing broker such as BAS has no liability for the wrongdoing of an introducing broker (here, Lauer and Lancer Offshore) when the clearing broker performs only routine functions such as clearing trades, administrative tasks, and portfolio

---

[295] *Ryan v. Hunton & Williams*, No. 99-CV-5938, 2000 WL 1375265, at *10 (E.D.N.Y. Sept. 20, 2000) (citation omitted). *Accord In re Sharp*, 403 F.3d 43, 52 (2d Cir. 2005) (citation and quotation omitted) ("Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur. Absent a duty to act, the only action prescribed is not to affirmatively assist or to help conceal, which is another form of assistance and is likewise affirmative in nature.").

[296] *See, e.g.,* Compl. ¶ 268 (BAS "allow[ed] Lauer to create false position reports"); *id.* ¶ 275 (same).

79

management.[297] And while plaintiffs correctly note that some cases impose aiding and abetting liability on clearing brokers when their activities go beyond such routine functions,[298] they fail to explain how the services provided by BAS were out of the ordinary in any way, or how BAS had the sort of "extraordinary motive to aid in the fraud" that might alternatively suffice to extend liability to a clearing broker.[299] As defendants note, "there is nothing special about allowing a customer to prepare a document,"[300] nor is there anything special about allowing Lauer to access the internet using BAS resources. For these reasons, plaintiffs' claims against BAS are dismissed without prejudice. However, leave to replead is granted with some reluctance, because I harbor serious doubts as to whether

---

[297] *See, e.g., Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 29 (2d Cir. 2000); *see also McDaniel*, 196 F. Supp. 2d at 352-53 (collecting cases).

[298] *See* Pl. Mem. at 29-30 (citation omitted); *see also JP Morgan Chase Bank*, 406 F. Supp. 2d at 257 ("The critical test is not . . . whether the alleged aiding and abetting conduct was routine, but whether it made a substantial contribution to the perpetration of the fraud.").

[299] *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 511-12 (S.D.N.Y. 2001)*, amended on reconsideration in part on other grounds*,137 F. Supp. 2d 438 (S.D.N.Y. 2001) (*"Primavera II"*) ("Executing transactions, even ordinary course transactions, can constitute substantial assistance under some circumstances, such as where there is an extraordinary economic motivation to aid in the fraud.").

[300] Reply Mem. at 16.

plaintiffs can ever allege facts against BAS sufficient to survive a motion to dismiss.

### b. Citco Defendants

The aiding and abetting claims against the Citco Defendants also fail under New York law. For the reasons already stated with respect to the section 10(b) claims, plaintiffs have not pleaded recklessness on the part of the Citco Defendants, let alone actual knowledge of Lauer's fraud. Therefore, the aiding and abetting claims against the Citco Defendants are dismissed without prejudice.

### 6. Common-Law Claims Based on Retention of Shares

The Citco Defendants move to dismiss plaintiffs' common-law claims to the extent that those claims are based on plaintiffs' retention of securities, rather than their purchase or sale, arguing that such holder claims are not cognizable under New York law, and that plaintiffs lack standing to bring these claims.

New York recognizes a claim of fraud where investors were induced to retain securities in reliance on a defendant's misrepresentations.[301] However, due to the "inherent difficulty of proving reliance and damages in such actions," the holder must allege "a sufficiently direct communication from the defendant to

---

[301]    *Primavera II*, 130 F. Supp. 2d at 494 (collecting cases).

the plaintiff to support a claim that the fraud induced inaction."[302] The Citco

Defendants argue that holder claims may only be brought where the

misrepresentations were made through "direct face-to-face communications

between a plaintiff and a defendant."[303] But the cases cited by the Citco

Defendants do not impose any such limitation.[304] Moreover, courts have found

allegations that plaintiffs relied on written misstatements from defendants to be

sufficiently direct to support holder claims.[305] Therefore, plaintiffs' allegations

that the Citco Defendants disseminated fraudulent monthly NAV statements

directly to them are sufficient to support a fraud claim under New York law.[306]

---

[302]    *In re Worldcom, Inc. Sec. Litig.*, 382 F. Supp. 2d 549, 559-60
(S.D.N.Y. 2005).

[303]    Def. Reply at 19.

[304]    *See In re Worldcom, Inc. Sec. Litig.*, 382 F. Supp. 2d at 559
(dismissing claim where plaintiffs did not allege any direct communication,
written or oral, from defendants); *Gutman v. Howard Sav. Bank*, 748 F. Supp. 254,
262-63 (D. N.J. 1990) (holder claim allowed under New York law where plaintiffs
alleged that misrepresentations were directed at them to their injury).

[305]    *See, e.g., AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 212-13
(2d Cir. 2000) (misrepresentations in financial statements by accounting firm to
investors supported a common-law fraud claim based on retention of securities);
*Primavera II*, 130 F. Supp. 2d at 502 (holder claims sufficient where investors
testified that they had relied on written statements).

[306]    The Citco Defendants also argue that the misrepresentations were not
direct because they are attributable to Lauer, and not to the Citco Defendants. But
as previously discussed, plaintiffs have sufficiently alleged that the Citco

82

The Citco Defendants also argue, based on *Primavera*

*Familienstiftung v. Askin*, that plaintiffs' claims based on their retention of shares

are derivative and therefore plaintiffs lack standing.[307] In *Primavera*, the court

held that certain class-action claims were derivative because they arose out of

defendants' interactions with the funds, and not defendants' interactions with

investors.[308] Here, each plaintiff alleges injury arising out of their interactions

with the Citco Defendants. A later opinion in the *Primavera* case held that where

a claim pertains "to fraudulent misrepresentations, not merely mismanagement of

the Funds . . . [] the Investors may assert a fraud claim based on the theory that

they were induced to make and/or retain their investments."[309] Thus, the Citco

Defendants' motion to dismiss plaintiffs' common-law claims based on retention

of securities is denied.

## G. Leave to Amend

Plaintiffs have requested leave to amend the Complaint in the event

_____

Defendants are primarily liable for making misstatements.

[307] No. 95 Civ. 8905, 1996 WL 494904, at *15 (S.D.N.Y. Aug. 30, 1996)
("*Primavera I*").

[308] *See id.*

[309] *Primavera II*, 130 F. Supp. 2d at 495.

83

of dismissal.[310]  Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely granted when justice so requires."[311] Moreover, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead."[312]  Therefore, plaintiffs are granted leave to amend.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted in part and denied in part, without prejudice, with leave to replead within twenty days of receipt of this Opinion and Order.  A conference is scheduled for August 7, 2006 at 4:30 pm.  The Clerk of the Court is directed to close these motions (Docket Nos. 8, 16, 21, 27, 44).

---

[310]  *See* Pl. Mem. at 11 n.9.

[311]  Fed. R. Civ. P. 15(a).

[312]  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

84

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         July 20, 2006

## - Appearances -

**For Plaintiffs:**

Scott M. Berman, Esq.
Anne E. Beaumont, Esq.
Amy C. Brown, Esq.
Jenny F. Cohen, Esq.
FRIEDMAN, KAPLAN, SEILER &
ADELMAN LLP
1633 Broadway
New York, New York 10019
(212) 833-1100

**For Defendants CGL, Citco NV,
Kieran Conroy, Declan Quilligan,
and Anthony J. Stocks:**

Eliot Lauer, Esq.
Michael Moscato, Esq.
Milos Naumovic, Esq.
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
(212) 696-6000

**For Defendant BAS:**

Peter K. Vigeland, Esq.
Dawn M. Wilson, Esq.
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
(212) 230-8800

**For Defendant IFSI:**

Seth Marc Schwartz, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000