UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

                      :

THE PENSION COMMITTEE OF THE
UNIVERSITY OF MONTREAL         :
PENSION PLAN, et al.,

                      :

        Plaintiffs,

                      :

    - against -

                      :

BANC OF AMERICA SECURITIES,
LLC; CITCO FUND SERVICES      :
(CURACAO) N.V.; THE CITCO GROUP
LIMITED; INTERNATIONAL FUND   :
SERVICES (IRELAND) LIMITED;
PRICEWATERHOUSECOOPERS     :
(NETHERLAND ANTILLES); JOHN W.
BENDALL, JR.; RICHARD GEIST;    :
ANTHONY STOCKS; KIERAN
CONROY; and DECLAN QUILLIGAN,  :

        Defendants.       :

------------------------------------------------------X

**OPINION AND ORDER**

05 Civ. 9016 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

      A group of investors brings this action to recover losses stemming

from the liquidation of two British Virgin Islands ("BVI") based hedge funds in

which they held shares: Lancer Offshore, Inc. and OmniFund Ltd. ("Funds").[1]

The Funds were managed by Michael Lauer ("Lauer") through Lancer

---

[1]    *See* Second Amended Complaint ("SAC") ¶¶ 1, 14.

Management Group, LLC ("Lancer Management").[2]  Plaintiffs bring claims for

violations of section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5

promulgated thereunder, against one former director of OmniFund, Inter Caribbean

Services, Ltd. ("ICSL") and three former directors of Lancer Offshore, Anthony J.

Stocks, Kieran Conroy, and Declan Quilligan (collectively, "Citco Directors"), and

a former administrator of the Funds, Citco Fund Services (Curacao) N.V. ("Citco

NV," and together with the Citco Directors, "Citco Defendants").[3]

Plaintiffs also bring a claim under section 20(a) of the Securities and

Exchange Act against The Citco Group Limited ("CGL"), based on CGL's alleged

status as a control person of Citco NV.[4]  Plaintiffs also bring various common law

claims under New York law against the Citco Defendants and Banc of America

Securities, LLC ("BAS"), the former prime broker and custodian of the Funds.[5]

---

[2]     *See id.* ¶ 1.

[3]     15 U.S.C. § 78j(b); 17 C.F.R. § 240.10(b)(5).

[4]     15 U.S.C. § 78t(a).  In an Opinion and Order dated March 20, 2006, this
Court denied CGL's motion to dismiss for lack of personal jurisdiction, with leave
to renew after the completion of limited discovery, and denied CGL's motion to
dismiss for lack of standing. *See Pension Comm. of Univ. of Montreal Pension
Plan v. Banc of Am. Sec., LLC*, No. 05 Civ. 9016, 2006 WL 708470 (S.D.N.Y.
Mar. 20, 2006) ("*Pension Comm. II*").

[5]     The common law claims addressed in this Opinion are those against the
Citco Defendants for fraud, breach of fiduciary duty, aiding and abetting fraud and

In an Opinion and Order dated July 20, 2006, this Court granted in part and denied in part without prejudice, defendants' motion to dismiss plaintiffs' Corrected First Amended Complaint ("CFAC").[6]  Plaintiffs were also granted leave to replead to cure the deficiencies in the CFAC.[7]  Plaintiffs filed a Second Amended Complaint ("SAC") on August 25, 2006.  The Citco Defendants, CGL, ICSL and BAS now move to dismiss all of the claims against them.

## I.   BACKGROUND[8]

### A.   The Parties

Plaintiffs are investors from a variety of countries, each of whom invested money in the Funds during the period from 1997 until 2002.[9]  Virtually

---

aiding and abetting breach of fiduciary duty, and those against BAS for aiding and abetting fraud and aiding and abetting breach of fiduciary duty.

[6]   *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 446 F. Supp. 2d 163 (S.D.N.Y. 2006) ("*Pension Comm. III*").  In that ruling, familiarity with which is presumed, this Court:  (1) granted the Citco Defendants' (excluding ICSL, which was not named as a defendant in the CFAC) and CGL's motion to dismiss the federal securities law claims for failure to plead scienter, and granted plaintiffs leave to replead those claims; (2) granted the Citco Defendants' and BAS's motion to dismiss the common law fraud and aiding and abetting claims, and granted plaintiffs leave to replead those claims; and (3) denied all other motions. *See id.* at 175.

[7]   *See id.* at 205.

[8]   Unless otherwise noted, the following allegations are drawn from the SAC and are presumed to be true for purposes of these motions.

3

all of the money invested in the Funds, upwards of five hundred fifty million dollars, has been lost.[10]

Citco NV is allegedly a division and wholly-owned and controlled subsidiary of CGL.[11]  Citco NV is a business entity organized under the laws of the Netherlands Antilles, with places of business in Curacao, Netherlands Antilles, and Tortola, British Virgin Islands.[12]  Citco NV performs fund administration services for hundreds of hedge funds throughout the world, including many in the United States, and receives substantial revenue from sources in the United States, including New York.[13]  Citco NV acted as administrator of the Funds until September 2002, at which time it was replaced by International Fund Services (Ireland) Limited ("IFSI").[14]

---

[9]     *See* SAC ¶¶ 1, 14-15.

[10]     *See id.* ¶¶ 1-2.

[11]     CGL and its relationship to Citco NV are described more fully in this Court's opinion in *Pension Comm. II. See* 2006 WL 708470, at *1-2.

[12]     *See* SAC ¶ 34.

[13]     *See id.* ¶¶ 48-59.

[14]     *See id.* ¶¶ 87-92, 303.  In an Opinion and Order dated March 7, 2006, this Court denied IFSI's motion to dismiss for lack of personal jurisdiction. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* No. 05 Civ. 9016, 2006 WL 559811 (S.D.N.Y. Mar. 7, 2006) ("*Pension Comm. I*").

