USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/29/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

THE PENSION COMMITTEE OF THE
UNIVERSITY OF MONTREAL
PENSION PLAN, *et al.*,

        Plaintiffs,

- against -

BANC OF AMERICA SECURITIES,
LLC, CITCO FUND SERVICES
(CURACAO) N.V., THE CITCO GROUP
LIMITED, INTERNATIONAL FUND
SERVICES (IRELAND) LIMITED,
PRICEWATERHOUSECOOPERS
(NETHERLAND ANTILLES), JOHN W.
BENDALL, JR., RICHARD GEIST,
ANTHONY STOCKS, KIERAN
CONROY, and DECLAN QUILLIGAN,

        Defendants.

------------------------------------------------------- X

**OPINION AND ORDER**

05 Civ. 9016 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

        A group of investors brings this action to recover losses stemming from the liquidation of two British Virgin Islands ("BVI") based hedge funds in which they held shares: Lancer Offshore, Inc. ("Lancer Offshore" or the "Fund")

1

and OmniFund Ltd. ("OmniFund" and together with Lancer Offshore, the "Funds").[1] The Funds were managed by Michael Lauer ("Lauer") through Lancer Management Group, LLC ("Lancer Management").[2] Plaintiffs bring various claims under federal securities laws and common law claims under New York law against former directors, administrators, the auditor, and the prime broker and custodian of the Funds.[3] International Fund Services (Ireland) Ltd. ("IFSI") was the administrator of Lancer Offshore from September 2002 until the Fund's liquidation.[4] Following the close of discovery, IFSI now moves for summary judgment on all claims against it.[5] For the reasons that follow, IFSI's motion for summary judgment is granted.

## II. BACKGROUND

### A. Facts[6]

---

[1] *See* Second Amended Complaint ("2d Am. Compl.") ¶ 1.

[2] *See id.*

[3] *See id.* ¶¶ 318-460.

[4] *See id.* ¶ 13.

[5] *See* Memorandum of Law of Defendant International Fund Services (Ireland) Ltd. in Support of its Motion for Summary Judgment ("Def. Mem.") at 1.

[6] The facts in this section are not in dispute and are drawn from Defendant's Rule 56.1 Statement ("Def. 56.1") and Plaintiffs' Counterstatement Pursuant to Rule 56.1 ("Pl. Counter. 56.1"). Some background facts, if not

2

Plaintiffs are twenty investors who purchased their shares in Lancer Offshore from 1997 to 2002.[7] The majority of Lancer Offshore's portfolio was comprised of large, controlling positions in a number of shell companies that had been acquired for little or no money at all.[8] The shares of these companies were thinly traded and were mostly traded "over the counter."[9] In a scheme known as "marking the close," at the end of each month Lauer would cause Lancer Offshore to purchase additional shares of these shell companies on the open market at inflated prices.[10] Because these securities were thinly traded and because Lauer owned controlling stakes in these companies, the price at which the Fund purchased the securities would appear on Bloomberg and other pricing sources as the closing market price for that day.[11] In this way, Lauer was able to artificially inflate the net asset values ("NAVs") of these securities, making it appear as

---

material to this motion, have been taken from the Second Amended Complaint.

[7]      See 2d Am. Compl. ¶¶ 1, 15; Def. 56.1 ¶ 1; Pl. Counter. 56.1 ¶ 1.

[8]      See Def. 56.1 ¶ 8; Pl. Counter. 56.1 ¶ 8.

[9]      See Def. 56.1 ¶ 8; Pl. Counter. 56.1 ¶ 8.

[10]      See Def. 56.1 ¶ 9; Pl. Counter. 56.1 ¶8.

[11]      See Pl. Counter 56.1 ¶ 8.

3

though the portfolio possessed a higher value than it actually did.[12] Because the management fees paid to Lancer Management were based on the NAV of the Fund, a higher NAV also meant increased fees for Lauer.[13]

In September 2002, IFSI replaced co-defendant Citco Fund Services (Curacao) N.V. ("Citco NV") as the administrator of Lancer Offshore.[14] At that time, plaintiffs had already invested in the Fund.[15] Among other tasks, IFSI was responsible for calculating Lancer Offshore's NAV and disseminating this information on a monthly basis to investors.[16] In addition to sending out these reports and other investor letters, IFSI would, on occasion, reply to investor inquiries.[17]

On May 2, 2003, the BVI Financial Services Commission ("FSC"), the BVI's securities regulator, commenced an action against Lancer Offshore in

---

[12] *See id.*; Def. 56.1 ¶ 9.

