UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

THE PENSION COMMITTEE OF THE
UNIVERSITY OF MONTREAL
PENSION PLAN, *et al.*,

    Plaintiffs,

- against -

BANC OF AMERICA SECURITIES,
LLC, CITCO FUND SERVICES
(CURACAO) N.V., THE CITCO GROUP
LIMITED, INTERNATIONAL FUND
SERVICES (IRELAND) LIMITED,
PRICEWATERHOUSECOOPERS
(NETHERLAND ANTILLES), JOHN W.
BENDALL, JR., RICHARD GEIST,
ANTHONY STOCKS, KIERAN
CONROY, and DECLAN QUILLIGAN,

    Defendants.

------------------------------------------------- X

## MEMORANDUM OPINION AND ORDER

05 Civ. 9016 (SAS)



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

On October 29, 2008, this Court granted summary judgment for International Fund Services (International) Ltd. (IFSI) on plaintiff investors' alleged claims of breach of fiduciary duty, negligence, and professional

1

malpractice claims with respect to IFSI's administration of the Lancer Offshore fund ("the Fund").[1] The Court granted summary judgment for IFSI on all claims because it found that IFSI's conduct was not the proximate cause of plaintiffs' damages.[2] Plaintiffs now seek reconsideration of this decision.[3] Plaintiffs argue that the Court's determination that the net asset value ("NAV") of the Fund was already zero at the time that IFSI became administrator was incorrect because the Court failed to include the market value of one portfolio stock that was worth $62,716,500.[4] If the market value of this stock had been included in the Court's analysis, plaintiffs argue that the NAV of the Fund would have been $6,064,166.[5] They contend that there was a loss in NAV of almost three million dollars during the time that IFSI was allegedly disseminating false NAV values to investors.[6]

---

[1] *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Sec.*, LLC, No. 05 Civ. 9016, 2008 WL 4755734 (S.D.N.Y. Oct. 29, 2008).

[2] *See id.* at *4-5.

[3] *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Reconsideration ("Pl. Mem.").

[4] *See id.* at 2.

[5] *See id.* at 3.

[6] *See id.* at 2.

2

## II. LEGAL STANDARD

A motion for reconsideration is governed by Local Rule 6.3 and is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[7] "A motion for reconsideration may also be granted to 'correct a clear error or prevent manifest injustice.'"[8]

The purpose of Local Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[9] Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on

---

[7] *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted).

[8] *In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570, 2006 WL 708149, at *1 (S.D.N.Y. Mar. 20, 2006) (quoting *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).

[9] *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 1, 2005) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). *Accord Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a motion for reconsideration any matter that it did not raise previously to the court on the underlying motion sought to be reconsidered.").

issues that have been considered fully by the Court."[10] Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively, to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[11]

## III. DISCUSSION

Plaintiffs point out that the Court overlooked part of the report of Jeffrey L. Baliban, IFSI's expert, wherein he discusses the Fund's sale of a number of positions in its portfolio from September 1, 2002 to December 31, 2002, the period during which IFSI was allegedly calculating and disseminating inflated NAVs.[12] In particular, they point to Baliban's analysis of the market value and sale of a significant portion of one security, Titan PR.[13] According to Baliban,

---

[10] *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003) (quotation omitted). *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when the movant "seeks solely to relitigate an issue already decided.").

[11] *Joseph v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 96 Civ. 9015, 2006 WL 721862, at *2 (S.D.N.Y. Mar. 22, 2006) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

[12] *See* 8/22/08 Report of Jeffrey L. Baliban, IFSI's expert ("Baliban Rep."), Ex. 1 to Declaration of Seth M. Schwartz, IFSI's counsel, at 10-11.

[13] *See id.* at 11.

