UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

THE PENSION COMMITTEE OF THE
UNIVERSITY OF MONTREAL
PENSION PLAN, *et al.*,

               Plaintiffs,

            - against -

BANC OF AMERICA SECURITIES,
LLC, CITCO FUND SERVICES
(CURACAO) N.V., THE CITCO GROUP
LIMITED, INTERNATIONAL FUND
SERVICES (IRELAND) LIMITED,
PRICEWATERHOUSECOOPERS
(NETHERLAND ANTILLES), JOHN W.
BENDALL, JR., RICHARD GEIST,
ANTHONY STOCKS, KIERAN
CONROY, and DECLAN QUILLIGAN,

              Defendants.

------------------------------------------------------- X

OPINION AND ORDER

05 Civ. 9016 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/10/09

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

On January 5, 2009, this Court granted in part and denied in part the

partial summary judgment motion of Citco Fund Services (Curacao), N.V. ("Citco

NV") and Kieran Conroy, Declan Quilligan, and Anthony Stocks (the three

individual directors together with Citco NV, "the Citco Defendants").[1]  As part of

the Opinion and Order, the Court granted summary judgment for the Citco

Defendants on plaintiffs' negligence claims based on initial purchases in the

Lancer Funds because plaintiffs had not shown that they had received and relied

on the allegedly inflated monthly Net Asset Value ("NAV") statements prior to

making their first investments.[2]  Plaintiffs now seek reconsideration of this

decision.[3]

Despite the Citco Defendants' argument in their moving papers that

plaintiffs could not show that they had relied on the NAV information prior to

their initial investments,[4] plaintiffs presented no evidence of such reliance in their

opposition papers when discussing their negligence claims with respect to any

---

[1]     *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Sec.*, LLC, No. 05 Civ. 9016, 2009 WL 29649 (S.D.N.Y. Jan. 5, 2009). In this opinion, "Citco NV" and "the Citco Defendants" are used interchangeably.

[2]     *See id.* at *17.

[3]     *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Reconsideration ("Pl. Mem.").

[4]     *See* Defendants Citco Fund Services (Curacao), N.V. and the Citco Directors' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Summ. Judgment Mem.") at 24.

2

plaintiff's initial investment.[5]  Nevertheless, a discussion of such evidence was

included in plaintiffs' arguments with respect to their Section 10(b) claims.

Because plaintiffs failed to refer to this evidence in their discussion of the

negligence claims, the Court did not consider the evidence when it granted

summary judgment on the negligence claims pertaining to the initial investments

of all plaintiffs.[6]  However, in the interest of justice, I have decided to grant

plaintiffs' motion for reconsideration of those claims because the Court

"overlooked" the relevant evidence, albeit evidence not drawn to its attention by

plaintiffs' counsel.[7]

---

[5]   *See* Plaintiffs' Memorandum of Law in Opposition to Motion for
Summary Judgment of Defendants Citco Fund Services (Curacao), N.V., Kieran
Conroy, Declan Quilligan and Anthony Stocks at 23-24.

[6]   The parties collectively submitted 60 pages of briefing, 50 pages of
statements pursuant to Rule 56.1, and 450 pages of exhibits, including
correspondence, fund documents, and excerpts of deposition testimony.  Given the
voluminous record in this case, it was important for each party to refer specifically
to evidence that would support its arguments.  Plaintiffs did not do so.

[7]   Plaintiffs also argue that the Citco Defendants had not produced any
evidence to show that plaintiffs – other than the six they specifically discussed in
their moving papers – failed to rely on the Citco Defendants' statements.  *See*
Plaintiffs' Memorandum of Law in Opposition to the Motion for Reconsideration
by Defendants Citco Fund Services (Curacao), N.V. and the Citco Directors at 6
n.5.  However, "[s]ummary judgment for a defendant is appropriate when the
plaintiff 'fails to make a showing sufficient to establish the existence of an
element essential to [her] case, and on which [she] will bear the burden of proof at
trial.'"  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999) (quoting

3

The Court also denied summary judgment with respect to plaintiffs'

breach of fiduciary duty claims – concluding that there was a question of fact

regarding whether the Citco Defendants owed a fiduciary duty to plaintiffs[8] – and

granted summary judgment on plaintiffs' aiding and abetting claims prior to June

2001 – concluding that plaintiffs had not established the Citco Defendants'

scienter prior to that date.[9]  The Citco Defendants now move for reconsideration of

both of these determinations.[10]

Because the Citco Defendants failed to make the argument underlying

their motion for reconsideration of the aiding and abetting claims in their moving

papers, their motion for reconsideration with respect to these claims is denied.

