UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PENSION COMMITTEE OF THE UNIVERSITY OF MONTREAL PENSION PLAN, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )   05 Civ. 9016 (SAS) (FM) |
| v. | )<br>)   ECF Case |
| BANC OF AMERICA SECURITIES, LLC, CITCO FUND SERVICES (CURACAO) N.V., THE CITCO GROUP LIMITED, INTERNATIONAL FUND SERVICES (IRELAND) LIMITED, PRICEWATERHOUSECOOPERS (NETHERLANDS ANTILLES), JOHN W. BENDALL, JR., RICHARD GEIST, ANTHONY J. STOCKS, KIERAN CONROY, DECLAN QUILLIGAN, and INTERCARIBBEAN SERVICES, LIMITED, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF
BANC OF AMERICA SECURITIES LLC'S MOTION TO STAY CITCO FUND
SERVICES (CURACAO) N.V.'S SECOND CROSS CLAIM**

Peter K. Vigeland
Paul M. Winke
Daniel C. Richenthal
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Defendant Banc of
America Securities LLC*

Defendant Banc of America Securities LLC ("BAS") submits this memorandum of law in support of its motion to stay, pending trial on plaintiffs' claims, the second cross claim for contribution asserted against BAS by defendant Citco Fund Services (Curacao) N.V. ("CFS") in its Amended Answer, Affirmative Defenses, and Cross-Claims, filed on July 20, 2009 ("Cross-Claims").

## ARGUMENT

CFS's second cross claim for contribution is predicated on a novel theory that BAS breached a duty of care owing to CFS. Cross-Claims ¶¶ 2-28. For the reasons set forth in BAS's memorandum of law in support of its motion to dismiss, filed September 3, 2009, this claim—the validity of which turns on an alleged tort duty unrecognized in New York law—should be dismissed. Irrespective of how or whether this Court rules on BAS's motion to dismiss, however, the second cross claim should be stayed pending trial on plaintiffs' claims.

## I. THERE IS A REASONABLE LIKELIHOOD THAT THE SECOND CROSS CLAIM WILL BE MOOTED

"The critical requirement for apportionment by contribution . . . is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought." *Raquet v. Braun*, 90 N.Y.2d 177, 183 (1997) (internal quotation marks omitted). CFS's second cross claim is premised on CFS's "calculat[ion] [of] the NAV of the Funds and distribut[ion]" of "NAV statement[s] to certain registered shareholders of the Funds." Cross-Claims ¶ 2. CFS alleges that a "material source" for CFS's "calculation of the NAV" was the "monthly reports prepared by [BAS]." *Id.* ¶ 3. Thus, CFS's argument runs, if "the NAV statements calculated by [CFS] were inaccurate, it was as a direct and proximate cause of inaccurate and misleading information negligently provided by [BAS] in its [r]eports." *Id.* ¶ 26.

But any allegedly negligent conduct of BAS cannot have been the cause of inaccurate net asset value ("NAV") statements, much less the requisite proximate cause. If, as plaintiffs assert in support of their intentional fraud claims, CFS intentionally "prepare[d] and distribute[d] NAV statements" that it "knew would mislead and cause damage to the Funds' investors" (Second Am. Compl. ¶ 230), then BAS's passing on of inflated prices and non-existent away positions would in no way have caused CFS to issue fraudulent NAV statements. Put differently, if CFS "artificially inflate[d] the Funds' NAVs, because the compensation paid by the Funds to [CFS] were [*sic*] based on the Funds' NAVs" (*id.* ¶ 249), then BAS's allegedly negligent failure to verify pricing and position data provided by Michael Lauer and Lancer Management LLC ("Lancer Management") would have played no role in CFS's intentional decision to issue inflated NAVs. Under these circumstances, CFS's intervening intentional act severs the liability of BAS, even assuming it acted negligently. *See, e.g.*, *Kush by Marszalek v. City of Buffalo*, 59 N.Y.2d 26, 33 (1983). In that case, any allegedly negligent conduct of BAS can be deemed a proximate cause of plaintiffs' harm—and thus can form the basis for a claim of contribution— only if CFS's intentional fraud was "reasonably foreseeable" to BAS. *Id.* CFS does not allege facts demonstrating that was so.[1]

New York allows an intentional tortfeasor to seek contribution from a negligent tortfeasor who contributed to the plaintiff's injury, "whether or not the culpable parties are allegedly liable for the injury under the same or different theories." *Raquet*, 90 N.Y.2d at 183 (internal quotation marks omitted). But under the facts alleged here, if, as alleged, CFS knowingly adopted inflated prices to "calculate[] the NAV of the Funds" (Cross-Claims ¶ 2), it matters not that BAS, as

---

[1] Conversely, of course, CFS's second cross claim will be mooted if the Citco Defendants are not found liable to plaintiffs at all.

prime broker, allegedly negligently passed along inflated prices from Lauer and Lancer Management.

