UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X

THE PENSION COMMITTEE OF THE
UNIVERSITY OF MONTREAL
PENSION PLAN, *et al.*,

              Plaintiffs,

          - against -

BANC OF AMERICA SECURITIES,
LLC, CITCO FUND SERVICES
(CURACAO) N.V., THE CITCO GROUP
LIMITED, INTERNATIONAL FUND
SERVICES (IRELAND) LIMITED,
PRICEWATERHOUSECOOPERS
(NETHERLAND ANTILLES), JOHN W.
BENDALL, JR., RICHARD GEIST,
ANTHONY STOCKS, KIERAN
CONROY, and DECLAN QUILLIGAN,

              Defendants.

------------------------------------------------------ X

OPINION AND ORDER

05 Civ. 9016 (SAS)



SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

        The Securities Litigation Uniform Standards Act of 1998 ("SLUSA") preempts state-law actions in which a plaintiff alleges "an untrue statement or omission of a material fact in connection with the purchase or sale of a *covered*

*security*."[1]  The question presented here is whether SLUSA preemption applies where plaintiffs purchased, sold, or held shares in hedge funds that are not covered securities under SLUSA but that maintain a portfolio that includes covered securities.  For the reasons stated below, I conclude that SLUSA does not require preemption in such a scenario.  To hold otherwise would extend the reach of SLUSA to any investment vehicle with covered securities in its portfolio.[2]

## II.  BACKGROUND[3]

A group of investors brings this action to recover losses stemming from the liquidation of two British Virgin Islands based hedge funds (the "Funds") in which they held shares.[4]  The Funds were managed by Lancer Management Group LLP and its principal Michael Lauer – neither of which are defendants in this action.[5]  In July 2003, the Funds were placed into receivership in the Southern

---

[1]  15 U.S.C. § 77p(b) (emphasis added).

[2]  Neither the parties nor the Court has found a single case that applied SLUSA preemption to an investment in a hedge fund.

[3]  For a more detailed recitation of the undisputed material facts, *see Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 592 F. Supp. 2d 608 (S.D.N.Y. 2009).

[4]  *See* Rule 56.1 Statement of Undisputed Facts of the Citco Defendants in Support of Their Second Motion for Partial Summary Judgment ("Def. 56.1") ¶ 2; Plaintiffs' Counterstatement Pursuant to Rule 56.1 in Opposition to Second Motion for Partial Summary Judgment of the Citco Defendants ("Pl. 56.1") ¶ 2.

[5]  *See* Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2.

District of Florida, resulting in plaintiffs' loss of over $550 million.[6] Plaintiffs bring various claims under federal and New York law against the Funds' former directors, Kieran Conroy and Declan Quilligan,[7] and administrator, Citco Fund Services (Curacao) N.V. ("Citco NV") (collectively, the "Citco Defendants").[8] The Citco Defendants now bring a second motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that plaintiffs' state-law causes of action are preempted by SLUSA.

### III. DISCUSSION

"A [SLUSA] 'covered security' is one traded nationally and listed on a regulated national exchange or issued by an investment company that is registered, or files registration statements, under the Investment Company Act of 1940."[9] The Citco Defendants do not argue that the Funds' shares are covered

---

[6] *See* Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3.

[7] Plaintiffs represent that they are not pursuing any claims against the estate of the late defendant Anthony Stocks. *See* Pl. 56.1 ¶ 5.

[8] Although a defendant in this action, the Citco Group Limited does not join in this motion because plaintiffs assert no state-law claims against it.

[9] *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 83 (2006) (citing 15 U.S.C. § 77p(f)(3)). In addition to exchange traded securities, covered securities include variable annuities and mutual funds that are issued by a registered investment company. *See, e.g.*, *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 109 (2d Cir. 2001) ("[B]ecause variable annuities are securities, and because the separate accounts used for marketing these products are registered

securities.[10] Rather, they argue for SLUSA preemption on the ground that a portion of the Funds' portfolios included, or purported to include, covered securities.[11] The determination of whether SLUSA preemption applies turns on a single – and straight forward – question: whether the statements were made in connection with plaintiffs' purchase or sale of covered securities.

