UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

THE PENSION COMMITTEE OF THE
UNIVERSITY OF MONTREAL
PENSION PLAN, *et al.*,

        Plaintiffs,

- against -

BANC OF AMERICA SECURITIES,
LLC, CITCO FUND SERVICES
(CURACAO) N.V., THE CITCO GROUP
LIMITED, INTERNATIONAL FUND
SERVICES (IRELAND) LIMITED,
PRICEWATERHOUSECOOPERS
(NETHERLAND ANTILLES), JOHN W.
BENDALL, JR., RICHARD GEIST,
ANTHONY STOCKS, KIERAN
CONROY, and DECLAN QUILLIGAN,

        Defendants.

------------------------------------------------------ X

**OPINION AND ORDER**

05 Civ. 9016 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/10/10

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

        A group of investors brings this action to recover losses stemming from the liquidation of two British Virgin Islands based hedge funds in which they held shares: Lancer Offshore, Inc. ("Lancer Offshore") and OmniFund Ltd.

("OmniFund") (collectively, the "Lancer Funds"). Although the action involves the claims of ninety-six plaintiff investors, on February 1, 2008, I ordered that the case would proceed initially on the claims of twenty plaintiffs ("Plaintiffs"). The only remaining defendants are the Lancer Funds' former administrator, Citco Fund Services (Curacao), N.V. ("CFS-Curacao"), its parent company, The Citco Group Limited, and former Lancer Offshore directors who were officers of CFS-Curacao (collectively, the "Citco Defendants").

In preparation for trial, both Plaintiffs and the Citco Defendants have retained experts. On February 22, 2010, I granted in part and denied in part several motions *in limine* to exclude and/or limit the proposed testimony of several of those witnesses.[1] Plaintiffs now move to exclude the proposed testimony of another expert witness, Boris Onefater. For the reasons discussed below, that motion is denied.

## II. BACKGROUND

### A. Scope of Proposed Testimony

The Citco Defendants have retained Onefater as an expert on the "industry standards of care for prime brokers of hedge funds during the time

---

[1] *See generally Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC, et al.*, No. 05 Civ. 9016, 2010 WL 648369 (S.D.N.Y. Feb. 22, 2010).

period from 1997 to 2002."[2] During that period, Banc of American Securities ("BAS"), which was originally a defendant in this case but has since settled, acted as prime broker for the Lancer Funds. At trial, Onefater intends to opine that BAS, as broker of the Lancer Funds, failed to comply with industry standards,[3] that its failure to do so resulted in BAS providing "misleading and inaccurate information . . . to the Lancer Funds' administrator and auditor," and that this information "was ultimately conveyed to the fund's [sic] investors through monthly NAV statements and the audited financial statements."[4]

### B. Relevant Qualifications

Onefater is the founder and President of Constellation Investment Consulting Corp. ("Constellation Investment"), "an investment management consulting firm with a particular focus on hedge funds, fund of funds, regulated investment companies, retail, institutional and global asset managers, and service providers including prime brokers, custodians and fund administrators."[5] He received a Bachelor of Science degree, with a double major in Accounting and

---

[2] Expert Report of Boris Onefater ("Onefater Report"), Exs. A and B to Declaration of Phillip A. Wellner ("Wellner Decl."), counsel for Plaintiffs, ¶ 2.

[3] See id. ¶ 4.

[4] Id. ¶ 6.

[5] Id. ¶ 7.

Science, from New York University in 1988 and became a Certified Public Accountant in 1990.[6]

For the majority of his career, he was employed by, and later a partner at, Deloitte & Touche LLP ("Deloitte"), a large and well-known professional services firm.[7] At Deloitte, he "had responsibility for all services that Deloitte offered to its hedge fund and fund of fund [sic] clients[.]"[8] Of relevance to this *Daubert* motion, Onefater, in his capacity as a partner at Deloitte, was also retained by financial firms on multiple occasions to advise them in setting up, and/or improving, their prime brokerage businesses.[9] From 2001 to 2005, for example, he worked with Merrill Lynch to build their prime brokerage capability – including

---

[6]   *See id.* ¶ 10.

