UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

THE PENSION COMMITTEE OF THE
UNIVERSITY OF MONTREAL
PENSION PLAN, *et al.*,

    **Plaintiffs,**

   **- against -**

BANC OF AMERICA SECURITIES,
LLC, CITCO FUND SERVICES
(CURACAO) N.V., THE CITCO GROUP
LIMITED, INTERNATIONAL FUND
SERVICES (IRELAND) LIMITED,
PRICEWATERHOUSECOOPERS
(NETHERLAND ANTILLES), JOHN W.
BENDALL, JR., RICHARD GEIST,
ANTHONY STOCKS, KIERAN
CONROY, and DECLAN QUILLIGAN,

    **Defendants.**

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/24/10

<u>OPINION AND ORDER</u>

05 Civ. 9016 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.  INTRODUCTION

   A group of investors brings this action to recover losses stemming

from the liquidation of two British Virgin Islands based hedge funds (the "Funds")

in which they held shares.  The Funds were managed by Lancer Management

Group LLP and its principal Michael Lauer – neither of which are defendants in

this action.  In July 2003, the Funds were placed into receivership in the Southern

District of Florida, resulting in plaintiffs' loss of over $550 million.  Plaintiffs

bring various claims under federal and New York law against the Funds' former

directors, Kieran Conroy and Declan Quilligan, administrator, Citco Fund Services

(Curacao) N.V. ("CFS-Curacao"), and CFS-Curacao's parent The Citco Group

Limited (collectively, the "Citco Defendants").  Trial is scheduled to commence in

this matter on April 12, 2010.  The following are rulings on the Citco Defendants'

three motions *in limine*.

## II.   THE CITCO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE BASED ON THE DOCTRINE OF JUDICIAL ESTOPPEL

Based on the doctrine of judicial estoppel, the Citco Defendants seek

to preclude plaintiffs from introducing evidence at trial regarding whether CFS-

Curacao properly relied on reports generated by the Lancer funds' prime broker,

Banc of America Securities, LLC ("BAS"), or whether the reports were unofficial.

For the reasons that follow, the motion is denied.

### A.   Facts

BAS, in its role as prime broker, prepared position reports reflecting

the positions held in the portfolios of the Funds.  These reports were made

available through BAS's website "primebroker.com" to defendant CFS-Curacao,

the Funds' administrator, and appeared to be official in all respects.  CFS-Curacao

used these reports to calculate the Funds' net asset value ("NAVs").  CFS-Curacao

then distributed the NAVs to investors.  Plaintiffs allege that Lauer and Lancer misleadingly reported the Funds' holdings to BAS, thereby artificially inflating the NAVs, and ultimately resulting in harm to the Funds' investors.[1]

In July 2009, BAS – then a defendant in this case – moved for summary judgment.  As part of that motion, BAS argued that its reports were not "official" and should have been "viewed as reports of the investment manager, Lancer" only.[2]  In response, plaintiffs argued "that BAS had actual knowledge that the reports would be used and relied upon by CFS-Curacao."[3]  Plaintiffs also submitted the declaration of their expert Louis Ricciardelli, in which he opined that "'[i]t is commonly understood by prime brokers that fund administrators . . . will use [position] reports, along with other information, as aids to perform audits and determine [NAVs].'"[4]  In September 2009, I denied BAS's summary judgment

---

[1]      *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 652 F. Supp. 2d 495, 498-99 (S.D.N.Y. 2009) (denying BAS's motion for summary judgment).

[2]      7/2/09 BAS Memorandum of Law in Support of Its Motion for Summary Judgment at 19-20.

[3]      Memorandum of Law of [The Citco Defendants] in Support of Their Motion *in Limine* To Exclude Certain Evidence Based on the Doctrine of Judicial Estoppel ("Judicial Estoppel Mem.") at 4.

[4]      *Id.* (quoting 7/27/09 Declaration of Louis Ricciardelli ¶ 28).