Citco NV assigned three officers, the Citco Directors, to serve as directors of the Funds in furtherance of their duties on behalf of Citco NV.[15] Stocks, who resides in London, England, served as a director of Lancer Offshore from 1995 until July 2001, during which time he was also a director of CGL's International Fund Services division.[16]  Conroy, who resides in Dublin, Ireland, served as a director of Lancer Offshore from 1998 until early 2002, during which time he was also a managing director of Citco NV.[17]  Quilligan, who resides in Curacao, Netherlands Antilles, was a director of Lancer Offshore from 2001 until early 2002, during which time he was also a managing director of Citco NV.[18] Additionally, ICSL served as director for OmniFund from its inception until early 2002.[19]  Each of the Citco Directors participated in the fund administration activities engaged in by Citco NV that supported this Court's finding of personal jurisdiction over Citco NV.[20]

---

[15]    *See* SAC ¶¶ 36, 78.

[16]    *See id.* ¶ 36.

[17]    *See id.* ¶ 37.

[18]    *See id.* ¶ 38.

[19]    *See id.* ¶ 215.

[20]    *See id.* ¶¶ 36, 78.

BAS is a New York limited liability corporation with a principal place of business in New York.[21] BAS acted as the prime broker and served as a central custodian for some of the securities held by the Funds.[22]

## B.    The Alleged Scheme

All of the claims asserted by plaintiffs derive from the same set of operative facts related to mismanagement of the Funds by Lauer and Lancer Management.  Plaintiffs allege that much of their losses were caused by a fraudulent scheme known as "marking the close."[23]  To execute this scheme, Lauer and Lancer Management acquired substantial and sometimes controlling stakes in thinly-traded stocks on behalf of the Funds.[24]  Then, prior to the end of the Funds' reporting periods, Lauer would purchase additional shares of these stocks at significantly higher prices, with the intent of raising the closing market price of the stocks.[25]  Each Fund would report its net asset value ("NAV") based on the

---

[21]    *See id.* ¶¶ 85-86.

[22]    *See id.* ¶ 150.

[23]    *Id.* ¶ 124.

[24]    *See id.* ¶¶ 120-126.

[25]    *See id.*

artificially high prices, creating the appearance of a portfolio value vastly higher than its true value, and generating large fees for Lauer and Lancer Management.[26]

Plaintiffs contend that this scheme was successful due to misrepresentations in the Funds' private placement memoranda ("PPMs"), monthly newsletters, and other materials.[27] These misrepresentations pertained to the types of investments that would be made by the Funds, the processes for determining the values of securities held by the Funds, and the performance of the Funds' portfolios.[28] Plaintiffs also allege that from at least March 2000 they received monthly statements of the Funds' NAVs which included fraudulently manipulated month-end closing prices of securities held by the Funds.[29] Lancer Offshore's annual reports for 2000, 2002, and 2003 also contained fraudulent NAV figures.[30] Plaintiffs allege that defendants, as the Funds' directors and service providers, were pivotal to this fraudulent scheme.[31]

---

[26]    See id.

[27]    See id. ¶¶ 117-129.

[28]    See id.

[29]    See id. ¶¶ 13, 139-142.

[30]    See id.

[31]    See id. ¶¶ 4-13.

7

## 1.    Citco Defendants

As the Funds' administrator, Citco NV was responsible for providing various services, including maintenance of the Funds' corporate records and books of accounts, preparation and dissemination of the Funds' annual financial statements and quarterly reports, and communication with shareholders and the general public.[32] The PPMs represented that the Citco Directors would fairly and reasonably report the values of securities held by the Funds.[33] The restated audited financial statements for 2000 and audited financial statements for 2001 state that the Funds' "Board of Directors in conjunction with the investment manager determine at what value the investment securities are reported for the determination of the [NAV] of the Fund."[34] Plaintiffs claim that the Citco Defendants breached their obligations by failing to conduct a fair and independent

---

[32]    *See id.* ¶¶ 193-195; *see also* 4/1/00 Amended and Restated Administrative Services Agreement between Lancer Offshore and Citco NV ("Administration Agreement") ¶ 1.1, Ex. E to Declaration of Eliot Lauer, Counsel to CGL and the Citco Defendants, in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Lauer Decl.").

[33]    *See* SAC ¶ 195; 2/15/02 Placement Memorandum of Lancer Offshore, Inc. ("Lancer Offshore PPM"), Ex. B to Lauer Decl, at 34-35.

[34]    SAC ¶ 223. *Accord id.* ¶ 224 (alleging that the financial statements also "state that the Board of Directors [of Lancer Offshore] determined the value of 100% of [the fund's] securities").

8

valuation of the Funds and by failing to disclose irregularities in the conduct of the Funds to investors.[35]

Plaintiffs allege that the Citco Defendants are responsible for false statements of the Funds' NAVs. Each month from at least March 2000 through September 2002, defendant Citco NV "distributed to each shareholder of the Funds a statement setting forth the NAVs of the Funds."[36]  Plaintiffs allege that the Citco Defendants knew or recklessly disregarded the fact that the NAV statements and other materials sent to plaintiffs included fraudulently inflated NAV figures.[37]

Plaintiffs also allege that the Citco Defendants made false statements about their procedures for ensuring accurate valuations of the Funds. Plaintiffs allege that Citco NV's public representations and marketing materials – prepared by Citco NV and provided to certain investors – stated that Citco followed procedures to ensure accurate valuation of the Funds, such as reconciling manager's reports with third-party information on pricing.[38]  Plaintiffs allege that

---

[35]   *See, e.g., id.* ¶¶ 234-239, 243-248.

[36]   *Id.* ¶ 228.

[37]   *See id.* ¶¶ 230-232, 243-244, 256-272.