[13] *See* 2d Am. Compl. ¶¶ 109, 117.

[14] *See* Def. 56.1 ¶¶ 4, 5; Pl. Counter. 56.1 ¶¶ 4, 5. Citco NV had been the administrator of the Funds from their inception in 1995 until August 31, 2002. Def. 56.1 ¶ 3; Pl. Counter. 56.1 ¶ 3.

[15] *See* Def. 56.1 ¶ 1; Pl. Counter. 56.1 ¶ 1.

[16] *See* Def. 56.1 ¶¶ 17, 18; Pl. Counter. 56.1 ¶ 15.

[17] *See* Def. 56.1 ¶¶ 23, 33, 34; Pl. Counter. 56.1 ¶ 23.

the BVI.[18] On July 8, 2003, the U.S. Securities and Exchange Commission sued Lauer and others in the United States District Court for the Southern District of Florida.[19] At the request of the SEC, the court appointed a receiver to administer and manage the Fund.[20] Virtually all of plaintiffs' investments, totaling over $550 million, have been lost.[21]

## B. Procedural History

Plaintiffs filed their Second Amended Complaint on August 25, 2006, alleging claims for violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, against the former auditor of the Funds, PricewaterhouseCoopers (Netherlands Antilles) ("PWC NA"), Citco NV, and three former directors of Lancer Offshore, Anthony J. Stocks, Kieran Conroy, and Declan Quilligan (collectively, "Citco Directors," and together with Citco NV, "Citco Defendants").[22] Plaintiffs also bring a claim under section 20(a) of the Securities Exchange Act of 1934 against The Citco Group Limited ("Citco

---

[18] See Def. 56.1 ¶ 25; Pl. Counter. 56.1 ¶ 25.

[19] See Def. 56.1 ¶ 27; Pl. Counter. 56.1 ¶ 27.

[20] See Def. 56.1 ¶ 28; Pl. Counter. 56.1 ¶ 28.

[21] See 2d Am. Compl. ¶ 1.

[22] See id. ¶¶ 318-326.

5

Group"), based on Citco Group's alleged status as a control person of Citco NV.[23]

Plaintiffs also assert various common law claims under New York law against the Citco Defendants, PWC NA, and Banc of America Securities, LLC ("BAS"), the former prime broker and custodian of the Funds.[24] As to IFSI, plaintiffs bring claims of negligence and professional malpractice and of breach of fiduciary duty.[25]

On September 25, 2006, BAS made a motion to dismiss the claims against it. On October 4, 2006, the Citco Defendants and Citco Group similarly moved to dismiss the claims with respect to them. By opinion and order dated February 20, 2007, BAS's and certain of the Citco Directors' motions to dismiss were granted.[26] Following a year and a half of discovery, the remaining defendants now move for summary judgment. This opinion considers only the motion of IFSI.

---

[23]   See id. ¶¶ 327-341.

[24]   See id. ¶¶ 342-375, 384-460.

[25]   See id. ¶¶ 376-391.

[26]   See Pension Comm. of the Univ. of Montreal Pension Plan, et al. v. Banc of America Sec., et al., No. 05 Civ. 9016, 2007 WL 528703 (S.D.N.Y. Feb. 20, 2007).

6

## III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[27] An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[28] A fact is material when it "might affect the outcome of the suit under the governing law."[29] "It is the movant's burden to show that no genuine factual dispute exists."[30]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than show that there is "some metaphysical doubt as to the material facts,"[31] and it

---

[27] Fed. R. Civ. P. 56(c).

[28] *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[29] *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).

[30] *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[31] *Higazy*, 505 F.3d at 169 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"may not rely on conclusory allegations or unsubstantiated speculation."[32] However, "all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[33]

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[34] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[35] Summary judgment is therefore inappropriate "'if there is any evidence in the record that could reasonably support

---

[32] *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[33] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

[34] *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

[35] *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

8

a jury's verdict for the non-moving party.'"[36]

## IV. APPLICABLE LAW

### A. Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty under New York law are "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages."[37] Where damages are sought in a breach of fiduciary duty claim, "the plaintiff must demonstrate that the defendant's conduct proximately caused injury in order to establish liability."[38]

### B. Negligence and Professional Malpractice

To prevail on a negligence claim, a plaintiff must demonstrate "(1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damage as a

---

[36] *American Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)).