4

Lancer Offshore held a $62,716,500 position in Titan PR at August 31, 2002.[14] Ninety percent of this position was sold from September 1, 2002 to December 31, 2002 for $56,600,122.[15] Plaintiffs argue that if the Court had included the full market value of the Fund's position in Titan PR ($62,716,500) in its September 1, 2002 NAV calculation, it would have determined that the NAV of the Fund was $6,064,166.[16] They further contend that adding the net liabilities to the market value of the Fund's Titan PR position at December 31, 2002 yields a NAV of $3,365,836.[17] As such, plaintiffs conclude, the Fund's NAV decreased by almost three million from September 1, 2002 to December 31, 2002.[18]

While plaintiffs are correct that the Court should have included the value of the Titan PR position in its calculation of the Fund's NAV, plaintiffs' argument still fails. As the Court noted in its opinion, by June 30, 2002, a number

---

[14] *See id.*

[15] *See id.*

[16] *See* Pl. Mem. at 3.

[17] *See id.* at 3. To obtain this NAV, plaintiffs added the cash assets of $301,420 to the market value of the Titan PR position at December 31, 2002, which was $6,010,680, and subtracted the Fund's margin accounts of $2,946,264. *See id.*

[18] *See id.* at 4.

5

of investors had submitted redemption requests totaling $106 million.[19] Even if
IFSI had uncovered the scheme shortly after it became the administrator of the
Fund and the remaining investor plaintiffs had immediately submitted requests to
redeem their shares, the redemption requests submitted by June 30, 2002 would
have been paid first.[20] Thus, adding the full market value of the Titan PR position
($62,716,500) does not change the Court's determination that the NAV of the
Fund was zero at September 1, 2002. The liabilities would still have exceeded the
assets of the Fund by approximately $100 million.[21] Thus, plaintiffs have still

---

[19] *See Pension Comm.*, 2008 WL 4755734, at *4 n.57 (citing Baliban Rep. at 9).

[20] According to the Placement Memorandum, "[s]hares may be redeemed by a Shareholder on at least six (6) months' prior notice . . . ." Baliban Rep. at 9 n.47. Thus, any requests made from September to December 2002, would have been paid after the payment of redemption requests made by June 30, 2002.

[21] Margin accounts of $59,052,905 + redemption requests of $106,000,000 = $165,052,905 of liabilities; cash of $2,400,571 + Titan PR stock of $62,716,500 = $65,117,071 of assets. The analysis does not change even if the Court includes the market value of other securities that were sold between September 1, 2002 and December 31, 2002, which totaled an additional $1,695,957. *See* Pl. Mem. at 3 n.1; Baliban Rep. at 11. Plaintiffs argue additionally that the NAV of the Fund can also be calculated based on the "reported portfolio market value" of the Fund as of August 31, 2002 of $1,062,514,117. *See* Pl. Mem. at 3 n.3. They argue that even assuming that ninety-one percent of the Fund was illiquid, the value of the remaining nine percent of the Fund would have been $95,626,271 at August 31, 2002. *See id.* Plaintiffs' analysis is flawed once again because the "reported portfolio market

6

failed to raise a "genuine issue" of fact with regards to loss causation.[22]

## V. CONCLUSION

For the reasons stated above, plaintiffs' motion for reconsideration is granted, but the Court's decision of October 29, 2008 still stands. The Clerk of the Court is directed to close this motion (document no. 210).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          November 12, 2008

---

value" of the Fund is irrelevant to any calculation of the Fund's actual NAV. This is because the reported market value of the Fund was concededly inflated. *See* Baliban Rep. at 12; 9/15/08 Report of Israel Shaked, plaintiffs' expert, Ex. 15 to Declaration of Scott M. Berman, plaintiffs' counsel, at 5-13. And, in any case, this asset value (assuming it stayed the same through September 1, 2002) would still not have been enough to cover the Fund's liabilities of $165,052,905 as of September 1, 2002 – thus, the NAV of the Fund would still have been zero.

[22]    Summary judgment is appropriate when there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(c).

7

## - Appearances -

**For the Plaintiffs:**

Scott M. Berman, Esq.
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

**For Defendant IFSI:**

Seth M. Schwartz, Esq.
William F. Clarke, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522
(212) 735-3000