Although the Citco Defendants also failed to make the argument in their moving

papers that they now make in their motion for reconsideration of the breach of

---

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Thus, plaintiffs must raise a genuine issue of fact before a claim can proceed to trial.  Because plaintiffs failed to do so, the negligence claims with respect to these other plaintiffs were correctly dismissed.

    [8]      *See Pension Comm.*, 2009 WL 29649, at *16-17.

    [9]      *See id.* at *18.

    [10]      *See* Defendants Citco Fund Services (Curacao), N.V. and the Citco Directors' Memorandum of Law in Support of Their Motion for Reconsideration of This Court's Order and Opinion on Summary Judgment and Memorandum of Law in Opposition to Plaintiffs' Motion for Reconsideration ("Def. Mem.").

4

fiduciary duty claims, because the argument they now raise has been previously decided by this Court as a matter of law,[11] their motion for reconsideration of these claims is granted.

## II.    LEGAL STANDARD

A motion for reconsideration is governed by Local Rule 6.3 and is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[12]  A motion for reconsideration may also be granted to "'correct a clear error or prevent manifest injustice.'"[13]

The purpose of Local Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then

---

[11]    *See Pension Committee of the University of Montreal Pension Plan v. Banc of America Sec., LLC*, No. 05 Civ. 9016, 2007 WL 528703, at *6 (S.D.N.Y. Feb. 20, 2007).

[12]    *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted).

[13]    *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

plugging the gaps of a lost motion with additional matters.'"[14]  Local Rule 6.3

must be "narrowly construed and strictly applied so as to avoid repetitive

arguments on issues that have been considered fully by the Court."[15]  Courts have

repeatedly been forced to warn counsel that such motions should not be made

reflexively, to reargue "'those issues already considered when a party does not like

the way the original motion was resolved.'"[16]  A motion for reconsideration is not

an "opportunity for making new arguments that could have been previously

advanced."[17]

## III.   DISCUSSION

---

[14]     *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03
Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *S.E.C. v.
Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y.
May 31, 2001). *Accord Commerce Funding Corp. v. Comprehensive Habilitation
Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a
motion for reconsideration any matter that it did not raise previously to the court
on the underlying motion sought to be reconsidered.").

[15]     *United States v. Treacy*, No. 08 Cr. 0366, 2009 WL 47496, at *1
(S.D.N.Y. Jan. 8, 2009) (quotation omitted). *Accord Shrader v. CSX Transp. Inc.*,
70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when
the movant "seeks solely to relitigate an issue already decided.").

[16]     *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1
(S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001
(S.D.N.Y. 1996)).

[17]     *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d
17, 19 (S.D.N.Y. 2005).

## A.    Negligence Claims

Plaintiffs and the Citco Defendants both agree that the Court's
analysis of plaintiffs' negligence claims is governed by *Credit Alliance Corp. v.
Arthur Andersen & Co.*[18]  In that case, the New York Court of Appeals set forth
three elements that must be satisfied before a professional can be held liable on a
claim of negligence where there is no contractual privity: (1) awareness by the
defendant that the statement would be used for a "particular purpose;" (2)
plaintiff's reliance on that statement; and (3) some conduct linking the two parties
that "evinces the [defendant's] understanding of [plaintiff's] reliance."[19]

In promulgating this test, the Court of Appeals specifically discussed
the importance of the first and third prerequisites.  As for the first prerequisite –
awareness by the defendant that its statement would be used for a particular
purpose – the court distinguished between cases in which the "'end and aim'" of
the statement was for use by the plaintiff for a particular purpose and cases in
which the purpose for which the plaintiff used the statement was but "'one

---

[18]      *See* Def. Mem. at 9; Pl. Mem. at 4 n.4.

[19]      *Credit Alliance*, 65 N.Y.2d 536, 551 (1985).  The *Credit Alliance* test
was also set forth in the January 5, 2009 Opinion and Order. *See Pension Comm.*,
2009 WL 29649, at *7.