## II.     THE SECOND CROSS CLAIM WILL DELAY AND COMPLICATE TRIAL ON PLAINTIFFS' CLAIMS, AND RISKS CONFUSING THE JURY

It makes eminent sense for plaintiffs' claims against CFS to be resolved before any claims between CFS and BAS are adjudicated, even if CFS's second cross claim is not mooted. CFS's claim, premised on the theory that "[BAS] owed a duty of care to [CFS]" (Cross-Claims ¶ 5), irrespective of the lack of any duty of care alleged by plaintiffs to be owed by BAS to them, raises a number of new factual issues (even assuming that these allegations by CFS state a valid cross-claim). These new issues include, among others, "standards in the prime brokerage industry" with respect to the relationship between a prime broker and a fund administrator with which it has no contractual relationship (*id.* ¶ 4); "communications, via fax, email and orally, with [CFS]," allegedly "evinc[ing]" BAS's "understanding" about CFS's use of reports provided by BAS (*id.* ¶ 15); and whether and to what degree CFS "relied on the data provided by [BAS]" (*id.* ¶ 13). In order to defend against CFS's second cross claim, BAS will have to engage in discovery on these and other issues pertinent to both liability and damages, likely delaying the trial scheduled for early January 2010.

Among other things, BAS would need to develop expert testimony regarding the lack of any tort duty owed to CFS. The declaration of BAS's expert—Dr. Richard Lindsey—focused on industry standards with respect to the relationship between a prime broker *and its client*, namely the Funds, whereas the "industry standards" to which CFS refers in the second cross claim are with respect *to CFS*, a fund administrator with which BAS had no contractual relationship (*see* Cross-Claims ¶ 4). BAS also may need to take testimony from CFS witnesses regarding, *inter alia*, their use of and reliance on BAS reports. Prior testimony of CFS employees is not

admissible against BAS (Fed. R. Evid. 804(b)(1)), and BAS will need to depose CFS's witnesses to defend against the second cross claim.

In any event, the addition of CFS's second cross claim to a trial on plaintiffs' claims would lengthen and complicate an already lengthy and complicated proceeding. It would present a risk of jury confusion, as the jury would be presented, *inter alia*, with lay and expert testimony and evidence regarding BAS's alleged duty to CFS, a distinct issue from the question of duties owed by CFS to plaintiffs, but which the jury may struggle to distinguish.

Finally, as discussed above, if it turns out that the jury finds CFS liable to plaintiffs for intentional fraud or finds the Citco Defendants not liable at all, the Court and the parties will have engaged in unnecessary work regarding discovery, briefing before trial (*e.g.*, on summary judgment), and briefing at trial (*e.g.*, on jury instructions regarding the second cross claim). Such efforts might prove unnecessary in any event, because the jury will be asked to apportion fault between the defendants at trial and PricewaterhouseCoopers (Netherlands Antilles) under New York General Obligations Law § 15-108(a). *See, e.g.*, *Schipani v. McLeod*, 541 F.3d 158, 163 (2d Cir. 2008). Knowing the damages for which CFS is responsible and the theory under which it is found liable would be helpful in any future settlement discussions between it and BAS, potentially precluding the need for a trial on the second cross claim at all.

- 5 -

## CONCLUSION

For the foregoing reasons, BAS's motion to stay CFS's second cross claim for contribution should be granted.

Dated: New York, New York
September 3, 2009

/s Peter K. Vigeland
Peter K. Vigeland
Paul M. Winke
Daniel C. Richenthal
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Tel.: (212) 230-8800
Fax: (212) 230-8888
Email: peter.vigeland@wilmerhale.com

*Attorneys for Defendant Banc of America Securities LLC*