Plaintiffs allege that various untrue statements of material fact were

---

with the SEC under the Investment Company Act, the removal clause of [SLUSA] is satisfied."); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1000 (C.D. Cal. 2002) ("Because Morgan Stanley has provided ample, undisputed evidence that the mutual fund is a security issued by a registered investment company, the court finds that it has met its burden of demonstrating that the shares of the Morgan Stanley Liquid Asset Fund purchased with plaintiff's deposited funds are 'covered securities' within the purview of SLUSA.").

[10]   *See* Memorandum of Law of the Citco Defendants in Support of Their Second Motion for Partial Summary Judgment ("Def. Mem.") at 7-8 (arguing only that the "fraudulent scheme at issue involved misrepresentations regarding purported *purchases of covered securities by the Lancer Funds*, as well as misrepresentations relating to the valuation of covered securities actually held by the Lancer Funds") (emphasis omitted and added); *see also* Plaintiffs' Memorandum of Law in Opposition to Second Motion for Partial Summary Judgment of the Citco Defendants ("Pl. Opp.") at 3 ("The Lancer Funds' shares which Plaintiffs purchased were never listed on [regulated, national] exchanges and therefore are not 'covered securities' – indeed, the Citco Defendants concede this point.").

[11]   *See* Def. Mem. at 2 ("In this case, the Plaintiffs invested in shares of an intermediate investment vehicle (the Lancer Funds), which in turn invested, or purported to invest, in covered securities."); Pl. Opp. at 4 ("Although the Lancer Funds' shares are not 'covered securities,' some of the securities in their portfolios were.").

made by the Citco Defendants.[12] According to plaintiffs, for more than two years, the Citco Defendants prepared and distributed materially false monthly statements regarding the net asset value ("NAVs") and other performance information for the Funds.[13] Plaintiffs also claim that the Citco Defendants failed to alert investors to the fact that the Funds' shares were greatly overvalued after they learned of this overvaluation.[14] Plaintiffs contend that the Citco Defendants' overvaluation of the Funds stemmed from (1) the "fail[ure] to conduct portfolio reconciliations consistently and properly;" (2) the "overvalu[ation of] restricted shares in the Lancer Funds' portfolios by using market prices for free-trading shares;" and (3) the "overvalu[ation of] warrants in the Lancer Funds' portfolios . . . ."[15] Plaintiffs separately claim, in relevant part, that Lauer provided falsified valuations to the Citco Defendants, which were then used in calculating the NAVs.[16]

---

[12] *See* Second Amended Complaint ("SAC") ¶¶ 113-114 (describing alleged untrue statements made by Lauer); *id.* ¶¶ 228-229 (describing alleged untrue statements made by the Citco Defendants).

[13] *See id.* ¶¶ 228-229 (titled, "The Misrepresentations by Citco NV and the Citco Directors"); *id.* ¶¶ 192-272 (setting forth the remaining allegations of misrepresentations and misconduct).

[14] *See id.* ¶¶ 231-272.

[15] Expert Report of James C. Collins, plaintiffs' expert, Ex. 1 to the Declaration of Robert S. Landy, plaintiffs' counsel, at 5.

[16] *See* SAC ¶¶ 354-355, 362. The Citco Defendants argue that Lauer's fraudulent scheme also involved misrepresentations that a "majority" of the Lancer

Only the alleged misstatements by the Citco Defendants are relevant for an analysis of SLUSA preemption. "[T]he conduct of [a] *defendant* is [ ] central to [a] SLUSA analysis and [ ] the mere allegation of misrepresentations somewhere in the complaint is not sufficient for SLUSA preemption."[17] Because the Citco Defendants' alleged untrue statements concern only the valuation of the *Funds* and their restricted shares and warrants, those statements were not made "in connection with" the purchase and sale of *covered* securities. Because plaintiffs purchased shares in hedge funds, rather than covered securities, SLUSA does not