[7]   *See* Curriculum Vitae of Boris Onefater ("Onefater CV"), Ex. C to Wellner Decl.

[8]   Onefater Report ¶ 8.

[9]   *See id.* ¶ 11; Excerpts of Deposition of Boris Onefater ("Onefater Dep."), Ex. F to Wellner Decl, and Exs. 1 and 2 of Declaration to Terrence M. Mullen ("Mullen Decl"), Counsel for Citco Defendants, at 99:4-13 ("Q. So how much . . . time did you spend in your consulting practice when the prime broker was your client? . . . A. That was I mean substantial portion of my time. Probably in the years between 1999 through 2002, 2003, it was an overwhelming majority of my time. I would probably say 60 to 70 percent of my time was spent with prime brokerage clients.").

helping them to establish "internal control and reporting requirements."[10]

Upon leaving Deloitte in 2006, Onefater became Chief Operating Officer, Chief Financial Officer, and later Chief Executive Officer of Dreman Value Management, LLC ("Dreman") – an investment manager.[11] In that capacity, he oversaw several of Dreman's hedge funds and their relationships with a variety of service providers, including prime brokers.[12] He founded Constellation Investment in 2008.

### III. APPLICABLE LAW

The standard for the admissibility of expert testimony is established by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the

---

[10] Onefater Report ¶ 14. *Accord* Onefater Dep. at 97:10-18 ("And then in around 2000, 2001 a former client of mine from Merrill came to me and I'd worked with him before, they recognized my expertise in the industry and Merrill was embarking upon a, one of the top three projects that Merrill Lynch had, which was to build out a global prime brokerage capability, and they wanted to see if I could assist them in that buildout.").

[11] *See* Onefater CV; Onefater Dep. at 130:6-14.

[12] *See* Onefater Dep. at 130:7-136:8.

principles and methods reliably to the facts of the case.

For expert testimony to be admissible under Rule 702, three requirements must be met. *First*, the witness must be "qualified as an expert by knowledge, skill, experience, training, or education[.]"[13] Courts within the Second Circuit have "liberally construed expert qualification requirements."[14] In *McCullock v. H.B. Fuller Co.*, for example, the Second Circuit allowed an expert to testify as to matters within his general expertise even though he lacked qualifications as to certain technical matters within that field.[15]

*Second*, the expert's knowledge must be of the type that will "assist the trier of fact to understand the evidence or to determine a fact in issue[.]"[16] Thus, expert witnesses are generally not permitted to address issues of fact that a

---

[13]   Fed. R. Evid. 702.

[14]   *TC Sys., Inc. v. Town of Colonie, N.Y.*, 213 F. Supp. 2d 171, 174 (N.D.N.Y. 2002). *Accord United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985) ("The words 'qualified as an expert by knowledge, skill, experience, training or education' must be read in light of the liberalizing purpose of the Rule[.]" (quoting Fed. R. Evid. 702)).

[15]   *See* 61 F.3d 1038, 1042-43 (2d Cir. 1995) (holding that an industrial engineer's testimony that a plaintiff was within the "breathing zone" of hot-glue fumes "easily qualifie[d] for admission under *Daubert*" – despite the engineer's lack of education on fume dispersal patterns, knowledge regarding the fumes' chemical constituents or the glue vapor's concentration level, or experience performing or interpreting air quality studies").

[16]   Fed. R. Evid. 702.

jury is capable of understanding without the aid of expert testimony.[17] It is also well-established that expert witnesses are not permitted to testify about issues of law – which are properly the domain of the trial judge and jury.[18]

*Third*, the proposed expert testimony must be based "on a reliable foundation."[19]

> In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on "sufficient facts or data"; (2) that the testimony "is the product of reliable principles and methods"; and (3) that "the witness has applied the principles and methods reliably to the facts of the case."[20]

Although the Supreme Court has instructed district courts to focus "on the

---

[17] *See Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (stating that expert testimony is inadmissible when it addresses "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help").