3

motion.  BAS subsequently settled with plaintiffs.[5]

In preparation for trial against the Citco Defendants, plaintiffs have

submitted the report of their expert, James C. Collins.  In his report, Collins opines,

*inter alia*, that

> CFS-Curacao should have been aware that [BAS's]
> position reports were not 'official' broker statements of
> BAS and that they did not necessarily reflect what BAS
> held in custody for the Lancer Funds.  Reports from BAS's
> primebroker.com system were not sufficient backup for
> either transactions or positions; they were, and should have
> been treated by CFS-Curacao as the functional equivalent
> of reports from the investment manager, which they were.[6]

The Citco Defendants argue that the Collins Report and other materials submitted

to the Court indicate that plaintiffs will advance arguments at trial that "directly

contradict" the positions plaintiffs took in their opposition to BAS's summary

judgment motion.[7]

## B.    Applicable Law

"The equitable doctrine of judicial estoppel provides that, '[w]here a

---

[5]     *See Pension Comm.*, 652 F. Supp. 2d at 511-12.

[6]     Expert Report of James C. Collins, Ex. 1 to the Declaration of Terence
M. Mullen, the Citco Defendants' counsel ("Mullen Decl.") at 23-24.  *Accord*
Deposition of James C. Collins, Ex. 2 to Mullen Decl. at 266:11-270:13
(reiterating the same position).

[7]     Judicial Estoppel Mem. at 3.

party assumes a certain position in a legal proceeding, and succeeds in maintaining

that position, [it] may not thereafter, simply because [its] interests have changed,

assume a contrary position, especially if it be to the prejudice of the party who has

acquiesced in the position formerly taken by [it].'"[8]  A litigant who asserts judicial

estoppel must establish that "(1) the party against whom judicial estoppel is being

asserted advanced an inconsistent factual position in a prior proceeding, and (2) the

prior inconsistent position was adopted by the first court in some manner."[9]

Moreover, application of judicial estoppel is limited "to situations where the risk of

inconsistent results with its impact on judicial integrity is certain."[10]

### C.    Discussion

The doctrine of judicial estoppel does not bar plaintiffs from

introducing evidence at trial either that CFS-Curacao improperly relied on BAS's

position reports or that the reports were unofficial.  Plaintiffs' positions in the

opposition to BAS's summary judgment motion were that BAS knew the reports

were unofficial even though they appeared official, took no steps to notify CFS-

Curacao that they were unofficial, and knew that CFS-Curacao was relying on

---

[8]     *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005)
(quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

[9]     *United States v. Hussein*, 178 F.3d 125, 130 (2d Cir. 1999).

[10]    *Uzdavines*, 418 F.3d at 147.

5

them to calculate the NAVs. These contentions simply are not inconsistent with plaintiffs' current arguments that BAS's position reports were, in fact, unofficial and that CFS-Curacao wrongly relied on them. Accordingly, such evidence is not barred by judicial estoppel.

Moreover, the Court has not adopted arguments inconsistent with plaintiffs' current contentions. According to the Citco Defendants, "this Court rejected the contention that BAS's role in preparing the primebroker.com reports was 'so minimal' that the reports should not have been viewed as reports of BAS" when denying BAS's motion for summary judgment.[11] The Citco Defendants quote this Court's opinion as follows: "'[W]hen BAS generated Account Statements and Position Reports . . . with the knowledge that the Funds' . . . administrators would rely on them to . . . calculate NAVs, BAS permitted the Funds to issue artificially and deceptively inflated [NAVs] to investors.'"[12] Plaintiffs' prior position, as adopted by the Court in the quoted passage, has no bearing on whether CFS-Curacao correctly relied on BAS's position reports or whether they were unofficial. Therefore, plaintiffs are not judicially estopped from advancing these arguments against the Citco Defendants at trial and the Citco

---

[11]     Judicial Estoppel Mem. at 6.

[12]     *Id.* at 7 (quoting *Pension Comm.*, 652 F. Supp. 2d at 511).

6

Defendants' motion *in limine* is denied.