[38]   *See id.* ¶¶ 196-213.  For example, the SAC includes excerpts from a 2001 interview with Quilligan, in which he explains that Citco NV provides shareholders with "independence" and "experience," so that they "don't have to entirely rely on [] investment manager[s]." *Id.* ¶ 199.  A Citco brochure similarly

the Citco Directors made similar misstatements in the PPMs and other offering materials.[39]  Plaintiffs allege that these statements were materially false because Citco NV failed to independently value the portfolios and instead slavishly adhered to the patently "absurd" valuations provided by Lauer.[40]

Plaintiffs allege that Citco NV knew or should have known of the fraud because, among other things, three of its officers were members of the Funds' Board of Directors.[41]  The Citco Directors "were personally and actively involved in defendant Citco NV's valuation of the Funds' portfolios, and the distribution of false and misleading NAV statements to plaintiffs."[42]  Citco NV and the Citco Directors had "ample information that contradicted the valuations they were receiving from Lauer, Lancer Management and defendant [BAS]" but "nevertheless disseminated NAV statements that relied on these absurd valuations,

---

boasts that it prices portfolios "using independent, recognized pricing sources." *Id.* ¶ 197.

[39]     *See id.* ¶ 220.

[40]     *Id.* ¶ 8.  *Accord id.* ¶¶ 230-235.

[41]     *See id.* ¶ 8.

[42]     *Id.*

in blatant disregard" of the direct harm they would "inevitably cause" to plaintiffs.[43]

## 2.    BAS

BAS, as prime broker and custodian to the Funds, allegedly aided and abetted Lauer's fraud and breach of fiduciary duty by providing Lauer with dial-in access to its computer network and allowing him to generate false position statements ("BAS Position Reports") of the Funds' holdings.[44] BAS employees created BAS Position Reports using valuation information sent to them by Lauer, usually by email, without verifying the accuracy of Lauer's information.[45]

These false BAS Position Reports contained BAS's name at the top of each page and "when downloaded and printed remotely," they contained "no disclaimer or other marking to suggest they were anything other than official documents prepared by, posted on the BofA Website by, and bearing the imprimatur of, BofA."[46] The Position Reports were printed and provided to third

---

[43]    *Id.*

[44]    *See id.* ¶¶ 161-164.

[45]    *See id.*

[46]    *Id.* ¶ 154.

11

parties, including investors and Citco NV, who relied on them to value the Funds.[47]

Plaintiffs allege that BAS knew or should have known that Lauer would use the

position reports for these purposes.[48]

### C.   Defendants' Motions to Dismiss

The Citco Defendants now move to dismiss the federal securities

claims against them on the grounds that plaintiffs have not cured certain defects in

their pleadings identified by this Court in *Pension Comm. III*.  Specifically, the

Citco Defendants argue that plaintiffs' 10(b) claims against Citco NV and

individual Citco Directors should be dismissed for failure to plead scienter, the

absence of which is also fatal to plaintiffs' section 20(a) claim against GCL.[49]

Assuming the federal securities claims will be dismissed, the Citco Defendants

urge this Court to decline to exercise subject matter jurisdiction over plaintiffs'

common law claims.[50]  In the alternative, the Citco Defendants argue that plaintiffs

---

[47]   *See id.* ¶¶ 160-161.

[48]   *See id.*

[49]   *See* Memorandum of Law in Support of Citco Fund Services (Curacao) N.V., the Citco Group Limited, Anthony J. Stocks, Kieran Conroy, Declan Quilligan, and Inter Caribbean Services, Ltd.'s Motion to Dismiss Plaintiffs' Second Amended Complaint ("Citco Mem.") at 2-14.

[50]   *See id.* at 15.

have failed to plead their common law claims under New York law.[51]  BAS also

moves to dismiss the common law claims against it on the grounds that those

claims are deficient under New York law.[52]

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion

to dismiss should be granted only if "'it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief.'"[53]

When deciding a motion to dismiss, courts must "accept all factual allegations as

true and draw all reasonable inferences in plaintiff's favor."[54]  Although

---

[51]    *See id.* at 15-17.

[52]    *See* Memorandum of Law in Support of Defendant Banc of America
Securities LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint
("BAS Mem.") at 3-19.

[53]    *Faulkner v. Beer*, 463 F.3d 130, 133 (2d Cir. 2006) (quoting *Twombly v. Bell
Atl. Corp.*, 425 F.3d 99, 106 (2d Cir. 2005)).  *Accord Jones v. Bock*, ___ U.S. ___,
2007 WL 135890, at *10 (Jan. 22, 2007) ("A complaint is subject to dismissal for
failure to state a claim if the allegations, taken as true, show the plaintiff is not
entitled to relief.").  The task of the court in ruling on a Rule 12(b)(6) motion is
"merely to assess the legal feasibility of the complaint, not to assay the weight of
the evidence which might be offered in support thereof." *Eternity Global Master
Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir.
2004) (quotation and citation omitted).

[54]    *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir.
2006).

13

"[g]enerally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself,"[55] "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."[56] Courts may also take judicial notice of stock prices and press articles, for the fact of their publication.[57]

## III.   DISCUSSION[58]

### A.   The Scienter Element of the Rule 10b-5 Claims Against the Citco Defendants[59]

---

[55]   *Faulkner*, 463 F.3d at 134.

[56]   *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). *Accord Faulkner*, 463 F.3d at 134 (holding that it is permissible to consider the "full text of documents partially quoted in complaint" and "documents relied upon by plaintiff in drafting the complaint and integral to the complaint") (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996), and *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).

[57]   *See In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, 381 F. Supp. 2d 192, 246 n.61 (S.D.N.Y. 2004) (stock prices); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 425 (S.D.N.Y. 2003) (press articles).

[58]   In *Pension Comm. III*, this Court set forth the requirements for pleading the federal securities and common law claims that defendants now move to dismiss; those legal standards are hereby incorporated into this Opinion. *See* 446 F. Supp. 2d at 178-82 (requirements for pleading securities fraud under section 10(b) and Rule 10b-5); *id.* at 190-91 (requirements for pleading control person liability under Section 20(a)); *id.* at 191-96 (requirements for pleading New York common law fraud and aiding and abetting fraud and breach of fiduciary duty).