[37] *SCS Commc'ns., Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004) (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 281-82 (2d Cir. 1992)).

[38] *LNC Invs., Inc. v. Charter Nat'l Life Ins. Co.*, 173 F.3d 454, 465 (2d Cir. 1999) (citing *R.M. Newell Co. v. Rice*, 653 N.Y.S.2d 1004, 1005 (4th Dep't 1997)).

9

proximate result of that breach."[39] "Under New York law, professional malpractice is a species of negligence."[40] To prevail on a professional malpractice claim, a plaintiff must demonstrate the elements of negligence, and the breach of duty must be by a professional in a "departure from accepted standards of practice."[41]

## V. DISCUSSION

### A. Breach of Fiduciary Duty

IFSI argues that its alleged misconduct was not the proximate cause of plaintiffs' losses.[42] Because loss causation is an element of a claim for breach of fiduciary duty, IFSI argues that its motion for summary judgment on this claim should be granted.[43] Specifically, IFSI asserts that when it replaced Citco NV as the administrator of Lancer Offshore in September 2002, plaintiffs' losses had

---

[39] *DiBenedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir. 2004).

[40] *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000).

[41] *Vtech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP*, 348 F. Supp. 2d 255, 262 (S.D.N.Y. 2004) (citing *Herbert H. Post & Co. v. Sidney Bitterman, Inc.*, 639 N.Y.S.2d 329, 335 (1st Dep't 1996)).

[42] *See* Def. Mem. at 11.

[43] *See id.*

10

already been "locked in."[44] IFSI also contends that "[t]here was no material change in the portfolio between September 1 and December 31, 2002, and none of the plaintiffs purchased [F]und shares during that period."[45] Finally, it argues that even if IFSI had uncovered the scheme and made it known, the "illiquid nature of the portfolio, coupled with its relatively meager value, meant that it would have taken years to realize even pennies on the dollar had the [F]und started selling its securities . . . in response to redemption requests."[46] As a result, IFSI claims its conduct could not have been the proximate cause of plaintiffs' losses.

Plaintiffs concede that they purchased shares of Lancer Offshore prior to IFSI's appointment as administrator but argue that they were lulled into retaining their investments by IFSI's calculation of inflated NAVs.[47] Plaintiffs further argue that they were damaged because during the four months that IFSI was calculating and reporting inflated NAVs to investors, Lancer Offshore

---

[44] *Id.* at 12.

[45] *Id.* at 11-12.

[46] *Id.* at 12.

[47] *See* Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment of Defendant International Fund Services (Ireland) Limited ("Pl. Mem.") at 20.

11

incurred a cash outflow of more than twelve million dollars.[48] They assert that this outflow would not have occurred had IFSI uncovered the scheme and reported it to investors.[49]

Because plaintiffs have not adduced any evidence to show that the cash outflow negatively impacted the realizable value of plaintiffs' investments in Lancer Offshore, their argument must fail. As explained by plaintiffs, Lancer Offshore was an

> open-ended investment fund[], whose defining feature is the ability of investors to purchase and redeem shares at a price based on NAV per share. Unlike an ordinary company, the price of shares in such a fund does not fluctuate as a function of the supply of and demand for those shares. Rather, the share price in an open-ended investment fund is solely a function of the calculated NAV per share for the fund, which is determined by dividing the total net value of the fund's portfolio by the number of shares the fund has issued.[50]

The NAV for Lancer Offshore was equivalent to the Fund's "gross assets less its gross liabilities...."[51] Thus, in ascertaining whether IFSI contributed to

---

[48] *See id.*

[49] *See id.* at 22.

[50] 2d Am. Compl. ¶ 106.

[51] Placement Memorandum Relating to Shares of Capital Stock of Par Value U.S. $1.00 Per Share of Lancer Offshore ("Placement Mem."), Ex. 4 to Declaration of Seth M. Schwartz, Counsel for IFSI ("Schwartz Decl."), at 24.