7

possibility among many.'"[20]  Regarding the third prerequisite, the court

emphasized the need to limit liability to a "'settled and particularized class'" rather

than extend it to "'the public.'"[21]  Therefore, while it acknowledged that certain

other jurisdictions had already adopted a "foreseeability rule" to narrow liability, it

narrowed liability further by declining to accept such a rule without including "an

additional requirement for conduct on the part of the [defendants] linking them to

the noncontractual party or parties."[22]

### 1.    The Altar Fund and Claude Chagnon

Plaintiffs first argue that the negligence claims of The Altar Fund and

Claude Chagnon should not have been dismissed because there was a finding

elsewhere in the Opinion that these plaintiffs had relied on the NAV statements

prior to their initial investments.[23]  In considering the Citco Defendants' motion

for summary judgment of plaintiffs' Section 10(b) claims, this Court found that

there was an issue of fact regarding whether either plaintiff had relied on the NAV

---

[20]     *Credit Alliance*, 65 N.Y.2d at 549 (quoting *Ultramares Corp. v. Touche*, 255 N.Y. 170, 180 (1931)).

[21]     *Id.* at 550 (quoting *White v. Guarente*, 43 N.Y.2d 356, 363 (1977)).

[22]     *Id.* at 553 n.11 (internal quotations omitted).

[23]     *See* Pl. Mem. at 3-4.

statements prior to their initial investments.[24]

There is no reason why the same conclusion should not apply with respect to the negligence claim of The Altar Fund and furthermore no reason to have dismissed the claim. The evidence shows that Richard Lombardi of The Altar Fund was sent monthly NAV statements by Citco NV while The Altar Fund was an "interested party" and that he used the NAV information in his analysis of whether to invest.[25] The Citco Defendants must have known that the NAV statements they sent to interested parties would be used to determine whether to invest in the Funds. Because Lombardi received these statements directly from Citco NV and testified that he relied on the NAVs in his analysis, all three prerequisites of the *Credit Alliance* test are met, and summary judgment should therefore have been denied with respect to this claim.

However, this is not true with respect to Claude Chagnon's negligence claim. Chagnon testified that he had relied on the NAV statements received by Fondation Lucie et Andre Chagnon in deciding to personally invest in

---

[24]     *See Pension Comm.*, 2009 WL 29649, at *10, *11.

[25]     Deposition Transcript of Richard Lombardi, Ex. 13 to Declaration of Amy C. Brown ("Brown Decl."), plaintiffs' counsel, at 428:13-430:21.

the Funds.[26]  There is no evidence that the Citco Defendants knew the NAV

statements – presumably sent to the Foundation after its investments in 2001 –

would be used by Chagnon in 2002 with respect to his personal investments.[27]

There is also no evidence that the Citco Defendants communicated directly with

Chagnon prior to his investment.  While plaintiffs have cited to evidence that

Chagnon relied on the statements, they have failed to offer evidence as to the first

and third criteria of the *Credit Alliance* test.  As a result, Chagnon's negligence

claim fails.

> ### 2.  Kuwait and Middle East Financial Investment Company ("KMEFIC")

---

[26]     *See* Deposition Transcript of Claude Chagnon, Ex. 13 to Brown
Decl., at 135:15-136:8.

[27]     *See* Second Amended Complaint ("SAC") ¶ 15(cc) and (ee)
(indicating that Fondation Lucie et Andre Chagnon made two investments in
Lancer Offshore in March and December 2001 and Claude Chagnon made one
investment in May 2002).  The facts here are similar to the facts in *Credit
Alliance*.  There, an accounting firm was held not to be liable in negligence to
plaintiff creditors who had extended financing to a company based on misleading
audited financial statements prepared by the accounting firm.  *See* 65 N.Y.2d at
541-42.  The Court of Appeals found that there was no allegation of "a particular
purpose for the reports' preparation" nor was there "the prerequisite conduct on
the part of the accountants."  *Id.* at 553.  Here, the NAV statements, like the
financial statements of a company, indicate the performance of the Funds.
Without evidence that Citco NV knew that the statement it sent to the Foundation
after its investment would be used by an individual to decide whether or not to
personally invest, there can be no liability in negligence under New York law.