---

Funds' assets would be invested in national exchange-traded securities. Def. Mem. at 8 ("Plaintiffs expressly allege misrepresentations made by *Lauer* in the Funds' PPMs regarding the purported purchase of covered securities.") (citing SAC ¶¶ 113-114) (emphasis added). *Accord id.* ("As alleged by the Plaintiffs, *Lauer's* fraudulent scheme involved misrepresentations that a 'majority' of the Lancer Funds' assets would be invested in major exchange-traded securities.") (emphasis added); *id.* at 8-9 ("At deposition, certain representatives of the Plaintiffs testified that it was their understanding that assets of the Lancer Funds would be invested in exchange-traded securities."). These misrepresentations, however, are not the focus of this Complaint. *See, e.g.*, SAC ¶ 107 ("Lauer and Lancer Management, for their part, provided little or no information to investors about the identity, quantity or value of the securities in the Funds' portfolios or the Funds' investment strategy.").

[17] *LaSala v. Lloyds TSB Bank, PLC*, 514 F. Supp. 2d 447, 472 (S.D.N.Y. 2007) (emphasis added). *Accord Ring v. AXA Fin., Inc.*, 483 F.3d 95, 101 (2d Cir. 2007) ("[W]e should not preempt and dismiss a suit that alleges fraud occurred in connection only with a promise in a contract that does not relate to a 'covered security' even where another promise in the same contract does concern a 'covered security.'").

6

preempt plaintiffs' state-law claims.[18]

The Citco Defendants ask this Court to look beyond SLUSA's plain meaning and hold that the Citco Defendants' alleged untrue statements concerning the *Funds* were made in connection with the purchase or sale of covered securities. In so arguing, the Citco Defendants rely on the Supreme Court's decision in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, in which the Court instructed the lower courts to interpret the phrase "in connection with" broadly, and stated that "'it is enough that the fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or by someone else.'"[19] Drawing on this statement – and I note taking it out of context – the Citco Defendants contend that "any claim that the Citco Defendants misrepresented the value of the Lancer Funds' portfolios is necessarily dependent upon Lauer's misrepresentation of the value of 'covered securities' purportedly held in the Lancer Funds. . . . [T]hus it cannot be disputed that the claims against the Citco Defendants 'coincide with a securities

---

[18] *See Ring*, 483 F.3d at 101 (holding that the contract at issue was not a covered security merely because it was purchased in connection with a variable annuity, which is a covered security); *LaSala*, 514 F. Supp. 2d at 478 (noting, without deciding, that SLUSA did not preempt plaintiffs' state-law claims where plaintiffs did not allege that the defendant "possessed the motive of inducing the purchase" of covered securities and the alleged misrepresentations did not "involve [covered] securities in a direct sense").

[19] Def. Mem. at 13 (quoting *Dabit*, 547 U.S. at 85).

7

transaction.'"[20]

The Supreme Court in *Dabit* addressed the narrow question of whether SLUSA preempted state-law claims brought by holders of securities, as well as those of purchasers and sellers.[21] Close to forty years ago, the Supreme Court rejected the view that "an alleged fraud is 'in connection with' a purchase or sale of securities only when the plaintiff himself was defrauded into purchasing or selling particular securities."[22] Based on this preference for a broad reading of the "in connection with" requirement, *Dabit* held that SLUSA preempts claims by

---

[20] *Id.* at 12 (quoting *Dabit*, 547 U.S. at 85) (quotation marks omitted). *Accord id.* (citing *Fisher v. Kanas*, 487 F. Supp. 2d 270 (E.D.N.Y. 2007) (stating that SLUSA "has been interpreted broadly by the Supreme Court in *Dabit* to include any misrepresentation touching upon the purchase or sale of securities" and holding that plaintiffs' state-law claims were preempted because plaintiffs alleged that the class suffered damages as a result of purchasing covered securities at an inflated price due to the defendants' misleading proxy statements)); Reply Memorandum of Law of the Citco Defendants in Support of Their Second Motion for Partial Summary Judgment ("Def. Reply") at 8 n.5 ("'[T]he alleged misrepresentations are not required to contain specific securities information or investment advice in order to coincide with the securities transaction.'") (quoting *Levinson v. PSCC Services, Inc.*, No. 09 Civ. 269, 2009 WL 5184363, at *9 (D. Conn. Dec. 23, 2009)).