[18] *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 548-49 (S.D.N.Y. 2004) ("[I]n deciding whether the proposed testimony will be helpful to the fact-finder, courts in this Circuit analyze the testimony to determine whether it 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" (quoting *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir.1999)); *In re Initial Pub. Offering Secs. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (Scheindlin, J.) ("In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." (collecting cases)).

[19] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

[20] *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 702).

principles and methodology" employed by the expert, and "not on the conclusions that they generate,"[21] it has recognized that "conclusions and methodology are not entirely distinct from one another."[22] Accordingly, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[23]

"[A] judge assessing the proffer of expert . . . testimony under Rule 702 should also be mindful of other applicable rules."[24] Importantly, Rule 403 of the Federal Rules of Evidence states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."[25]

In sum, district courts are charged with acting as "gatekeeper[s] to

---

[21]   *Daubert*, 509 U.S. at 595.

[22]   *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[23]   *Id.*

[24]   *Daubert*, 509 U.S. at 595 (quotation marks omitted).

[25]   *Id.*

exclude invalid and unreliable expert testimony."[26] However, trial judges, whom are given "broad discretion" in making these determinations,[27] should remember that they are ruling on the admissibility of evidence and not its weight or credibility. "As the Supreme Court has explained, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"[28]

## IV. DISCUSSION

Plaintiffs request that Onefater be precluded from testifying on the ground that his experience provides an insufficient basis for his proposed testimony. They make two arguments as to why Onefater's experience is inadequate – neither of which is sufficient to exclude Onefater's testimony.

*First,* Plaintiffs contend that Onefater's lack of direct (*e.g.*, being employed by a prime broker), as opposed to indirect (*e.g.*, acting as a consultant for

---

[26] *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 449 (2d Cir. 1999) (quotation marks omitted). *Accord Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 561, 565 (S.D.N.Y. 2007) (Scheindlin, J.) (discussing district court's "special obligation" to gatekeep with respect to expert evidence).

[27] *McCullock*, 61 F.3d at 1042.

[28] *Amorgianos*, 303 F.3d at 267 (quoting *Daubert*, 509 U.S. at 596) (citation omitted).

a prime broker), experience in the prime brokerage industry renders him unqualified to testify.[29] However, Rule 702 does not distinguish between direct and indirect experience, and courts in the Second Circuit generally take a liberal approach to the qualifications requirement.[30] The only category of experience that courts are generally wary of is experience gained as a litigation consultant and expert witness. Plaintiffs, for example, cite two circuit cases, *Kline, Inc. v. Lorillard, Inc.*[31] and *Tokio Marine & Fire Insurance Co., Ltd. v. Grove Manufacturing Co.*,[32] for the proposition that Onefater's "lack of any direct work experience, educational background, or formal training, renders [him] unqualified to testify as an expert."[33] However, in both cases, the court was concerned not just that the expert witness lacked direct experience in the relevant field, but that the indirect experience that the expert did have was developed solely as an expert

---

[29] *See* Plaintiffs' Memorandum of Law in Support of Motion to Exclude the Expert Testimony of Boris Onefater ("Pl. Mem.") at 4 ("[Onefater's] lack of any direct work experience, educational background, or formal training renders Onefater unqualified to testify as expert" (citations omitted)).

[30] *See TC Sys.*, 213 F. Supp. 2d at 174.

[31] 878 F.2d 791 (4th Cir. 1989).

[32] 958 F.2d 1169 (1st Cir. 1992).