## III.   THE CITCO DEFENDANTS' MOTIONS *IN LIMINE* TO EXCLUDE PUBLIC STATEMENTS IN TRADE JOURNAL ARTICLES, MARKETING MATERIALS, PRINT-OUTS FROM THE CITCO DEFENDANTS' WEBSITE, AND INTERNAL MANUALS AND TRAINING MATERIALS

The Citco Defendants also seek to exclude evidence of certain trade

journal articles, marketing materials, and print-outs from the Citco Defendants'

website ("Public Materials") as well as internal manuals and training materials

("Internal Materials") and bar any reference to these materials at trial. The Citco

Defendants object to the introduction of these materials on the grounds that they

are irrelevant and cause confusion. The Citco Defendants also seek to exclude any

Public Material dated after August 1, 2002, the date of the last investment at issue

in this case.[13] For the reasons that follow, the Citco Defendants' motions are

denied.

### A.   Facts

The Public Materials at issue are articles written by current and former

individual defendants, print-outs from Citco Fund Services' website, and various

marketing or promotional brochures for Citco Fund Services and The Citco Group

---

[13]      *See* Memorandum of Law in Support of Motion *in Limine* of the Citco Defendants to Exclude Evidence of Certain Trade Journal Articles, Marketing Materials and Print-Outs from the Citco Defendants' Website and Bar any Reference Thereto at Trial ("Def. Public Materials Mem.") at 3-5.

7

Limited.[14]  The Public Materials include statements regarding the administrative

services offered by CFS-Curacao, descriptions of an offshore administrator's role

generally, and the importance of administrator independence.[15]  In addition, some

of the Public Materials contain statements that administrators act as a "fiduciary"

for investors.  For example, a 1998 article written on behalf of former defendant

Anthony Stocks states "investors look upon the administrator as the *fiduciary* of

their assets,"[16] and "the administrator's core competence is asset protection, and it

is in this *fiduciary* role that he is regarded by the investors in offshore funds."[17]

There is no evidence that any plaintiff received or relied on any Public Material

prior to making its decision to invest.

          The Internal Materials at issue are chapters from two versions of a

CFS-Curacao manual and a collection of Powerpoint slides that include

information on how to prepare NAV statements and value securities.[18]  According

----

[14]     *See id.* at 1-2.

[15]     *See id.*; Exs. 1-10 to the Declaration of Elizabeth Izquierdo, the Citco
Defendants' counsel ("Izquierdo Decl.").

[16]     PX 265 at STOCKS000216-217 (emphasis added), Ex. 2 to the
declaration of Anne E. Beaumont, plaintiffs' counsel ("Beaumont Decl."), at BD
18-19.

[17]     *Id.* at STOCKS000219 (emphasis added).

[18]     *See generally* PX 114, Ex. 1 to Beaumont Decl; PX 117, Ex. 3 to
Beaumont Decl.

to the Citco Defendants, the versions of the manual were created in conjunction

with a Statement on Auditing Standards No. 70 ("SAS 70") report – which

"describes the internal systems, procedures and controls of a service provider, and

is made in connection with an audit of the service provider's internal control

system undertaken by an independent auditor."[19]  Although the parties disagree

about the precise role the Internal Materials played in CFS-Curacao's auditing

business, the Citco Defendants agree that, at minimum, copies of the manual were

made available to CFS-Curacao employees as a "reference guide"[20] and that the

Powerpoint slides were used in employee training sessions.[21]

## B.    Applicable Law

The Federal Rules of Evidence favor the admission of all relevant

evidence.[22]  Evidence is relevant if it has "any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or

---

[19]     Memorandum of Law in Support of Motion *In Limine* of the Citco
Defendants to Exclude Evidence Regarding CFS-Curacao's Internal Manuals and
Training Manuals ("Def. Internal Materials Mem.") at 2 n.1.  An SAS 70 is an
auditing statement issued by the Auditing Standards Board of the American
Institute of Certified Public Accountants that provides guidance to auditors of
service providers such as hedge fund administrators.

[20]     *Id.* at 3.