14

### 1.    Motive and Opportunity of Citco NV

Defendants argue that plaintiffs still have not sufficiently pled scienter on the part of Citco NV because the SAC alleges that Citco NV was motivated merely by a desire to obtain increased compensation, which defendants maintain is insufficient to prove scienter.[60] While it is well-settled that a "generalized economic interest," is insufficient to show motive,[61] this Court previously noted that "[u]nlike a motive to increase stock prices, shared by all corporate insiders, a motive to generate increased fees based on inflated NAV figures [is] 'a concrete

---

[59]    In *Pension Comm. III*, this Court held that plaintiffs had sufficiently alleged causation to sustain primary liability with respect to the Citco Defendants. *See id.* at 182 (sufficiently alleging that Citco NV actually prepared the false statements); *id.* at 183 (sufficiently alleging that misrepresentations were communicated at the Citco Directors' behest); *id.* at 184-86 (sufficiently pleading misstatements with particularity). Because the relevant factual allegations in the SAC are identical to those in the CFAC, I incorporate those rulings into this Opinion.

[60]    *See* Citco Mem. at 2. Citco NV does not dispute that it had the requisite opportunity to commit fraud.

[61]    *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2nd Cir. 2000). *Accord San Leandro Emergency Med. Group Profit Sharing Plan*, 75 F.3d at 814 (desire to maintain a high corporate credit rating insufficient to establish motive); *Acito v. Imcera Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (executive compensation dependent on stock value could not, standing alone, suffice to show motive to defraud the public).

and personal benefit to the individual defendants resulting from the fraud.'"[62]

Whereas the CFAC failed to allege that defendants received any such benefit, the

SAC specifically alleges that Citco NV's fees were tied *directly* to the NAVs: the

higher the valuations on the NAVs, the more lucrative Citco NV's fees became.[63]

Thus, plaintiffs adequately plead scienter with respect to Citco NV based on

motive and opportunity.

### 2. Conscious Misbehavior and Recklessness of Citco NV, Conroy and Quilligan[64]

---

[62] *Pension Comm. III*, 446 F. Supp. 2d at 163 (quoting *Kalnit v. Eichler*, 264 F.3d 131, 141 (2d Cir. 2001)). *Accord In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 346 (S.D.N.Y. 2004) (plaintiffs pled scienter by alleging that auditor with dual role as consultant had concrete motive to generate fees through sham valuations).

[63] *See* SAC ¶ 249 ("[A]s Lancer Offshore's NAV soared, Citco NV reaped ever greater fees, which nearly doubled over the life of the Funds.").

[64] In *Pension Comm. III*, this Court held that the scienter of individual Citco NV directors may be imputed to Citco NV to the extent that they were directors of Lancer Offshore during the relevant time period. *See* 446 F. Supp. 2d at 189. Defendants also correctly note that in the SAC, plaintiffs "lump" the three individual Citco directors and ICSL together as "Citco Directors." Reply Memorandum of Law in Support of Citco Fund Services (Curacao) N.V., The Citco Group Limited, Anthony J. Stocks, Kieran Conroy, Declan Quilligan, and Inter Caribbean Services Ltd.'s Motion to Dismiss Plaintiffs' Second Amended Complaint ("Citco Reply Mem.") at 8. This pleading technique walks the fine line of ascribing to each of them knowledge of information they did not author or receive but comes dangerously close to "blur[ring] important distinctions among defendants and evad[ing] the requirement that fraud be pled with particularity." *Pension Comm. III*, 446 F. Supp. 2d at 187 (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). Plaintiffs are only

16

In its previous ruling, this Court held that the group pleading doctrine

does not permit plaintiffs to automatically impute the scienter of Citco NV to the

directors. [65] As a result, plaintiffs now separately plead scienter of the Citco

Directors, and also of Citco NV, by alleging reckless conduct.  The SAC states

with particularity facts giving rise to a strong inference that Citco NV and directors

Quilligan and Conroy acted recklessly by ignoring red flags of fraud,[66] by failing to

_____

permitted "to plead scienter of the directors collectively[] insofar as those directors
are identically situated." *Id.*

[65]     *See id.* at 185; *see also In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546, 2004
WL 2190357, at *15 (S.D.N.Y. Sept. 30, 2004); *In re Citigroup, Inc. Sec. Litig.*,
330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) ("Although the group pleading doctrine
may be sufficient to link the individual defendants to the allegedly false statements,
Plaintiff must also allege facts sufficient to show that the Defendants had
knowledge that the statements were false at the time they were made."); *In re
Sotheby's Holdings, Inc. Sec. Litig.,* No. 00 Civ. 1041, 2000 WL 1234601, at *7
(S.D.N.Y. Aug. 31, 2000) ("[B]oilerplate allegations that defendants knew or
should have known of fraudulent conduct based solely on their board membership
or executive positions are insufficient to plead scienter.").

[66]     Plaintiffs list six red flags that Stocks, Quilligan, Conroy, ICSL and Citco
NV allegedly ignored. *See* SAC ¶¶ 259-258 (ignored discrepancy between growth
of NAVs and decline of global equity markets); *id.* ¶¶ 259-261 (ignored Funds'
concentration in thinly traded stocks); *id.* ¶¶ 262-263 (ignored drastic increase in
values attributed to thinly traded stocks); *id.* ¶¶ 264-266 (ignored dramatic jump in
purported value of shares and warrants from their purchase price of either a few
cents or nothing at all, to tens of millions dollars in just days or weeks); *id.* ¶¶ 267-
269 (ignored numerous instances in which "Lauer and Lancer Management valued
the Funds' holdings of restricted securities using prices from tiny open-market
purchases"); *id.* ¶¶ 270-272 (ignored the obvious inference that because the open-
market purchases coincided with dates for calculating the Funds' NAVs, they were

follow their own stated policies of independently reviewing valuations, and by

failing to timely inform investors or authorities that they believed the Fund to be

grossly (and illegally) overvalued.[67]

Email traffic chronicled in the SAC indicates that for a significant

period of time, Citco NV, Conroy and Quilligan "failed to review or check

information that they had a duty to monitor, [and] ignored obvious signs of

_____

being done solely to raise corresponding incentive fees paid to Lauer and Lancer
Management).