12

plaintiffs' losses, the relevant query is whether the actual NAV of Lancer Offshore decreased during the time that IFSI was allegedly calculating and disseminating artificial NAVs (from September 1, 2002 to December 31, 2002).

Both IFSI and plaintiffs have submitted expert reports on this issue. IFSI's expert is Jeffrey Baliban, Senior Vice President of National Economic Research Associates and previously a senior partner in the Disputes Advisory Services practice at KPMG, LLP.[52] Plaintiffs' expert is Israel Shaked, Professor of Finance and Economics at Boston University's School of Management.[53]

Baliban's report, which is based on a review of Lancer Offshore's holdings in ten companies that comprised ninety-one percent of the Fund's portfolio, concludes that the Fund was already illiquid, and therefore worthless, at the time that IFSI became administrator.[54] Indeed, Baliban finds that, even at

---

[52] *See* Curriculum Vitae of Jeffrey L. Baliban, IFSI's expert, Ex. 2 to Schwartz Decl., at 1.

[53] *See* 9/15/08 Report of Israel Shaked, plaintiffs' expert ("Shaked Rep."), Ex. 15 to Declaration of Scott M. Berman, plaintiffs' counsel, at 1.

[54] *See* Report of Jeffrey L. Baliban ("Baliban Rep."), Ex. 1 to Schwartz Decl., at 9, 12. Plaintiffs argue that Baliban's report "is based almost entirely on a 2003 Deloitte & Touche report, which is inadmissible hearsay." Pl. Mem. at 23 n.12. Deloitte & Touche had been retained by the BVI FSC to review the Funds and had issued a report on May 21, 2003 detailing its findings. *See* Baliban Rep. at 2. It is true that Baliban relies on the Deloitte & Touche report in his analysis. *See id.* at 7. However, an expert may rely on facts or data "perceived by or made

13

September 1, 2002, the portfolio's securities were so illiquid that it would have taken years to unwind the positions.[55] He also finds that Lancer Offshore's cash assets were insufficient to cover even its margin accounts as of September 1, 2002 and that they continued to be insufficient as of December 31, 2002.[56] Based on these findings, he concludes that "no real value could be realized" by plaintiffs (or in other words, that the NAV of the Fund was already zero) at the time that IFSI became administrator of the Fund.[57] As a result, any losses that plaintiffs suffered

---

known to the expert . . . ." Fed. R. Evid. 703. And although Baliban refers in his report to Deloitte & Touche's findings, he makes clear that he conducted an independent analysis to confirm Deloitte & Touche's conclusions regarding Lancer Offshore's liquidity problems at December 31, 2002 and furthermore engaged in a review of the Fund's financials to ascertain whether the Fund faced the same problems in August 31, 2002. *See* Baliban Rep. at 9-13; *see also* 9/26/08 Supplemental Declaration of Jeffrey L. Baliban at 1-2. Thus, Baliban's report is admissible for the purposes of this motion.

[55] *See id.* at 8, 12 (noting the conclusion of Deloitte & Touche that at December 31, 2002 "two positions would [have taken] over 150 years to unwind" and concluding that the holdings were "essentially the same" at September 1, 2002 as they were at December 31, 2002).

[56] *See* Baliban Rep. at 13. In fact, Baliban concludes that Lancer Offshore was in an "even less liquid position as of September 1, 2002" than at the end of the year. *Id.* at 12.

[57] *See id.* Baliban notes that this lack of liquidity would have created problems for investors hoping to redeem their investments from September 1, 2002 to December 31, 2002. As of June 30, 2002, the Fund was already unable to meet redemption requests of other investors, who sought $106 million based on the allegedly inflated NAV. *See id.* at 9.

14

were not the product of IFSI's alleged misconduct.