10

Plaintiffs also argue that the Court erroneously dismissed the negligence claims of KMEFIC based on purchases KMEFIC made on behalf of the Kuwait Foundation for Advancement of Sciences ("KFAS").[28] These purchases included those made in January 2000 and January 2002.[29] The Court had considered the evidence relating to KFAS' reliance on the NAV statements and had found the evidence insufficient to show that KFAS relied on the analysis of KMEFIC's investment analyst, Mohammed Almarzook, or that KFAS had relied on the NAV statements itself.[30] Because the issue has been fully addressed by the Court and plaintiffs are impermissibly rearguing an issue without any citation to law or fact overlooked by the Court, their motion for reconsideration of these claims is denied.

### 3. Bombardier Trust (UK), Bombardier (Canada), and Fondation J. Armand Bombardier

---

[28]   *See* Pl. Mem. at 4.

[29]   *See id.* at 5.

[30]   *See Pension Comm.*, 2009 WL 29649, at *10. In fact, the deposition testimony highlighted by plaintiffs to show that KFAS did rely on Almarzook actually suggests the opposite. Almarzook had testified that he had no involvement in servicing KFAS, had no contact with the client, and had no idea what KFAS had discussed with KMEFIC in terms of requirements for its investments. *See* Deposition Transcript of Mohammed Almarzook, Ex. 10 to Brown Decl., at 162:10-165:13.

11

Plaintiffs next argue that the negligence claims of Bombardier Trust

(UK), Bombardier Trust (Canada), and Fondation J. Armand Bombardier that were

based on their initial purchases of shares in the Lancer Funds should not have been

dismissed.[31]  Plaintiffs contend that Bombardier Trust U.S., a related fund,

received its first NAV statement from Citco NV following its initial investment in

Lancer Offshore and continued to receive NAV statements thereafter.[32]  They

argue that because Bombardier Trust (UK), Bombardier Trust (Canada), Fondation

J. Armand Bombardier, and Bombardier Trust U.S. ("Bombardier Trusts") share

the same due diligence team and there is evidence that this team reviewed these

NAV statements, there is a question of fact that regarding whether the team relied

on the NAV information in recommending that Bombardier Trust (UK),

Bombardier Trust (Canada), and Fondation J. Armand Bombardier invest in the

Fund.[33]

Although I "overlooked" the evidence now highlighted by plaintiffs

when granting summary judgment on the negligence claims of Bombardier Trust

(UK), Bombardier Trust (Canada), and Fondation J. Armand Bombardier, now

---

[31]    *See* Pl. Mem. at 6.

[32]    *See id.*

[33]    *See id.*

12

that I have considered this evidence, the outcome is unchanged. At the time that

Citco NV sent the NAV statement to Bombardier Trust U.S., the other three

Bombardier Trusts were potential investors. There is no evidence that Citco NV

communicated directly with Bombardier Trust (UK), Bombardier Trust (Canada),

or Fondation J. Armand Bombardier prior to their investments in the Lancer Funds

or even knew the Bombardier Trusts shared the same due diligence team at the

time it sent the NAV statement to Bombardier Trust U.S. Thus, the plaintiffs have

failed to meet the third prerequisite of the *Credit Alliance* Test.

Similarly, plaintiffs have offered no evidence that Citco NV knew

that this NAV statement would be used by Bombardier Trust (UK), Bombardier

Trust (Canada), and Fondation J. Armand Bombardier for the purpose of

determining whether to invest. The evidence shows that Citco NV sent this

statement to Bombardier Trust U.S. after its investment in Lancer Offshore.[34] It

would be reasonable to conclude that Citco NV knew it was preparing and sending

the NAV statement for the purpose of aiding Bombardier Trust U.S. in monitoring

its investment; the "end and aim" of the NAV statement was certainly not to help

it or anyone else determine whether to invest in the Funds. Plaintiffs have

---

[34]     *See* SAC ¶ 15(n) (alleging that Bombardier Trust U.S. made its first
investment in Lancer Offshore on October 1, 1999); 10/11/99 NAV Statement
from Citco NV to Bombardier Trust U.S., Ex. 7 to Brown Decl.