[21] *See Dabit*, 547 U.S. at 77-78.

[22] *Id.* at 85 (citing *Superintendent of Ins. of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971); *SEC v. Zandford*, 535 U.S. 813, 822-23 (2002) (holding that a broker's misappropriation of proceeds from sales of securities he made on his clients' behalf was "in connection with" the purchase and sale of securities)).

holders as well purchasers and sellers.[23] In so holding, the Supreme Court reasoned that the fraud alleged need only "coincide" with a scheme involving covered securities.[24]

The interpretation of SLUSA urged by the Citco Defendants stretches the statute beyond its plain meaning. There are no grounds on which to justify applying *Dabit* to statements made by the Citco Defendants concerning *uncovered hedge funds* – even when a portion of the assets in those funds include covered securities. This outcome is required because the alleged fraud relates to those hedge funds rather than to the covered securities in the portfolios.

The Citco Defendants also rely in large part on a recent District of Connecticut decision, *Backus v. Connecticut Community Bank*.[25] The plaintiffs in *Backus* brought state-law claims against a bank that held their pooled retirement funds in a collective investment account to be placed under Bernard Madoff's

---

[23]  *Id.*

[24]  *Id. Accord id.* ("The requisite showing, in other words, is 'deception in connection with the purchase or sale of any [covered] security,' not deception of an identifiable purchaser or seller.") (quoting *United States v. O'Hagan*, 521 U.S. 642, 651 (1997)). Although the Supreme Court did not use the word "covered" before "security" when quoting *O'Hagan*, its use is implied. *O'Hagan* is a section 10(b) case. *O'Hagan* was not concerned with whether a security was "covered" as section 10(b) has no "covered securities" requirement. In addition, both parties in *Dabit* conceded that the securities at issue were covered.

[25]  *See* No. 09 Civ. 1256, 2009 WL 5184360 (D. Conn. Dec. 23, 2009).

investment management.[26] The bank invested the account in shares of BLM 1 and BLM 2 – Madoff entities supposedly holding securities for tax-qualified retirement plans and IRA accounts.[27] The *Backus* court determined that "the individual securities fraudulently represented to be bought, sold, and held by the BLM 1 and BLM 2 entities are covered securities. These securities, not the BLM entities, are at the heart of this case."[28] The court then determined that the bank's alleged untrue statements purporting to detail the activity, holdings, and value of plaintiffs' accounts were made in connection with the purchase or sale of covered securities and plaintiffs' state-law claims were therefore preempted under SLUSA.[29]

The Citco Defendants suggest that this Court should follow *Backus* and find preemption because "[p]laintiffs' claims relate to their investment in

---

[26] *See id.* at *1.

[27] *See id.* at *2. I note that the BLM entities were nothing but ghost entities – easily pierced. Furthermore, the depositor placed money in the bank which in turn invested in shares of the Madoff entities. The *Backus* investors sued the bank that purchased the shares of these entities. Putting aside that I suspect that this case is wrongly decided, it is also distinguishable. *First*, plaintiffs in *Backus* did not buy shares in the Madoff funds. *Second*, the Madoff funds did not exist and had no assets. Thus, plaintiffs could claim that they deposited their money in the bank for the purpose of purchasing covered securities. None of that is true here.

[28] *Id.* at *5.

[29] *See id.* at *7 (quoting Complaint ¶ 63).

the . . . Funds, which in turn invested in (or purported to invest in) covered securities."[30] Unlike *Backus*, however, the covered securities are not "at the heart" of this case. The purchase and sale of the *Funds'* shares are at the heart of this case.[31]

The Citco Defendants also assert that four district court cases involving investments made by banks acting as trustees of trust accounts are analogous to the circumstances presented here.[32] These cases are all

---

[30]   Def. Mem. at 13-14.