[33] Pl. Mem. at 1.

witness.[34]

      In this instance, in contrast, Onefater has accumulated significant experience working with prime brokers outside of the litigation context. Although Onefater has not been directly employed with a prime broker, he has been retained as a consultant to assist financial firms in developing their prime brokerage businesses,[35] and has overseen the work of prime brokers as an executive for an investment manager.[36] In particular, the fact that industry participants have

---

    [34]    *See Tokio Marine & Fire Ins.*, 958 F.2d at 1174 (holding that the district court "judge concluded, supportably, that [the expert] was 'more a professional witness than an expert in crane defects'" (quotation marks and citations omitted)); *Kline*, 878 F.2d at 800 ("There was no indication, for example, that [the expert's] general business education included any training in the area of antitrust or credit. Similarly, [the expert] admitted that she lacked any other experience in such matters. *Although it would be incorrect to conclude that [the expert's] occupation as a professional expert alone requires exclusion of her testimony, it would be absurd to conclude that one can become an expert simply by accumulating experience in testifying*." (emphasis added)).

    [35]    *See* Onefater Report ¶¶ 11, 14; Onefater Dep. at 99:4-13 ("Q. So how much . . . time did you spend in your consulting practice when the prime broker was your client? . . . A. That was I mean a substantial portion of my time. Probably in the years between 1999 through 2002, 2003, it was an overwhelming majority of my time. I would probably say 60 to 70 percent of my time was spent with prime brokerage clients."); *id.* at 97:10-18 ("And then in around 2000, 2001 a former client of mine from Merrill came to me and I'd worked with him before, they recognized my expertise in the industry and Merrill was embarking upon a, one of the top three projects that Merrill Lynch had, which was to build out a global prime brokerage capability, and they wanted to see if I could assist them in that buildout.").

    [36]    *See* Onefater Dep. at 130:7-136:8.

retained Onefater for his prime brokerage expertise outside of the litigation context strongly supports the proposition that he has sufficient expertise to testify about the practices of prime brokers.[37]

*Second*, Plaintiffs argue that even if Onefater is generally qualified as a prime brokerage expert, he has not demonstrated that this general experience has educated him about the specific industry practices that he describes in his expert report.[38] Onefater intends to opine that BAS failed to follow industry procedures in four respects:

(a) failing to question pricing and valuation provided by the

---

[37] Courts often scrutinize the qualifications of professional witnesses because they are retained by counsel with the aim of obtaining a successful litigation outcome. However, outside of the litigation context, experts are generally retained with the aim of obtaining a successful market outcome – in this case, setting up a prime brokerage business. Thus, the fact that Onefater was in high demand as an advisor and consultant suggests that his knowledge of prime brokerage businesses was valued by the industry.

[38] Plaintiffs' brief suggests that they are actually making two distinct arguments in this context. *First*, that Onefater's lack of knowledge about the specific industry standards he describes in his expert report renders him unqualified, *see* Pl. Mem. at 6-8; and *second*, that this lack of knowledge renders his proposed testimony unreliable, *see id.* at 9-10. However, the underlying complaint is the same as to both arguments: Onefater does not have knowledge of the particular industry standards about which he opines. *Compare id.* at 7 ("Neither Onefater's report nor his testimony offers a sufficient connection between his interactions with prime brokers, whether as clients or otherwise, and the expertise he purports to have in the Alleged Industry Practices.") *with id.* at 9 ("Onefater has not explained how the Alleged Industry Practices, which he asserts governed BAS's conduct, are derived from his experience.").

> Investment Manager under circumstances where follow-up inquiry was required and failing to provide specific disclaimers regarding information relevant to the pricing and value of the funds' assets; (b) failing to identify and report to internal compliance the month-end trades entered into not just by the Lancer Funds, but also by the accounts of affiliated account holders, which potentially impacted the market price of thinly-traded securities; (c) failing to question and report to their internal compliance department excessive cross trading of securities between fund accounts and personal accounts; (d) failure to question transactions in which the fund made a "sell out for zero" or "sell off for zero" and then physically claimed the certificates.[39]

Plaintiffs contend that Onefater's experience does not qualify him to testify about at least three of these subjects because they "involve purely internal brokerage processes – monitoring and reporting to prime broker's internal compliance department – of which Onefater does not claim to have first-hand knowledge or experience."[40]

Plaintiffs are correct that although an expert is permitted to support his opinions by reference to his experience, he must demonstrate that this "experience is a sufficient basis for" these opinions.[41]  However, contrary to Plaintiffs' assertions, Onefater's expert report and deposition testimony indicate that he has in fact had exposure to the various internal procedures followed by

---

[39]   Onefater Report ¶ 5.