[21]     *See id.* at 4.

[22]     *See* Fed. R. Evid. 402.

9

less probable than it would be without the evidence."[23]  Even if evidence is

relevant, it is still properly excluded "if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by consideration of undue delay, waste of time, or needless

presentation of cumulative evidence."[24]

### C.    Discussion

The Citco Defendants contend that the Internal and Public Materials

are irrelevant to show the scope of the work to be performed by CFS-Curacao or

the applicable standard of care.  Instead, the Citco Defendants argue that the scope

of an administrator's duties to a hedge fund's investors is defined solely by the

terms of the contracts between the fund and the administrator, as disclosed to the

investors through the fund's offering memoranda.[25]  However, plaintiffs are not

suing on the basis of the contractual duties that CFS-Curacao owed to the Funds or

its investors.  They bring claims under state and federal law alleging, *inter alia*,

that CFS-Curacao breached its fiduciary duties to investors, engaged in negligent

misrepresentations, committed common law fraud, and violated the requirements

---

[23]     Fed. R. Evid. 401.

[24]     Fed. R. Evid. 403.

[25]     *See* Def. Public Materials Mem. at 5; Def. Internal Materials Mem. at 5-6.

10

of Rule 10b-5. These causes of action are based on statutory and common law tort obligations rather than on contractual duties.[26]

The nature of these obligations and what the Citco Defendants needed to do to fulfill them is largely dependent on common sense and industry standards. In fact, both parties have introduced experts on industry standards whose testimony will be used to define the scope of the Citco Defendants' duties. As a major player in the realm of hedge fund administration, the Citco Defendants' Internal and Public Materials are relevant to defining that scope and those standards.

The Citco Defendants cite one Southern District case, *Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC*,[27] for the proposition that the scope of an administrator's duties to a hedge fund's investors is defined by the

---

[26]     This does not mean, of course, that the contracts and offering memoranda are irrelevant. For example, under New York law, a defendant's fiduciary duty to a plaintiff is often inferred from a contract between the two parties. However, once that fiduciary duty is established, the relationship the contract establishes imposes "a duty to act with care and loyalty independent of the terms of the contract." *Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 471 (S.D.N.Y. 2007). *Accord Bullmore v. Ernst & Young Cayman Islands*, 846 N.Y.S.2d 145, 148 (1st Dep't 2007) ("Professionals such as investment advisors, who owe fiduciary duties to their clients, 'may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties,' since in 'these instances, it is policy, not the parties' contract, that gives rise to a duty of care.'") (quoting *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 551-52 (1992)) (citing *Bullmore*, 485 F. Supp. 2d at 470-71).

[27]     376 F. Supp. 2d 443 (S.D.N.Y. 2005).

11

administrator's contractual obligations under the administration agreement and

offering memoranda. The dissimilarities between *Fraternity Fund* and this case

have already been addressed by this Court in a prior opinion. In deciding the Citco

Defendants' motion to dismiss, I held in relevant part:

> [In support of its motion to dismiss, CFS-Curacao] cites
> *Fraternity Fund* . . . where the court found that a fund
> administrator had no fiduciary duty because the offering
> memorandum required the fund administrator only to compute the
> NAV, and not to independently value the fund's portfolio, a role
> reserved for the fund manager. . . . [However, in this case, CFS-
> Curacao] has not proffered any document relegating it to solely
> ministerial functions or establishing that the Funds' manager was
> exclusively charged with determining the value of the Funds'
> portfolio. Therefore, [CFC-Curacao's] motion to dismiss the
> breach of fiduciary duty claim against it is denied.[28]

Expanding on that distinction, *Fraternity Fund* does not stand for the

proposition that an administrator's legal obligations are solely determined by its

contractual obligations. The court in *Fraternity Fund* determined only that the

plaintiffs in that particular case had failed to allege sufficient facts to show that the

administrator owed a legal duty to investors where fund documents, such as the

administration agreements and offering memoranda, did not create such a duty.[29]

---

[28]    *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 197 (S.D.N.Y. 2006).