In opposition, the Citco Defendants argue that these so-called red flags fail
to show recklessness because they "are all facts consistent with the investment
strategy employed by Lauer and fully disclosed in the Funds' Placement
Memoranda [] provided to each investor." Citco Reply Mem. at 6. This may be
true, but on a motion to dismiss the Court must accept all of the factual allegations
in the Complaint as true and draw every inference in plaintiffs' favor. The Citco
Defendants also note, correctly, that by themselves, dramatic increases in profits –
even to record levels – do not provide a basis for claims of reckless disregard in
this Circuit. *See id.* (citing *Novak*, 216 F.3d at 309; *Chill v. General Elec. Co.*, 101
F.3d 263, 270 (2d Cir. 1996)). However, in conjunction with the emails and
memoranda quoted in the SAC, defendants' alleged disregard for the red flags –
notably, the holdings that miraculously skyrocketed from being worth pennies to
tens of millions – support inferences of knowledge and recklessness attributable to
Citco NV, Conroy and Quilligan. *See In re Philip Servs. Corp. Sec. Litig.*, 383 F.
Supp. 2d 463, 475 (S.D.N.Y. 2004) ("[M]ultiple allegations of 'red flags,'
considered in the aggregate, support an inference of fraudulent intent adequate to
survive a motion to dismiss.").

[67]     *See* SAC ¶¶ 235, 238, 243-248; *see also* Plaintiffs' Memorandum of Law in
Opposition to Motion to Dismiss of Citco Fund Services (Curacao) N.V., the Citco
Group Limited, Anthony J. Stocks, Kieran Conroy, Declan Quilligan, and Inter
Caribbean Services Ltd. ("Pl. Citco Mem.") at 6.

fraud."[68]  In one email sent to Conroy in September 2001, Quilligan declares himself convinced that "75% of the [Fund's] portfolio is very illiquid with absurd valuations," that "[w]arrants are grossly overvalued and have been since start [sic] of year," and that since the start of 2001 Lancer had "put absurd valuations on illiquid stocks . . . ."[69]

These emails give rise to an inference that because Citco NV, Conroy and Quilligan had actual knowledge that the Funds' positions were fraudulently inflated, their conduct was reckless at the very least.[70]  That reckless conduct includes their failure to *ever* inform investors or authorities of Lauer and Lancer Management's fraudulent valuations.  Regardless of when the Citco Defendants first raised their eyebrows at the numbers, their emails indicate that by early 2002, they knew full well that the numbers were fraudulent.  Nevertheless, these defendants carried on as if nothing were out of the ordinary.[71]

In mid-August of 2002, when Citco NV ceased managing the Funds, the Funds and Citco NV simply wrote a joint letter to investors informing them of

---

[68]   *Novak*, 216 F.3d at 308.  *See, e.g.*, SAC ¶¶ 235, 238, 241, 243-244.

[69]   SAC ¶ 235 (quoting 9/21/01 email from Quilligan to Conroy).

[70]   *See id.* ¶¶ 236-248.

[71]   *See id.* ¶¶ 247-248.

19

a "mutually agreed upon change of the Fund's Administrator from Citco to International Fund Services (Ireland) Limited effective September 1, 2002."[72] Thus, as Citco NV extricated itself from its relationship with Lauer, it made statements to investors conspicuously omitting any mention of the recently uncovered fraud. This silence gives rise to an inference of recklessness because it constituted an implicit endorsement of the Funds' valuations up to that point; it also foreclosed an opportunity for investors or authorities to take steps to mitigate obvious dangers.[73] The silence further suggests recklessness because it shows that Citco NV purposefully failed to follow its publicly announced policy of independently pricing and verifying securities portfolios.[74]

---

[72]   *Id.* ¶ 248.

[73]   *See Novak*, 216 F.3d at 308 (recklessness is adequately alleged when a plaintiff "specifically alleges defendants' knowledge of facts or access to information contradicting their public statements").

[74]   *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d Cir. 2001) (defendants knowingly failed to follow own accounting standards); *Rothman v. Gregor*, 220 F.3d 81, 91 (2d Cir. 2000) (defendants knowingly failed to follow announced policy of expensing royalty advances); *Novak*, 216 F.3d at 311 (defendants "knowingly sanctioned procedures that violated the Company's own markdown policy"). The SAC alleges various instances of "public representations and statements" made by Citco NV and Quilligan announcing that independently valuing securities in funds' portfolios is "one of the primary roles" of a fund administrator. SAC ¶ 196; *see also id.* ¶ 197 (a Citco brochure proclaims it "price[s] the portfolio using independent, recognized pricing sources"); *id.* ¶ 199 (quoting Quilligan from a 2001 article as saying that "[i]ndependence combined

The Citco Defendants also argue that the SAC is inadequate because it does not allege that Citco NV or the Citco Directors had hard "facts or information contradicting the reported valuations."[75] While such data would spotlight conscious misbehavior and bolster the inference of recklessness, their absence is compensated for by circumstantial evidence that Citco NV and directors Quilligan and Conroy failed to independently value the funds and act as fiduciaries in accordance with their own announced policies. Plaintiffs have now sufficiently pled with the required particularity that these three Citco Defendants ignored red flags and/or possessed knowledge contradicting their public statements.

### 3.   Scienter of Stocks

---

with an accurate, timely and professional service is how we can 'add value' to . . . our clients . . . ."); *id*. ¶¶ 195, 211-214.

[75]    Citco Mem. at 5.  The Citco Defendants contend that emails and other memoranda discussed in the SAC "absolutely fail, as a matter of law, to show conscious disregard or recklessness" because, when read in context, they merely show Citco NV's burgeoning concern over Lancer – concern that ultimately led Citco NV to commence its own investigation into the Funds' valuation methods. Citco Mem. at 5.  This is a reasonable interpretation of the evidence, but it does not, as a matter of law, negate a finding of recklessness.  Furthermore, defendants misconstrue Circuit precedent as precluding an inference of recklessness whenever a defendant eventually investigates alleged fraudulent conduct by itself or others. *See id*. (citing *Goldman v. McMahon, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 (S.D.N.Y. 1989) (finding that a *refusal* to investigate may give rise to an inference of recklessness)).