In his report, Professor Shaked attempts to rebut Baliban's conclusion that the Lancer Offshore portfolio was "highly illiquid" during the time that IFSI was the administrator of the Fund, claiming that Baliban's report "pertains almost exclusively to [investments in shell companies]."[58] He explains that Baliban's conclusion ignores the "marketable positions" that Lancer Offshore held that were subsequently liquidated to "generate the cash that it would spend on [] improper [cash] outflows."[59] These outflows totaled twelve million dollars and included fees to Lancer Management and IFSI (which were based on inflated NAVs), redemptions paid to exiting investors, and "money transfers and bridge loans where there was no apparent legitimate purpose for the cash outflows to these entities."[60]

I find Shaked's analysis to be flawed and unpersuasive. As an initial matter, he does not dispute Baliban's conclusion that at least ninety-one percent of Lancer Offshore's portfolio was illiquid and had a NAV of zero.[61] Furthermore,

---

[58] Shaked Rep. at 13.

[59] *Id.* at 13.

[60] *Id.* at 5.

[61] Indeed, plaintiffs do not contest defendant's suggestion that the securities in the portfolio as of September 1, 2002 were highly illiquid. *See* Pl.

15

even assuming that Lancer Offshore had liquidated the remaining nine percent of its marketable positions to generate the twelve million dollars in cash expenditures, this sum would not have been enough to cover the fifty-seven million dollars of net liabilities.[62] The liabilities of the Fund would still have exceeded the assets, and the NAV of the Fund would necessarily still have been zero.[63]

Shaked's report thus fails to show that the cash that was improperly spent would have made a difference to the value of plaintiffs' investments.[64]

---

Counter. ¶ 11.

[62] *See* Baliban Rep. at 13 (finding that cash assets equaled two million dollars while margin accounts equaled fifty-nine dollars at September 1, 2002).

[63] This does not mean that the cash outflow was innocuous – it affected the amount Lancer Offshore could pay *creditors*. For plaintiff *investors*, however, their investments were already sunk.

[64] Plaintiffs cite to several cases that allow the imposition of liability on a defendant whose acts succeed in deepening insolvency. *See* Pl. Mem. at 20. However, as plaintiffs acknowledge, all of these cases discuss the possibility of a "deepening insolvency" theory of liability if plaintiffs can prove that defendants' actions led to increased indebtedness or a net loss. *See id.* (noting that liability was based on "increased indebtedness") (citing *In re Gouiran Holdings, Inc.*, 165 B.R. 104, 106 (E.D.N.Y. 1994)). *See also Allard v. Arthur Andersen & Co. (USA)*, 924 F. Supp. 488, 494 (S.D.N.Y. 1996) (allowing a "deepening insolvency" theory for "further indebtedness."); *Thabault v. Chait*, 541 F.3d 512, 532-33 (3d Cir. 2008) (allowing recovery for net losses from a corporation's continuing operations). I make no ruling regarding the validity of this theory of liability, however, because plaintiffs have failed to show that Lancer Offshore's indebtedness increased during the period that IFSI was the administrator. On the

16

Because plaintiffs have not raised a "genuine issue" with respect to the lack of proximate cause, IFSI's motion for summary judgment with regard to plaintiffs' breach of fiduciary duty claim is granted.

## B. Negligence and Professional Malpractice

As noted above, "no genuine factual dispute" exists with respect to the lack of loss causation. Plaintiffs have failed to raise a "genuine issue" regarding IFSI's claim that its alleged misconduct was not the proximate cause of plaintiffs' losses. Because a showing of proximate cause is also required for claims of negligence and professional malpractice, IFSI's motion for summary judgment with respect to those claims is also granted.[65]

---

contrary, IFSI shows that Lancer Offshore's cash position improved while debt decreased in the four months it was allegedly disseminating artificial NAVs. *See* Reply Memorandum of Law of Defendant International Fund Services (Ireland) Ltd. in Further Support of its Motion for Summary Judgment at 3; Baliban Rep. at 13.

[65] Because summary judgment is granted to IFSI based on lack of proximate cause, I make no findings with respect to IFSI's other arguments – that plaintiffs' claims are pre-empted by New York's Martin Act and that IFSI owed no duty to plaintiffs and therefore was not liable under either a breach of fiduciary duty or negligence claim. *See* Def. Mem. at 13-24.

## V. CONCLUSION

For the reasons stated above, IFSI's motion for summary judgment is granted. The Clerk of the Court is directed to close this motion (document no. 180).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
October 29, 2008

## - Appearances -

**For the Plaintiffs:**

Scott M. Berman, Esq.
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

**For Defendant IFSI:**

Seth M. Schwartz, Esq.
William F. Clarke, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522
(212) 735-3000