13

therefore also failed to establish the first prerequisite of the *Credit Alliance* test. The negligence claims of these plaintiffs was therefore properly dismissed.[35]

4.    **The Pension Committee of the University of Montreal ("University of Montreal"), Andre Chagnon, Fondation Lucie et Andre Chagnon ("Fondation Chagnon"), and The Pension Committee of the Pension Plan for the Régime de retraite de la Corporation de l'Ecole Polytechnique ("Polytechnique")**

Because I "overlooked" plaintiffs' evidence regarding the initial investments of University of Montreal, Andre Chagnon, Fondation Lucie et Andre Chagnon, and Polytechnique, plaintiffs' motion for reconsideration of these claims is also granted. However, the claims of Andre Chagnon, Fondation Chagnon, and Polytechnique are again dismissed based on the same reasoning that the claims of Claude Chagnon and the three Bombardier Trusts were dismissed.

The negligence claim pertaining to the initial investment of the University of Montreal is the only claim in this group that should not have been

---

[35]    Plaintiffs' reliance on *LaSalle National Bank v. Duff & Phelps Credit Rating Company*, 951 F. Supp. 1071 (S.D.N.Y. 1996), is unavailing. In *LaSalle*, the court ruled that a bond rating company could be held liable to investors who had relied on its rating in the Offering Memoranda. *See id.* at 1095. The court there placed special emphasis on the fact that the rating company was aware that its rating would be used to enable the issuer to sell bonds to investors. *See id.* at 1093. Indeed, the Offering Memoranda stipulated that a precondition of the issuance of the bonds was that they be rated "AA" by the rating agency. *See id.* The court reasoned that the "end and aim" of the rating process was to ensure that rating so that the bonds could be sold to investors. As discussed, this is not the case here.

14

dismissed.  Germain Bourgeois, Director of Investments for the University of

Montreal from 1990 to March 2001, testified at his deposition that he had

reviewed and relied on NAV information in recommending to the University of

Montreal to invest in the Lancer Funds.[36]  A letter from Citco NV enclosing a

subscription document, Confidential Offering Memorandum, and a historical

performance record was also found in the files of the University of Montreal.[37]  By

sending Bourgeois a list of historical NAVs, together with a subscription

document and the Confidential Offering Memorandum, Citco NV must have

known that the NAV information would be used by Bourgeois in determining

---

[36]     Deposition Transcript of Germain Bourgeois ("Bourgeois Tr."), Ex. 9
to Declaration of Dyanne Feinberg ("Feinberg Decl."), Citco Defendants' counsel,
at 763:18-764:2.

[37]     5/12/98 Letter from Citco NV to Germain Bourgeois of University of
Montreal, Ex. 6 to Brown Decl.  The Citco Defendants argued, in their moving
papers, that plaintiffs had only alleged that the Citco Defendants created and
disseminated misleading monthly NAV statements and that plaintiffs therefore
cannot substitute reliance on the monthly statements for reliance on historical
NAV reports. *See* Defendants Citco Fund Services (Curacao), N.V. and the Citco
Directors' Reply Memorandum of Law in Support of Their Motion for Summary
Judgment at 3.  However, the Citco Defendants do not dispute that these historical
NAV reports compiled NAV information from the monthly NAV reports.  Because
no prejudice arises from imposing liability for misleading statements made in
these historical reports and because plaintiffs are permitted to amend their
pleadings to conform to the evidence, *see* Fed. R. Civ. P. 15(b), I will allow
plaintiffs to substitute reliance on the monthly statements for reliance on the
historical performance records.

15

whether to invest. The letter also establishes the requisite linking conduct.

Summary judgment should therefore have been denied on this claim.

The negligence claims of Andre Chagnon, Fondation Chagnon, and

the Polytechnique, however, must fail. Plaintiffs proffer evidence showing that

each of these investors relied on the due diligence of Bourgeois prior to making its

initial investments.[38] However, because there is no evidence to show that Citco

_____

[38]     Andre Chagnon testified that he was a member of the University of
Montreal Investment Committee. *See* Deposition Transcript of Andre Chagnon
("A. Chagnon Tr."), Ex. 11 to Brown Decl., at 24:22-25:4. He had also attended a
meeting in which Bourgeois had presented the Funds to the Committee for
consideration. *See* Minutes of the 110th Meeting of the University of Montreal
Pension Fund Investment Committee, Ex. 5 to Brown Decl. There is also
testimony in the record that Chagnon relied on another member of the committee
who in turn had relied on Bourgeois' analysis of the NAV statements. *See* A.
Chagnon Tr., Ex. 11 to Brown Decl., at 56:9-57:2; Gourdeau Tr., Ex. 9 to Brown
Decl., at 59:15-60:3.