[31]   The Citco Defendants point out that in addressing an argument in their first summary judgment motion – that the federal securities laws should not apply to foreign securities transactions – this Court held that "the conduct that directly caused harm" to plaintiffs for purposes of subject matter jurisdiction was "*Lauer's purchase of listed securities at inflated prices* and his fraudulent advice regarding the valuation of unlisted securities." *Pension Comm.*, 592 F. Supp. 2d at 626 (emphasis added) (quotation marks omitted). *First*, this statement was directed at *Lauer's* conduct – not that of the Citco Defendants. *Second*, the distinction between purchases of shares in the *Funds* and the *Funds' purchases* of a portfolio of investments that included covered securities is of paramount importance to the SLUSA analysis. Finally, I also found that jurisdiction was further supported by the "significant communications [that] took place between Citco NV and Lauer in the United States with regard to Citco NV's calculation of the NAVs." *Id.* at 626-27.

[32]   *See* Def. Mem. at 14 n.11 (citing *Horattas v. Citigroup*, 532 F. Supp. 2d 891, 897-99, 901-03 (W.D. Mich. 2007); *Kutten v. Bank of Am., N.A.*, No. 06 Civ. 937, 2007 WL 2485001, at *7-*8 (E.D. Mo. Aug. 29, 2007), *aff'd*, No. 07 Civ. 3565, slip op. at 4 (8th Cir. June 16, 2008); *Rabin v. JPMorgan Chase Bank, N.A.*, No. 06 Civ. 5452, 2007 WL 2295795, at *7 (N.D. Ill. Aug. 3, 2007)); Def. Reply at 5 (citing *Spencer v. Wachovia Bank, N.A.*, No. 05 Civ. 81016, 2006 WL 3408043, at *6-8 (S.D. Fla. May 10, 2006)).

distinguishable. In each case, the plaintiff deposited his or her money in a bank *account* – not a Fund in which shares are purchased – managed by a trustee who then made allegedly misleading statements regarding the trustee's use of the plaintiff's money to purchase, sell, or hold *covered* securities. The plaintiff did not purchase or hold shares in the trust accounts, rather, they merely made deposits into those accounts. The trustee (the bank) then invested the funds held in those accounts in covered securities. By contrast, the Citco Defendants made allegedly misleading statements in connection with plaintiffs' purchase, sale, or holding of *uncovered* securities – namely shares of the Funds.[33]

## IV. CONCLUSION

It is for Congress, not this Court, to extend SLUSA's "in connection with" requirement to apply to untrue statements concerning the purchase, sale, and holding of shares of unregistered hedge funds like the Funds at issue here. Accordingly, the Citco Defendants' second motion for partial summary judgment is denied. The Clerk of the Court is directed to close this motion (Docket No. 322).

---

[33] Moreover, these cases have been criticized as applying "the 'in connection with' requirement too loosely and in a way not consistent with SLUSA or the Supreme Court . . . decisions construing SLUSA." *Fishback v. Memory Gardens Mgmt. Corp.*, No. 08 Civ. 0216, 2008 WL 2037308, at *1 (S.D. Ind. May 12, 2008) (disagreeing with *Horattas* and holding that SLUSA did not preempt plaintiff's state-law claims).

SO ORDERED:

/s/ Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          February 16, 2010

## - Appearances -

**For the Plaintiffs:**

Scott M. Berman, Esq.
Anne E. Beaumont, Esq.
Amy C. Brown, Esq.
Philip A. Wellner, Esq.
Robert S. Landy, Esq.
Lili Zandpour, Esq.
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, New York 10019
(212) 833-1100

**For the Citco Defendants:**

Lewis N. Brown, Esq.
Dyanne E. Feinberg, Esq.
Terence M. Mullen, Esq.
Elizabeth A. Izquierdo, Esq.
Gilbride, Heller & Brown, P.A.
One Biscayne Tower, 15th Floor
2 South Biscayne Blvd.
Miami, Florida 33131
(305) 358-3580

Eliot Lauer, Esq.
Michael Moscato, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178
(212) 696-6000

**For Defendant Banc of America Securities LLC:**

Peter K. Vigeland, Esq.
Dawn M. Wilson, Esq.
Paul M. Winke, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
(212) 230-8800