[40]   Pl. Mem. at 7.

[41]   Fed. R. Evid. 702 Advisory Committee Note.

-13-

prime brokers. As part of his consulting business at Deloitte, for example, Onefater investigated the capabilities and procedures of various prime brokers to assist Deloitte's clients in selecting the brokers that best met their specific needs.[42] In addition, Onefater has participated in industry conferences[43] and informal meetings[44] with industry participants on a regular and continuing basis throughout his career.[45] This significant exposure has provided Onefater with the type of

---

42 *See* Onefater Dep. at 69:9-21 ("And let's say that in this instance, and I'm going to use, you know, Lehman as an example, in this case Lehman would be a viable candidate, as well as Merrill and a number of others, and then what you would do is you would go and visit those prime brokers, have them explain their infrastructure system, how they work, and then based upon all those, based upon the information gathered, you'd sit down with a client and you'd lay it all out[.]").

43 *See id.* at 12:14-22 ("There were a number of conferences that I've attended numerous, and I probably couldn't even begin to count how many, where prime broker representatives talked about services that they provide, standard of care that they had with respect to their clients, what they offered, what types of services they made available to their clients, the latest technology, the latest trading programs."); *id.* at 13:3-6 (stating that he recently "set up a prime brokerage panel" for a conference).

44 *See id.* at 153:4-8 ("I've met with the various teams from prime brokerages where we talked about industry events and the expectations of what hedge funds and administrators are expecting of a prime broker."); *id.* at 154:3-9 ("I'm sure there were others because on a periodic basis we, I mean we met with different prime brokers. So on a frequent basis we'd get together and discuss industry events.").

45 Plaintiffs argue that these meetings cannot provide a reliable basis for Onefater's testimony because he was unable to recall the specifics of many of those meetings at deposition. However, these lapses in memory are traditionally challenged through cross-examination and do not render his opinion testimony

experience that would permit him to testify reliably about the internal practices of prime brokers. To the extent that Plaintiffs are able to point to areas where his experience is less robust, these concerns go to "his testimony's weight and credibility – not its admissibility" and are "properly explored on cross-examination."[46]

## VII. CONCLUSION

For the aforementioned reasons, Plaintiffs' motion *in limine* to exclude Onefater's proposed testimony is denied. The Clerk of Court is directed to close this motion (Docket No. 340).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         March 9, 2010

---

unreliable. *See Amorgianos*, 303 F.3d at 267 (quoting *Daubert*, 509 U.S. at 596) (citation omitted).

[46] *McCullock*, 61 F.3d at 1043 (citation omitted).

## - Appearances -

**For the Plaintiffs:**

Scott M. Berman, Esq.
Anne E. Beaumont, Esq.
Amy C. Brown, Esq.
Philip A. Wellner, Esq.
Robert S. Landy, Esq.
Lili Zandpour, Esq.
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, New York 10019
(212) 833-1100

**For the Citco Defendants:**

Lewis N. Brown, Esq.
Dyanne E. Feinberg, Esq.
Terence M. Mullen, Esq.
Elizabeth A. Izquierdo, Esq.
Gilbride, Heller & Brown, P.A.
One Biscayne Tower, 15th Floor
2 South Biscayne Blvd.
Miami, Florida 33131
(305) 358-3580

Eliot Lauer, Esq.
Michael Moscato, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178
(212) 696-6000