[29]    *See* 376 F. Supp. 2d at 448 ("Plaintiffs do not allege facts to show that, contrary to these documents, [defendant] had an obligation to independently calculate or verify the [investment manager's] prices.").

12

The court did not close the door to the possibility that plaintiffs in other cases

might be able to do so and said nothing of whether fund documents exclusively

control the scope of a fiduciary duty. Accordingly, the Internal and Public

Materials are relevant on the question of whether CFS-Curacao owed a fiduciary

duty to investors and, if so, the scope of that duty.

With regard to the Public Materials, the Citco Defendants make two

additional arguments in favor of exclusion. *First*, the Citco Defendants contend

that "any materials authored or published after August 2002 could not be relevant

to any triable issue in this case."[30]  While I agree that any materials submitted long

after plaintiffs made their decisions to invest are likely irrelevant, excluding

documents based solely on the date of creation, and not their content, is too rigid a

rule for this case.  For example, the Citco Defendants seek to exclude PX 634, an

article written by defendant William Keunen in September 2002, entitled "A Year

of Turmoil: Impact on Hedge Fund Operations."  This article includes statements

about the events of 2001 and 2002 and their "impact . . . on hedge funds and the

role of the administrator."[31]  Given that this article was written while CFS-Curacao

was still providing services to the Funds, there is no reason to exclude it or similar

---

[30]     Def. Public Materials Mem. at 4.

[31]     Ex. 6 to Izquierdo Decl. at 3-5.

13

Public Materials based solely on the date of creation. I also note that plaintiffs have withdrawn from their exhibit list seven documents dating between 2005 and 2007.

*Second*, the Citco Defendants argue that plaintiffs should not be permitted to introduce Public Materials that include the word "fiduciary" as evidence of a fiduciary or near-privity relationship between CFS-Curacao and investors.[32] Plaintiffs respond that they do not intend to use these materials to demonstrate near-privity for purposes of the negligent misrepresentation claim, but they do seek to introduce these statements as party admissions and evidence that CFS-Curacao was a fiduciary.[33] There is no reason to bar plaintiffs from using the Public Materials in this manner.

The Citco Defendants' arguments against presenting the Public Materials' use of the term "fiduciary" are premised on two legal principles: (1) that merely including the word "fiduciary" in publicly available materials does not create a fiduciary duty between the distributor of the materials and the readers;[34]

_____

[32]     *See* Citco Public Materials Mem. at 8-10.

[33]     *See* Plaintiffs' Memorandum of Law in Opposition to Second and Third Motions *In Limine* of the Citco Defendants ("Pl. Opp.") at 19-20 & 19 n.17.

[34]     *See  McGill v. GM Corp.*, 647 N.Y.S. 2d 209, 210 (1st Dep't 1996) (noting that "mass communications" are insufficient to establish privity between parties"); *DeBlasio v. Merrill Lynch & Co.*, No. 07 Civ. 318, 2009 WL 2242605, at

14

and (2) that party admissions relating to fiduciary or other duties do not give rise to such duties where they are not otherwise demonstrated at law.[35]  Such arguments miss the crux of plaintiffs' intended use of these materials.  Plaintiffs do not contend that these admissions are the only basis on which the jury could find that CFS-Curacao was a fiduciary.  They are simply some evidence, corroborative of and consistent with other evidence from which this Court has already held a reasonable juror could find CFS-Curacao was a fiduciary.[36]  Permitting plaintiffs to introduce such evidence is not inconsistent with the legal principles relied upon by the Citco Defendants.

In addition, the Citco Defendants cite *Collins v. International Dairy Queen* in further support of their motion to exclude the Public Materials.[37]

---

*30 (S.D.N.Y. July 27, 2009) (holding that defendants' public advertisements were not sufficient to create a fiduciary relationship because "fiduciary relationships . . . are personal and context specific"); *Barron Partners LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 671 (S.D.N.Y. 2009) (holding that statements made on defendants' website were not confidential and could not give rise to a fiduciary relationship).