21

With respect to Stocks, the only facts alleged in the SAC supporting scienter are that (1) he served as a director of Lancer Offshore between 1998 and 2001; (2) he was employed by Citco NV from 1985 to 2001; and (3) he received a copy of a 1996 memo in which a Citco NV internal auditor opined that the Fund was overvalued.[76] These allegations are no more adequate for pleading scienter than those previously rejected by this Court; the claims against Stocks are hereby dismissed.[77]

**B.     Section 20(a) Claim Against CGL**

In *Pension Comm. III*, this Court found that plaintiffs "adequately alleged CGL's status as a control person of Citco NV," but dismissed the section 20(a) claim against CGL without prejudice due to plaintiffs' failure to plead a primary violation of the securities laws.[78] Because plaintiffs now successfully plead a primary violation by Citco NV as well as CGL's control, CGL's motion to dismiss plaintiffs' section 20(a) claim is denied.

---

[76]     *See* SAC ¶¶ 36, 232.

[77]     *See Chill*, 101 F.3d at 270 ("Fraud cannot be inferred simply because GE might have been more curious or concerned about the activity of Kidder."); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) ("The pleading strongly suggests that the defendants should have been more alert and more skeptical, but nothing alleged indicates that management was promoting a fraud.").

[78]     446 F. Supp. 2d at 191.

### C.    Common Law Claims[79]

#### 1.    Fraud and Breach of Fiduciary Duty

##### a.    Citco NV, Quilligan and Conroy

The Citco Defendants argue that "for the same reasons that Plaintiffs fail to plead scienter in their section 10(b) claims" their common law fraud-based claims must fail.[80] For the reasons stated above with respect to plaintiffs' section 10(b) claims, the fraud-based common law claims against Citco NV, Quilligan and Conroy survive, but the same claims against Stocks are dismissed.[81]

##### b.    ICSL

Because plaintiffs assert fraud as well as a fraud-based breach of fiduciary duty claim against ICSL,[82] the heightened pleadings standards of Rule

---

[79]    This Court previously ruled that New York law governs plaintiffs' common law claims against all Citco Defendants. *See id.* at 191-95 (rejecting defendants' contention that BVI law applies).

[80]    Citco Mem. at 15.

[81]    *Pension Comm. III* addressed plaintiffs' breach of fiduciary duty claim against Citco NV at greater length and held that plaintiffs adequately pled Citco NV's "fiduciary duty to investors to ensure the accuracy of reports concerning the valuation of the Funds' assets." *See* 446 F. Supp. 2d at 196. Plaintiffs also adequately pled a breach of that duty: "Citco NV held itself out to investors as having policies and procedures to ensure that the Funds' valuations would be accurate and fair, and that [investors] relied on these representations." *Id.* at 196-97.

[82]    *See* Pl. Citco Mem. at 17.

9(b) apply to both common law claims.[83]  With respect to these claims, the Citco

Defendants' argument that the SAC "contains no particularized allegations of any

conduct on the part of ICSL" is on the mark.[84]  The SAC makes only sparse,

ambiguous references to ICSL's role as the director of OmniFund,[85] none of which

support an inference that ICSL participated in the misstatements of OmniFund's

NAV, or possessed the requisite scienter.[86]  Plaintiffs' fraud and breach of

fiduciary duty claims against ICSL are dismissed.

---

[83]    *See Rahl v. Bande*, 328 B.R. 387, 412 (S.D.N.Y. 2005) ("It is undisputed
that claims based on allegations of fraud trigger the heightened pleading standard
of Rule 9(b).").

[84]    Pl. Citco Mem. at 16.

[85]    *See* SAC ¶¶ 39, 118-119, 215.  In their opposing brief, plaintiffs allege
additional facts about ICSL; most importantly, they assert that because Quilligan
was a director of ICSL, his knowledge should be imputed to ICSL.  *See* Pl. Citco
Mem. at 15-16.  But as this fact is not found in the SAC, it will not be considered
for the purpose of deciding this motion.  *See Global Network Commc'ns, Inc. v.
City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (district court committed
reversible error in considering matters outside the pleadings for the purpose of
deciding a 12(b)(6) motion).

[86]    *Pension Comm. III* held that because plaintiffs alleged that Conroy and
Quilligan were managing directors of Citco NV, and that Stocks was a director of
CGL's International Fund Services division, which controlled Citco NV, plaintiffs
supplied sufficient "support for the inference that [Conroy, Quilligan, and Stocks]
were insiders of Citco NV who participated in its misstatements of Lancer
Offshore's NAV." 446 F. Supp. 2d at 185.  Plaintiffs now urge this Court to apply
the same reasoning against ICSL vis-à-vis Citco NV's misstatements of
OmniFund's NAV.  *See* Pl. Citco Mem. at 15.  However, because the SAC is silent

## 2.    Aiding and Abetting Fraud and Breach of Fiduciary Duty

In light of new allegations contained in the SAC, some of the

requirements for pleading these common law claims have become more or less

relevant. This Court is therefore required to discuss a plaintiff's obligation to

allege that an aiding and abetting defendant proximately caused the harm on which

the primary liability is predicated.[87] "But-for" causation is insufficient; aider and

abettor liability requires the injury to be a direct or reasonably foreseeable result of

the conduct.[88] In other words, "[p]roximate cause exists where defendant's actions

were 'a substantial factor in the sequence of responsible causation,' and plaintiff's

---

as to any relationship between ICSL and Citco NV, no analogous inference can be
made with respect to ICSL's liability for OmniFund's fraudulent NAVs.