With respect to Fondation Chagnon, plaintiffs argue that Bourgeois
recommended the Funds to the Foundation based on his reliance on the NAV
information that he received while at the University of Montreal. *See* Plaintiffs'
Amended Counterstatement Pursuant to Rule 56.1 ¶ 54. Although the references
to Bourgeois' deposition transcript do not appear to support plaintiffs' claim that
Bourgeois based his recommendation to Fondation Chagnon on the due diligence
he performed at the University of Montreal, it is undisputed that he was still
working at the University of Montreal in February 2001 when plaintiffs claim he
presented the Funds to the investment committee of the Fondation Chagnon. *See*
*id.*

Finally, according to Francois Morin, former Chairman of the
Investment Committee of Polytechnique, Bourgeois was an investment advisor for
the school at the time that Polytechnique made its first investment in the Funds.

16

NV knew they would rely on Bourgeois and no evidence that Citco NV

communicated directly with any of these plaintiffs, the first and third elements of

the *Credit Alliance* test are not satisfied, and their claims are again dismissed.

### 5.    Okabena Marketable Alternatives Fund ("Okabena")

In their discussion of their Section 10(b) claims, plaintiffs had offered

evidence to show that Okabena had justifiably relied on the Citco Defendants'

NAV information.  Because this evidence was "overlooked" by the Court in its

evaluation of plaintiffs' negligence claims, I must now analyze this evidence.

The evidence shows that Citco NV had sent Okabena a letter

enclosing a list of historical NAVs, the subscription document, and the

Confidential Offering Memorandum prior to Okabena's initial investment in the

Funds.[39]  Thus, there is at least a question of fact regarding whether the first and

third prongs of the *Credit Alliance* test are met.  Citco NV must have known at the

time it created and sent the list of historical NAVs that the list would be

considered by Okabena in its determination of whether to invest in Lancer

_____

*See* Deposition Transcript of Francois Morin, Ex. 13 to Brown Decl., at 24:9-11.
Morin testified that Bourgeois had discussed the Funds' "valuation of [] assets"
with him and that he understood the asset information to have come from Citco.
*See id.* at 84:16-85:3.

[39]    *See* 11/25/98 Letter from Citco NV to Bruce Lueck, President of
Okabena Investment Services, Inc., Ex. 6 to Brown Decl.

17

Offshore.  Also, the letter – which was sent directly by Citco NV to Mr. Bruce

Lueck, President of Okabena – is enough to establish linking conduct by the Citco

Defendants.[40]

There is also a question of fact with respect to whether Okabena

relied on the historical NAVs prior to its initial investment.  Adele Gorilla, a

financial analyst for Okabena, testified that Okabena did rely on the NAV

information.[41]  Although she does not testify that she or others actually relied on

the NAV information prior to Okabena's initial investment, Okabena's receipt of

NAV information prior to investment and Gorilla's testimony that Okabena had a

practice of reviewing NAV information raises an issue of fact regarding

Okabena's reliance on this information.  For these reasons, Okabena's negligence

claim should not have been dismissed.

### 6. The Hunnicutt Entities and the Corbett Family Charitable Foundation

Finally, plaintiffs argue that the Court also "overlooked" evidence

regarding the negligence claims of the Defined Benefit Plan for Hunnicutt Co.,

Inc. and IRA f/b/o William Hunnicutt VFTC as Custodian (together, "the

---

[40]     *See id.*

[41]     *See* Deposition Transcript of Adele Gorrilla, Ex. 12 to Brown Decl.,
at 150:2-13.

18

Hunnicutt Entities") and the Corbett Family Charitable Foundation.  William

Hunnicutt testified that he had obtained a historical performance report including

NAV information, the PPM, and the financial statement of the Fund from Lancer

Management and had reviewed this information prior to the Hunnicutt Entities'

investments in the Lancer Offshore in November 1999.[42]  Richard Corbett testified

that he had obtained NAV information from Hunnicutt and Lauer and had

reviewed this information prior to the Foundation's initial investment in Lancer

Offshore.[43]  The Citco Defendants knew they were creating the historical

performance report to help Lauer attract investors;[44] thus, they cannot argue that

they did not know the specific purpose for which the report was prepared.  The

evidence above also indicates that Hunnicutt and Corbett had relied on the report

---

[42]     *See* Deposition Transcript of William Hunnicutt ("Hunnicutt Tr."),
Ex. 13 to Brown Decl., at 340:17-341:13; SAC ¶ 15(nn), (oo).