[35]     *See Riverbay Corp. v. Allendale Mut. Ins. Co.*, No. 83 Civ. 8271, 1988 WL 52783, at *8 (S.D.N.Y. May 18, 1988) (finding that advertising brochure did not create a duty outside the parties' contract).

[36]     *See* Pl. Opp. at 19 n.17 (citing *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 592 F. Supp. 2d 608, 640 (S.D.N.Y. 2009)).

[37]     *See* 54 F. Supp. 2d 1351, 1353-54 (M.D. Ga. 1999).

15

However, the facts in *Collins* are quite different from those presented here.  In *Collins*, the court found that a single instance of the use of the word "fiduciary" to describe the relationship between the defendant and its franchisees by a non-lawyer in a private letter indicated a lack of deliberateness and awareness of the word's significance.[38]  The court held that the use of term was "insufficient to establish that such a relationship existed in fact."[39]

Here, CFS-Curacao has described itself as a "fiduciary" consistently and repeatedly in publicly distributed materials, many of them reviewed by Citco Group management.  The Citco Defendants cannot claim that this term was used inadvertently or without awareness of its legal meaning.  I find that the use of the term "fiduciary" in the Public Materials is relevant to the question of whether CFS-Curacao owed a fiduciary duty to plaintiffs.  The inclusion of this term in the Public Materials does not present a danger of confusion that substantially outweighs their probative value.  Therefore, the Public Materials are admissible without limitation.

With regard to the Internal Materials, the Citco Defendants request that plaintiffs' expert, James Collins, be precluded from relying on these

---

[38]   *See id.*

[39]   *Id.* at 1354.

16

materials.[40] The Citco Defendants previously requested this ruling in their *Daubert*

motion to exclude and/or limit Collins's testimony. I reserved judgment on that

issue until I decided this motion *in limine*.[41] Because I have determined that these

materials are relevant and are not unduly prejudicial, I now hold that Collins may

refer to them. The Citco Defendants point out that in deposition testimony Collins

stated that the Internal Materials do not "'establish industry standards.'"[42]

However, even if these materials do not *establish* industry standards in the same

way that GAAP (Generally Accepted Accounting Principles) establish accounting

standards or that GAAS (Generally Accepted Auditing Standards) establishes

auditing standards, that does not preclude these materials from being some

*evidence* of hedge fund administration standards. Accordingly, Collins is entitled

to use the Internal Materials, as his expert reports suggests he will, to support his

opinions on hedge fund administration industry standards.

---

[40]      *See* Def. Internal Material Mem. at 8 n.5.

[41]      *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am.
Secs.*, LLC, No. 05 Civ. 9016, 2010 WL 648369, at *14 n. 171 (S.D.N.Y. Feb. 22,
2010).

[42]      *Id.* (citing Deposition of James Collins at 259:24-260:5).

17

## IV. CONCLUSION

For the foregoing reasons, the Citco Defendants' motions *in limine* are denied. The Clerk of the Court is directed to close these motions (Docket Nos. 332, 333, and 334).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           March 23, 2010

18

## - Appearances -

**For the Plaintiffs:**

Scott M. Berman, Esq.
Anne E. Beaumont, Esq.
Amy C. Brown, Esq.
Philip A. Wellner, Esq.
Robert S. Landy, Esq.
Lili Zandpour, Esq.
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, New York 10019
(212) 833-1100

**For the Citco Defendants:**

Lewis N. Brown, Esq.
Dyanne E. Feinberg, Esq.
Terence M. Mullen, Esq.
Elizabeth A. Izquierdo, Esq.
Gilbride, Heller & Brown, P.A.
One Biscayne Tower, 15th Floor
2 South Biscayne Blvd.
Miami, Florida 33131
(305) 358-3580

Eliot Lauer, Esq.
Michael Moscato, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178
(212) 696-6000

19

**For Defendant Banc of America Securities LLC:**

Peter K. Vigeland, Esq.
Dawn M. Wilson, Esq.
Paul M. Winke, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
(212) 230-8800