[87]    *See Pension Comm. III*, 446 F. Supp. 2d at 201 (citing *Diduck*, 974 F.2d at
284); *see also McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343, 359
(S.D.N.Y. 2002) (with respect to aiding and abetting fraud claim, "[p]roximate
cause exists where defendant's actions were a substantial factor in the sequence of
responsible causation, and plaintiff's injury was reasonably foreseeable or
anticipated as a natural consequence") (quotation and citation omitted); *Kolbeck v.
LIT Am., Inc.*, 939 F. Supp. 240, 249 (S.D.N.Y. 1996) (in an aiding and abetting
breach of fiduciary duty case, "[a]iding and abetting liability arises only when
plaintiff['s] injury was a direct or reasonably foreseeable result of the complained-
of conduct") (quotation and citation omitted). *Cf. Lattanzio v. Warnaco Group
Inc.*, – F.3d –, 2007 WL 259877, at *7 (2d Cir. Jan. 31, 2007) (with respect to a
claim of securities fraud, a misstatement "is the proximate cause of an investment
loss if the risk that caused the loss was within the zone of risk concealed by the
misrepresentations . . . alleged by a disappointed investor" (quotations and citation
omitted)).

[88]    *See, e.g., Kolbeck*, 939 F. Supp. at 249.

injury was 'reasonably foreseeable or anticipated as a natural consequence.'"[89]  At

least with respect to an aiding and abetting fraud claim, the "substantial assistance"

and "causation" elements are interrelated – "[w]hether the assistance is substantial

or not is measured . . . by whether the action of the aider and abettor proximately

caused the harm on which the primary liability is predicated."[90]

### a.    ICSL[91]

As noted above, the SAC is devoid of particularized allegations

against ICSL.  Plaintiffs merely assert that ICSL is a subsidiary of CGL who

"served as sole director" of OmniFund during the relevant period.[92]  This provides

no basis for inferring that ICSL acted with the knowledge required to sustain an

---

[89]    *McDaniel*, 196 F. Supp. 2d at 349 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)).

[90]    *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 256 (S.D.N.Y. 2005) (quotation and citation omitted).

[91]    The Citco Defendants point out that the SAC does not specifically identify ICSL as a defendant in plaintiffs' aiding and abetting breach of fiduciary duty claim; only Citco NV, Stocks, Quilligan and Conroy are listed, in a boldfaced heading, as defendants with respect to this particular charge. *See* Citco Mem. at 16; SAC ¶ 360. In response, Plaintiffs contend that their failure to include ICSL in the caption was merely a labeling error, and that throughout the substantive text of the charge, allegations are lodged against all "Citco Directors," a term defined early in the SAC to include ICSL. *See* Pl. Citco Mem. at 16; SAC ¶ 8. There is no prejudice to plaintiffs from this clerical error, and ICSL had an opportunity to address the claim in its reply brief.

[92]    SAC ¶ 39.

aiding and abetting claim under New York law.[93]   Accordingly, all claims against

ICSL are dismissed for failure to plead with the required particularity and without

leave to replead.

### b.      Citco NV, Quilligan and Conroy

Defendants contend that plaintiffs have alleged, at most, that Citco

NV, Quilligan and Conroy were merely suspicious of, or put on notice of, the

underlying fraud. As a result, defendants argue that plaintiffs have failed to meet

the stringent standard for pleading an aiding and abetting claim, which requires

actual knowledge (as opposed to recklessness).[94]   However, for the reasons already

stated with respect to plaintiffs' section 10(b) claims, plaintiffs have adequately

pled that Citco NV, Quilligan and Conroy possessed actual knowledge of Lauer

---

[93]   Although ICSL was not a party when this Court decided *Pension Comm. III*,
that Opinion enunciated, in detail, the need for plaintiffs to replead their claims
with particularity; it also granted them the opportunity to do so. Moreover,
differences between the CFAC and the SAC demonstrate that plaintiffs clearly
understood their pleading obligations. In fairness to defendants, as well as to this
Court, I decline to grant plaintiffs a proverbial second bite at the apple with respect
to ICSL. Lastly, because the breach of fiduciary duty claim against ICSL is
dismissed for inadequacy of pleading, I need not reach the issue of whether this
claim is time-barred, as defendants contend. *See* Citco Mem. at 17-18.

[94]   *See id*. at 16-17 (citing *JP Morgan Chase Bank*, 406 F. Supp. 2d at 255;
*Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 670 (S.D.N.Y. 2005)). The
Citco Defendants do not argue that plaintiffs have failed to plead proximate cause
with respect to their aiding and abetting claims against Citco NV, Quilligan and
Conroy. *See id*.

27

and Lancer Management's fraudulent scheme.  Again, the circumstantial evidence

giving rise to this inference of knowledge are the series of "red flags" that the

Citco Defendants allegedly ignored,[95] as well as the various emails and memoranda

quoted in the SAC.[96]  Plaintiffs have also adequately pled that these defendants

failed to act when their fiduciary duty to investors required them to independently

verify the Funds' valuations, and also that this inaction enabled the fraud to

proceed.  Thus, plaintiffs have fulfilled both the "substantial assistance" element of

the fraud claim and the "participation" element of the breach of fiduciary duty

claim.

### c.   BAS

BAS moves to dismiss plaintiffs' aiding and abetting claims on the

ground that the SAC alleges no new material facts with respect to BAS and

therefore suffers the same fatal flaws as the CFAC.[97]  BAS asserts that the

modified pleadings remain "devoid of allegations raising the inference that BAS or

its employees were actually aware of Lauer's fraudulent scheme," and that there

---

[95]   *See* SAC ¶¶ 255-272.

[96]   *See id.* ¶¶ 235, 238, 241, 243-244, 246.

[97]   *See* BAS Mem. at 1, 3.  In sum, the SAC alleges that Lauer and Lancer
Management supplied BAS with fraudulently inflated stock and warrant prices,
which BAS then put into the Position Reports even though BAS knew at the time
that these prices were fraudulent.  *See* SAC ¶¶143-191.

remains "no basis for inferring that BAS owed [plaintiffs] any duty to monitor, verify, or investigate the veracity of the information disseminated by Lauer."[98] Additionally, BAS argues for dismissal based on plaintiffs' failure to allege facts establishing that BAS proximately caused their injuries.[99]

Because BAS is correct in observing that plaintiffs still fail to satisfy their burden of pleading proximate causation, I need not determine whether the SAC alleges sufficient facts to support an inference of BAS's knowledge.[100]   While it may have been reasonably foreseeable to BAS that fictional reports of multi-million dollar gains would cause plaintiffs' injuries,[101] none of BAS's alleged

---

[98]     *Pension Comm. III*, 446 F. Supp. 2d at 202.