[43]     *See* Deposition Transcript of Richard Corbett, Ex. 13 to Brown Decl.,
at 92:13-21, 123:22-124:17.

[44]     Indeed, as discussed, Citco NV had sent letters to other potential
investors, including Okabena, enclosing this list of historical NAVs for their
consideration in determining whether to invest in the Funds.  The Citco
Defendants further argue that it is unclear whether Citco NV was the author of the
reports upon which Hunnicutt and Corbett rely.  However, Hunnicutt had testified
at his deposition that the report said "Citco."  *See* Hunnicutt Tr. at 341:3-7.  In any
case, plaintiffs will be required to show at trial that the reports Hunnicutt and
Corbett relied upon in making their decisions to invest were historical NAV
reports created by Citco NV.

when considering whether to invest.

The Citco Defendants take issue instead with respect to plaintiffs' ability to satisfy the third prerequisite of *Credit Alliance*. They argue that Hunnicutt received the report from Lauer – or, in the case of Corbett, from Lauer and Hunnicutt – and that therefore Hunnicutt and Corbett had not directly communicated with the Citco Defendants.[45] However, the Citco Defendants must have known that Lauer, as the investment manager of the Funds, had copies of this report and that he would show the report to potential investors. Indeed, it is likely that Citco NV produced these reports at Lauer's direction for the purpose of sharing the information with potential investors.[46] Because there is a question of fact regarding the linking conduct of the Citco Defendants, the Citco Defendants' motion for summary judgment is now denied with respect to the negligence claims of the Hunnicutt Entities and the Corbett Family Charitable Foundation.

---

[45]   *See* Def. Mem. at 10.

[46]   Indeed, the same reasoning that the court used in *LaSalle* – upon which plaintiffs rely – applies here. *See* 951 F. Supp. at 1093. In *LaSalle*, the court found that defendant, a bond rating company, could nevertheless be liable to plaintiffs with whom defendant had no contact. *See id.* at 1093-94. The court reasoned that "[k]nowledge of the identity of each particular plaintiff is not necessary, however, if the defendant's representation is designed to target a 'select group of qualified investors' rather than 'the public at large.'" *See id.* at 1093 (quoting *Schwartz v. Michaels*, No. 91 Civ. 3538, 1992 WL 184527, at *32 (S.D.N.Y. July 23, 1992)).

## B.     Breach of Fiduciary Duty

The Citco Defendants argue that plaintiffs' breach of fiduciary duty claims should have been dismissed to the extent that their common law fraud claims were dismissed.[47]  This is because the Court had made a finding in its February 20, 2007 Opinion and Order on defendants' motions to dismiss that the breach of fiduciary duty claims in this action are fraud-based.[48]  Although the Citco Defendants failed to make this argument in their moving papers, it would be inappropriate to allow fraud-based breach of fiduciary duty claims to go to trial when the underlying fraud claims have been dismissed.  Thus, plaintiffs' breach of fiduciary duty claims must be dismissed to the same extent their fraud claims were dismissed in the January 5, 2009 Opinion and Order of this Court.

## C.     Aiding and Abetting Claims

The Citco Defendants also argue that those aiding and abetting claims for which plaintiffs have not shown reliance on the Citco Defendants' statements should have been dismissed.[49]  The Citco Defendants did not make this argument

---

[47]     *See* Def. Mem. at 2.

[48]     *See id.* at 2-3; *Pension Committee*, 2007 WL 528703, at *6 (holding that the fraud-based common law claims against the Citco Defendants fail for the same reason that the Section 10(b) claims fail).

[49]     *See* Def. Mem. at 5-6.

in their moving papers; in fact, they specifically sought partial summary judgment

on these claims, moving only with respect to the aiding and abetting claims prior

to June 2001 on the ground that plaintiffs could not prove scienter prior to this

date.[50]  Because a motion for reconsideration is not an opportunity to make new

arguments, the Citco Defendants' motion for reconsideration of these claims must

be denied.[51]

---

[50]      *See* Def. Summ. Judgment Mem. at 25.