[99]     *See* BAS Mem. at 19-20.

[100]    *See* Reply Memorandum of Law in Further Support of Defendant Banc of America Securities LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint at 9-10.  An allegation of actual knowledge is required because plaintiffs expressly disavow alleging in the SAC that BAS owed them a duty to verify or otherwise monitor the truthfulness of information supplied by Lauer and Lancer Management. *See* Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Banc of America Securities, LLC ("Pl. BAS Mem.") at 16. Where there is no fiduciary duty, "the scienter requirement scales upward." *Armstrong v. McAlpin*, 699 F. 2d 79, 91 (2d Cir. 1983).

[101]    *See* Pl. BAS Mem. at 21-23 (arguing that BAS ought to have reasonably foreseen plaintiffs' injuries because the BAS employees involved were (1) "licensed securities representatives" knowledgeable about the types of trades at issue; (2) aware that the BAS Position Reports "painted the only complete picture of the Funds' portfolio" and that the reports were circulated to the Funds' "service providers;" and (3) aware that they alone had the authority to enter valuation information into the Position Reports posted on BAS's website).

actions were a "'substantial factor in the sequence of responsible causation.'"[102]

With respect to proximate cause, the SAC contains only conclusory assertions.  It

alleges that BAS's role in Lauer's scheme was "vital" because BAS knew the

Position Reports would be relied upon by auditors and administrators who were

responsible for calculating and verifying the Funds' NAVs.[103]  The SAC also

baldly claims that BAS

> proximately caused plaintiffs' damages because, absent BAS's
> knowing and active participation, Lauer could not have
> perpetrated his fraudulent scheme.  Only BAS had the authority
> to enter and modify trades and prices on the BAS computer
> system for eventual inclusion in the fraudulent Position Reports
> that Lauer and Lancer Management disseminated to PWC NA,
> Citco NV and IFS which, in turn, used the fraudulent Position
> Reports to create fraudulent NAV statements and audit
> reports.[104]

Perhaps Lauer's fraudulent scheme "may only have been possible because of

[BAS's] actions, or inaction," but that does not make BAS's conduct a proximate

cause of the scheme.[105]

---

[102]    *McDaniel*, 196 F.Supp.2d at 349 (quoting *First Nationwide Bank*, 27 F.3d at
769).  *Accord Armstrong*, 699 F.2d at 91 (where these is no fiduciary duty, "the
assistance rendered must be knowing and substantial").

[103]    SAC ¶ 436.

[104]    *Id.* ¶ 439.

[105]    *Crommer Finance Ltd.*, 137 F. Supp. 2d at 472 (holding that plaintiffs could
not satisfy their obligation to plead substantial assistance by merely "emphasizing

The SAC places the responsibility for preparing and verifying the
Funds' NAVs on Lauer, the Citco Directors, and the Funds' external auditor.[106]  As
BAS points out, the preparation of the NAVs was supposed to be preceded by (i)
the director defendants' evaluation of the appropriateness of Lauer's valuations;
(ii) Citco NV's validation of the valuations using independent pricing sources; and
(iii) Citco NV's own computation of the NAVs.[107]  Lastly, the Funds' external
auditor, PriceWaterhouseCoopers (Netherlands Antilles), was responsible for
independently validating the accuracy of the Funds' financial statements.[108]
Conspicuously absent from the SAC is any assertion that the Position Reports were
supposed to play a role – let alone a significant role – in the independent evaluation
and certification process.  Because plaintiffs have not adequately pled that BAS

---

that the alleged fraud included a Ponzi scheme that could not have functioned but
for [defendant's] extension of credit and margin violations").  *Cf. Lattanzio*, 2007
WL 259877, at *9 (plaintiffs failed to plead loss causation because they had not
alleged facts showing that an outside accountant's misstatements, which were
"among others (made by [another defendant]) that were much more consequential
and numerous, were the proximate cause of plaintiffs' loss;" nor had plaintiffs
alleged "facts that would allow a factfinder to ascribe some rough proportion of the
whole loss" to the outside accountant's misstatements).

[106]    *See* SAC ¶¶ 193-194, 218-220, 251-253, 273-302.

[107]    *See* BAS Mem. at 20 (citing SAC ¶¶ 218-220, 193-194).

[108]    *See* SAC ¶¶ 274-278.

31

proximately caused their alleged injuries, the claims against BAS are dismissed without leave to replead.

## IV.  CONCLUSION

For the foregoing reasons, the Citco Defendants' motion to dismiss is granted with respect to the claims against ICSL and Stocks and denied in all other respects.  BAS's motion to dismiss is granted.  A conference is scheduled for March 2, 2007, at 4:30 p.m.  The Clerk of the Court is directed to close these motions [Docket Nos. 87, 94].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          February 20, 2007

32

## - Appearances -

**For Plaintiffs:**

Scott M. Berman, Esq.
Anne E. Beaumont, Esq.
Amy C. Brown, Esq.
Jenny F. Cohen, Esq.
FRIEDMAN, KAPLAN, SEILER &
ADELMAN LLP
1633 Broadway
New York, New York 10019
(212) 833-1100

**For Defendants CGL, ICSL,
Citco NV, Kieran Conroy,
Declan Quilligan, and Anthony J.
Stocks:**

Eliot Lauer, Esq.
Michael Moscato, Esq.
Milos Naumovic, Esq.
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
(212) 696-6000

Lewis N. Brown, Esq.
Dyanne E. Feinberg, Esq.
Terence M. Mullen, Esq.
GILBRIDE, HELLER & BROWN, P.A.
One Biscayne Tower, 15th Floor
2 South Biscayne Blvd.
Miami, Florida 33131
(305) 358-3580

**For Defendant BAS:**

Peter K. Vigeland, Esq.
Dawn M. Wilson, Esq.
Li Yu, Esq.
Paul M. Winke, Esq.
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
(212) 230-8800