[51]      It should nevertheless be noted that the Citco Defendants confuse
reliance on the aider and abettor's statements with reliance on the primary
wrongdoer's statements. Reliance on the aider and abettor's statements is not an
element of an aiding and abetting claim. *See Pension Comm.*, 2009 WL 29649, at
*7 (listing the elements of aiding and abetting common law fraud and aiding and
abetting breach of fiduciary duty). Instead, to prove that the Citco Defendants
aided and abetted the fraud, plaintiffs must show at trial that the underlying fraud
allegedly perpetrated by Lauer and Lancer Management existed and that they
reasonably relied on the statements of Lauer and Lancer Management. *See 484
Assocs., L.P. v. Moy*, No. 06 Civ. 2290, 2007 WL 683999, at *4 (S.D.N.Y. Mar. 5,
2007) ("Plaintiff cannot show reasonable reliance as to the underlying fraud
alleged, and his aiding and abetting fraud claim must be dismissed.") (citations
omitted). The same is true of the aiding and abetting breach of fiduciary duty
claims. Plaintiffs must show that they reposed trust in Lauer and Lancer
Management and that they relied on the expertise of Lauer and Lancer
Management. *See Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs.*,
388 F. Supp. 2d 292, 305 (S.D.N.Y. 2005) ("[I]n determining whether a fiduciary
relationship exists, 'New York courts conduct a fact-specific inquiry into whether
a party reposed confidence in another and reasonably relied on the other's superior
expertise or knowledge.'") (quoting *Facella v. Federation of Jewish
Philanthropies of New York, Inc.*, No. 98 Civ. 3146, 2004 WL 1700616, at *6
(S.D.N.Y. July 30, 2004)).

## IV.   CONCLUSION

For the reasons stated above, plaintiffs' and the Citco Defendants' motions for reconsideration are granted in part and denied in part. In sum:

1. Plaintiffs' motion for reconsideration with respect to the dismissal of the negligence claims pertaining to the initial investments of The Altar Fund, Claude Chagnon, Bombardier Trust (UK), Bombardier Trust (Canada), Fondation J. Armand Bombardier, University of Montreal, Andre Chagnon, Fondation Chagnon, Polytechnique, Okabena, the Hunnicutt Entities, and the Corbett Family Charitable Foundation is granted.

   a) The Citco Defendants' motion for summary judgment is denied with respect to the negligence claims of The Altar Fund, the University of Montreal, Okabena, and the Corbett Family Charitable Foundation.

   b) The Citco Defendants' motion for summary judgment is granted with respect to the negligence claims of Claude Chagnon, Bombardier Trust (UK), Bombardier Trust (Canada), Fondation J. Armand Bombardier, Andre Chagnon, Fondation Chagnon, and Polytechnique.

2. Plaintiffs' motion for reconsideration is denied with respect to the dismissal of the negligence claims KMEFIC made on behalf of KFAS.

23

3.    The Citco Defendants' motion for reconsideration with respect to the denial

of summary judgment on the breach of fiduciary duty claims is granted.  The

Citco Defendants' motion for summary judgment is granted on these claims

to the extent summary judgment was granted on the common law fraud

claims.

4.    The Citco Defendants' motion for reconsideration with respect to the

Court's refusal to grant summary judgment on the aiding and abetting

claims after June 2001 is denied.

The Clerk of the Court is directed to close these motions (document nos. 227 and

229).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          February 10, 2009

24

**- Appearances -**

**For the Plaintiffs:**

Scott M. Berman, Esq.
Anne Beaumont, Esq.
Amy C. Brown, Esq.
Robert S. Landy, Esq.
Lili Zandpour, Esq.
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

**For the Citco Defendants:**

Lewis Nathan Brown, Esq.
Dyanne Eyce Feinberg, Esq.
Terence M. Mullen, Esq.
Elizabeth A. Izquierdo, Esq.
Gilbride Heller & Brown
2 South Biscayne Blvd, One Biscayne Tower - Suite 1570
Miami, FL 33131
(305) 358-3580

Eliot Lauer, Esq.
Michael Moscato, Esq.
Curtis, Mallet-Prevost, Colt & Mosle, LLP
101 Park Avenue
New York, NY 10178
(212) 696-6192

**For the Receiver:**

Courtney Caprio, Esq.
Juan C. Enjamio, Esq.
Hunton & Williams
1111 Brickell Avenue
Miami, FL 33131
(305) 810-2500